IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11-22842-CIV-SEITZ/SIMONTON

EURYS GAMEZ,

        Plaintiff,

vs.

ACE AMERICAN INSURANCE
COMPANY,
        Defendant.
_____/

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT

**COMES NOW,** the Defendant, ACE AMERICAN INSURANCE COMPANY ("Defendant"), by and through undersigned counsel pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida and files this memorandum in support of its Motion for Final Summary Judgment in its favor and against Plaintiff EURYS GAMEZ, ("Plaintiff" or "Mr. Gamez"), on all claims pled against Defendant.

### I.    INTRODUCTION

As more fully explained below, as a matter of law, summary judgment is appropriate in the instant case as the undisputed facts show that the Plaintiff made material misrepresentations on his Application for Insurance ("Application"). Such misrepresentations were material to the Defendant's decision regarding whether or not to issue the Maritime Insurance Policy No. YKR Y10144097 (hereinafter referred to as the "Policy").

The material facts serving to support this Motion for Final Summary Judgment can be gleaned from the Insurance Application itself and the Plaintiff's testimony via his Examination Under Oath and his deposition. Additional support for this Motion for Final Summary Judgment can be found in the testimony of Plaintiff's cousin, Alfredo Hassun. Such testimony is demonstrative of the inaccurate and misleading information that was provided to the Defendant on the Plaintiff's Application for Insurance ("Application") which, in turn, led the Defendant to issue a policy that would never have been issued or, at the very least, it would have been issued with different premiums, riders, and/or warranties had the Plaintiff made a full and truthful disclosure of all the material facts on his Application.

## II. UNDISPUTED MATERIAL FACTS AS TO THE APPLICATION

1. On or about October 22, 2007, Eurys Gamez executed the above-referenced Application for insurance seeking coverage for a 2008 32" Glasstream Vessel ("Insured Vessel") without reading the contents of the application. *See* Boat Insurance Application attached hereto as **Exhibit A**; *see also* Deposition Transcript of Eurys Gamez attached hereto as **Exhibit B**, at p. 50, ll. 8-13; p. 57, ll. 3-17; p. 58, ll. 5-8; and p. 103, ll. 6-8.[1]

### Primary Operator Misrepresentation

2. The name Eurys Gamez is listed as the owner of the Insured Vessel and the "Primary Operator" of the Insured Vessel in the Application. *See* **Exhibit A**.

---

[1] Plaintiff testified that he did not have any "personal knowledge" of the contents of the Application because Mr. Hassun completed such Application despite the fact that Plaintiff did acknowledge executing the Application. *See* **Exhibit B** at p. 15, ll.16-25.

3. Mr. Gamez's deposition and Examination Under Oath testimony, however, substantiate that Mr. Gamez was not the primary operator of the Insured Vessel:

> Q. With regard to that primary operator, you testified in 2008[2] and here today, that your cousin used the boat more than you, right?
> A. Correct.

*See* Deposition Transcript of Eurys Gamez attached hereto as **Exhibit B**, at p. 46, ll. 9-12.

> Q. Indeed, would it not be accurate to say that your cousin, based on the times that he used it, the payments and whatnot, was pretty much the primary operator of the vessel?
> A. I had permission to use it. So --
> Q. I understand that? [sic]
> A. When he was alone he was the primary operator.
> Q. Okay, but during the time that this vessel was in your possession from the time that you did this application until the time of the loss of the vessel would it not be accurate to say that your cousin was really the guy who was operating the boat most of the time?
> A. Yeah. He had the majority of the time on the boat.

*See* Transcript of the Examination Under Oath of Eurys De Jesus Gamez attached hereto as **Exhibit C** at p. 14, ll. 11-25; p. 15, ll. 1-2.

4. The record evidence is replete with Plaintiff's admissions that the "primary operator" of the Insured Vessel was Mr. Hassun. *See* **Exhibit B** at p. 28, ll. 9-12; p. 37, ll. 5-17; p. 46, ll. 9-12; *see also* **Exhibit C** at p. 14, ll. 19-25; p. 15, ll. 1-2.

5. Moreover, Plaintiff admitted in both his Examination Under Oath and Deposition that the Insured Vessel was in the custody and control of Mr. Hassun, who, in turn, loaned the Insured Vessel to Alexis Suarez. *See* **Exhibit B** at p. 58, ll. 24-25; p. 59, ll. 1-25; p. 60, ll. 1-25; **Exhibit C** at p. 17-20. Mr. Suarez was in possession of the Insured Vessel at the time when it was apparently lost at sea. *See* **Exhibit B** at p. 58, ll.

---

[2] Prior to the commencement of this litigation, Mr. Gamez gave his testimony via an Examination Under Oath on March 3, 2008.

Brown Sims, P.C. | datran two • 9130 S. Dadeland Blvd., Suite 1609 • Miami, Florida 33156
tel: (305) 274-5507; fax: (305) 274-5517

24-25; p. 59, ll. 1-25; p. 60, ll. 1-25; **Exhibit C** at p. 17-20. Specifically, when questioned about the vessel, the Plaintiff testified:

> Q. Let's talk about the actual loss of the vessel. When did you learn about the alleged loss of the vessel?
> A. When Alfredo told me about it.
> ***
> Q. When he called you what did he say?
> Q. He told me that he was in a -- I think he was going to call the coast guard because he had lent it [Insured Vessel] to a friend of his. I don't remember exactly what he told me. It was years ago, but ...
> Q. So I'm paraphrasing here. Correct me if I'm wrong, Alfredo called you sometime in the latter part of November to tell you he didn't know where the boat was?
> A. Yes.
> Q. Okay. Did Alfredo tell you how the boat came to be without his -- in his possession?
> A. Yes.
> Q. Okay. What did he say?
> A. He had told me that -- I think it was that he was going to go fishing with some friends of his.
> Q. Did he identify any of those friends?
> A. Yes.
> Q. Who did he identify?
> A. He identified a woman[3] by the name of Alexis.
> Q. Would that be Alexis Suarez?
> A. I believe so.
> Q. Okay. And had you ever met Alexis Suarez.
> A. No.
> Q. Had you ever spoken to Alexis Suarez on the phone?
> A. No.
> ***
> Q. Okay. So Mr. Suarez took the boat with your cousin's permission, right?
> A. I believe so, yes.

*See* **Exhibit B** at p. 58, ll. 8-25; p. 5, ll. 1-14; p. 60, ll. 8-10; *see also* **Exhibit C** at p. 18 ll. 19-25, p. 19, 1-2.

---

[3] It appears that Plaintiff misspoke in referring to Alexis Suarez as a woman as later in his deposition Alexis Suarez is consistently referred to as "Mr. Suarez."

6. Further, Mr. Hassun testified that the last time he saw the Insured Vessel was on the day he "lent it to an acquaintance" and that said acquaintance, later referred to as "Alexis Suarez," never returned with the Insured Vessel. *See* **Exhibit C** at p. 31, ll. 7-24.

### Additional Operator Misrepresentation

7. The "Additional Operator" section of the Application was left blank. *See* **Exhibit A**. Mr. Hassun testified that he was an additional operator of the Insured Vessel. *See* Deposition Transcript of Alfredo Hassun attached hereto as **Exhibit D** at p. 28, ll. 21-24 (**Q.** The next section of this application -- before we get there, <u>would you consider yourself an additional operator of the boat</u>? **A.** <u>Yes</u> (emphasis added)).

8. Moreover, regarding this issue, Mr. Hassun testified in the following manner:[4]

Q. Now the next section of the application is titled, "Additional Operator." You see that section?
A. Yes.
Q. Okay. And that section is just blank, is that right?
A. That's right.
\*\*\*
Q. So but even though -- even though you consider yourself an additional operator of the vessel, you didn't list yourself on the application, is that right?
A. That's correct.

*See* **Exhibit D** at p. 27, ll. 17-23; p. 29, ll. 4-7.

### Vessel Location Misrepresentation

9. The "Vessel Location" section of the Application lists "Residence" as the place where the Insured Vessel would be located. *See* **Exhibit A**. The Application does not provide another address for Plaintiff other than what is listed on the first section of the Application (3301 nw [sic] 16 Street, Miami, FL 33125). *See* **Exhibit A**.

---

[4] Mr. Hassun prepared the Application on behalf of the Plaintiff based upon information provided by the Plaintiff. *See* **Exhibit D** at pp. 13-25.

10. Yet, Plaintiff testified that the Insured Vessel was never kept at the address listed on the Application. *See* **Exhibit C** p. 27, ll. 21-25 (**Q.** Okay I got you. So the address where the boat was actually kept really was <u>not</u> 3301 Northwest 16 Street? **A. <u>No, it wasn't kept there.</u>** There is not enough space at that property).

11. Mr. Gamez never resided at the residence listed on the Application, "3301 nw [sic] 16 Street, Miami, FL" during the relevant time period at issue in the instant matter:

> Q. What is your current address?
> **A. 1831 Southwest 75 Avenue, Miami, Florida 33145.**
> **Q. Is that the place where you actually reside?**
> A. Yes.
> \*\*\*
> Q. Okay. And the property that you currently reside at, what's that address again?
> A. 1831 Southwest 25 Avenue. I do not own that property.
> Q. Who owns that property?
> A. My parents.
> **Q. How long have you lived at that property?**
> **A. Since 2005.**[5]

*See* **Exhibit B** at p. 4, ll. 13-16; p. 6, ll. 1-7 (emphasis added).

12. The Insured Vessel was <u>not</u> stored at the "residence" listed on the Application:

> Q. Okay, where was the boat kept?
> A. At his [Alfredo Hassun's] house.
> Q. So from the time it was purchased until the time of the loss it was kept at his [Alfredo Hassun's] house?
> A. Yes, because my boat was at my dock slip.
> Q. Where was his boat kept at his house; was she floating or was it in the driveway?
> A. In a driveway on the trailer.

*See* **Exhibit C** at p. 15; and

> Q. So your cousin didn't have it [Insured Vessel] at your residence, correct?
> A. No, he didn't have it at my residence.

---

[5] The Application was completed on October 22, 2007. As such, at the time the Application was completed, Mr. Gamez resided at 1831 Southwest 75 Avenue, Miami, FL 33145. Mr. Gamez did <u>not</u> reside at 3301 NW 16 Street, Miami, FL.

> Q. And the times you saw the boat, you saw the boat either at your slip which is not your residence, correct --
> A. Correct.
> Q. -- or your cousin's house, right?
> A. Correct.
> Q. Okay. And that's not your residence either, is it?
> A. No, it's not.

*See* **Exhibit B** at p. 45, ll. 21-25; p. 46, ll. 1-4.

13. In fact, Mr. Hassun testified that <u>he</u> stored the vessel at his place of residence, 15280 SW 10 Street, Miami, FL 33194:

> Q. How long did you have the boat in your possession?
> A. I'd say -- a total amount you mean, you want a total?
> Q. Yes, sir, I do.
> A. Maybe like a couple of weeks here, couple weeks there, I think, maybe, like a month or so, month and a half or so."
> Q. And during that month-and-a-half where was the boat primarily stored?
> A. At my home.
> Q. And what's your--what was your address at the time?
> A. 15280 Southwest 10th Street, Miami, Florida 33194.

*See* Deposition Transcript of Alfredo Hassun attached hereto as **Exhibit D** at p. 18, ll. 13-19.

14. The above-referenced address, 15280 SW 10 Street, Miami, FL 33194, is <u>not</u> listed anywhere on the Application. *See* **Exhibit A**.

### **Prior Owned Vessels Misrepresentation**

15. The "Prior Vessel Ownership" section of Application states that Mr. Gamez owned a "2004 Seafox" for a period of three years under the "Prior Owned Vessels" section. *See* **Exhibit A.**

16. Mr. Gamez, however, admitted during his deposition that there were false representations concerning his prior vessel ownership on the Application:

> Q. Okay. So on your application which you have in front of you, and I want it marked as Defense 2, I want you to go down three fourths of that

> page and I want you to look at the portion in which it indicates prior owned vessels and it states, this boat from 2007, a 2007 36-foot Glasstream for one year, and in 2004 a 27-foot Sea Fox for three years. Do you see that?
> A. Yes.
> Q. Okay. Now, you never owned the Sea Fox, correct?
> A. No.
> Q. Okay. So that information as to prior vessels owned by you would be inaccurate, correct?
> A. Correct. It was owned by my father.

See **Exhibit B** at p. 24, ll. 12-24.

17. Further, Mr. Gamez admitted during his Examination Under Oath that he did not own any other vessels besides the Insured Vessel and a separate 36 foot Glasstream:

> Q. Did you own any other vessel at the time you had this policy in place?
> A. Yes.
> Q. What vessels would those be?
> A. 36 foot Glasstream.
> Q. Did you own any other vessels beside the Glasstream?
> A. No.
> Q. Had you ever owned any other vessels besides the Glasstream?
> A. No.

See **Exhibit C** at p. 6, ll. 6-17.

18. Plaintiff's misrepresentations on the Application regarding his prior ownership and/or experience with prior vessels was not limited to the "Sea Fox," as Plaintiff testified regarding a 36-foot Glasstream vessel that he stated he had owned for one (1) year on the Application. Plaintiff stated that such information regarding the 36-foot Glasstream Vessel was "off by about four months" and that said information was thus "inaccurate." See **Exhibit B** at p. 54, ll. 22-25; 55, 1-3.

## III. LEGAL ARGUMENT

### A. Summary Judgment Standard

Summary judgment is intended to avoid the expense and delay of a trial when no issue of material fact exists and judgment is appropriate as a matter of law. The standard for considering a motion for summary judgment is provided by Federal Rule of Civil Procedure 56. The United States Supreme Court has held that "[s]ummary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322; *See also* Fed. R. Civ. P. 56. Moreover, summary judgment is appropriate in federal maritime law to resolve questions of insurance coverage. *See, Home Insurance Co. v. Vernon Holdings, et al.,* 1995 AMC 369 (S.D. Fla. 1994).

### B. Material Misrepresentations and/or Concealments on an Application for Marine Insurance Are Grounds for Voiding the Policy

The evidence in the instant matter establishes that Plaintiff obtained the Policy by making misrepresentations and/or omissions on the Application for such Policy. As more fully discussed below, such misrepresentations and/or omissions have the legal effect of voiding coverage from the inception of the Policy. As the central tenet of this case revolves around such misrepresentations, the application of the federal admiralty principle of *uberrimae fidei* or "utmost good faith" is applicable here and it is the controlling law of the Eleventh Judicial Circuit. *HIH Marine Servs. v. Fraser,* 211 F.3d 1359, 1362 (11th Cir. Fla. 2000) ("It is well-settled that the marine insurance doctrine of *ubberimae fidei* is the controlling law of this circuit"). *Uberrimae fidei* "requires that an

Brown Sims, P.C. | datran two • 9130 S. Dadeland Blvd., Suite 1609 • Miami, Florida 33156
tel: (305) 274-5507; fax: (305) 274-5517

insured fully and voluntarily disclose all facts material to a calculation of insurance risk." *Id.* Moreover, the duty of disclosure "extends to those material facts not directly inquired into by the insurer" and "[w]hether or not asked, an applicant for marine insurance is bound to reveal every fact within his knowledge that is material to the risk." *Id.* at 1362-1363. "Under *uberremai fidei*, a material misrepresentation on an application for marine insurance is grounds for voiding the policy." *Id.* (citing to *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984).

A misrepresentation is considered material if it "could possibly influence the mind of a prudent and intelligent insurer in determining whether he would insure the risk." *Id.* (quoting *Kilpatrick Marine Piling v. Fireman's Fund, Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir. 1986). Under federal maritime law, materiality is a broad concept and is defined as "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." *Northfield Insurance Co. v. Barlow*, 983 F.Supp. 1376, 1379 (N.D. Fla. 1997) (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d at 942-43). Further, in the context of marine insurance, "concealment" is the failure to disclose "any material fact or circumstance in relation to the subject matter of the contract which may increase the liability to loss, or affect the risk assumed, and which is, in fact or law, within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge." *Steelmet v. Caribe Towing Corp.*, 747 F.2d 689, 695 (1984) (quoting *Gulfstream Cargo, Ltd. v. Reliance Insurance Co.*, 409 F.2d 974, 980 (5th Cir. 1969).

### 1. Plaintiff Made Material Misrepresentations on the Application Regarding the Insured Vessel's "Primary Operator"

*Great Lakes Reinsurance (UK) PLC v. Morales* is a case directly on point with the instant matter. *Great Lakes Reinsurance (UK) PLC v. Morales*, 760 F. Supp 1315 (S.D. Fla. 2010). The defendant in *Great Lakes* made material misrepresentations on his marine insurance application regarding his experience and ownership of marine vessels and such misrepresentations were relied upon by the Insurer when it issued the marine insurance policy to the defendant. *Id.* at 1318-19 (stating that "TLD decided to issue Policy No. 200/658/109216, affording coverage on the vessel ... on the basis of information disclosed in these application materials."). The *Great Lakes* court subsequently held that "[r]epresentations concerning the relevant experience of the proposed assured, of the person represented as the individual that owns and will be the operator of the vessel, are material and critical to the underwriting decision." *Id.* at 1321 (emphasis added).

Here, Plaintiff misrepresented who would be the primary operator of the Insured Vessel and, by doing so, he concealed material and critical facts in his Application. When questioned as to who the primary operator of the Insured Vessel actually was Plaintiff responded as follows:

> Q. I want to make sure we are clear. Your cousin used the boat more than you during the time that you guys had it, correct?
> A. Yeah, that seems so.
> Q. Does that seems so or is it accurate?
> A. That's accurate.

See **Exhibit B** at p. 28, ll. 9-12.

> Q. The time that you went out on the boat, did you ever go out on the boat without your cousin on board?

> A. I don't think so.
> Q. Every time you went out, your cousin was with you, correct?
> A. I believe so, yes.
> Q. Okay. But there were times based upon your knowledge that he went out without you, correct?
> A. From what he told me.
> Q. Based on the information that he provided you?
> A. That's correct.

See **Exhibit B** at p. 37, ll. 5-17.

> Q. With regard to that primary operator, you testified in 2008 and here today, that your cousin used the boat more than you, right?
> A. Correct.

See **Exhibit B** at p. 46, ll. 9-12.

Further, the Plaintiff, in his Examination Under Oath, testified that Mr. Hassun was primary operator and that he had the majority of the time on the boat." See **Exhibit C**, at p. 14, ll. 19-25; p. 15, ll. 1-2.

The facts establish that Mr. Hassun was the primary operator of the Insured Vessel because he used it more than the Plaintiff. Further, the facts show that the Insured Vessel was under the control and possession of Mr. Hassun for the vast majority of the time prior to time it was allegedly lost at sea. In fact, Plaintiff testified that he would have to contact Mr. Hassun to ascertain the location of the Insured Vessel and that the Insured Vessel was kept at Mr. Hassun's home. See **Exhibit B** at p. 32, ll. 23-25; p. 33, ll. 1-25; p. 34, l. 1. Given all the material facts, it is clear that the Plaintiff misrepresented who was going to be the primary operator of the Insured Vessel on the Application. As shown in *Great Lakes*, the identification of the primary operator of the vessel is a material and critical fact because it allows an insurer to properly assess its risk prior to determining

whether to extend insurance coverage. Because Plaintiff misrepresented this material and critical fact, the policy must be voided from its inception.

### 2. Plaintiff Failed to Identify Mr. Hassun As an "Additional Operator" Thereby Misrepresenting Material Facts in the Application Regarding the Insured Vessel

Plaintiff failed to identify an Additional Operator of the Insured Vessel notwithstanding his knowledge that Mr. Hassun would be operating the Insured Vessel. *See* **Exhibit B** at p. 51, ll. 18-25; p. 52, ll. 1-11; *See also* **Exhibit C** at p. 10, ll. 12-20; p. 12, ll. 11-17. Moreover, despite the fact that the evidence shows Mr. Hassun was the primary operator of the Insured Vessel, he was not listed on the Application as an Additional Operator. *See* **Exhibit A**. Mr. Hassun's deposition testimony concerning same reads as follows:

> Q. Now the next section of the application is titled, "Additional Operator." You see that section?
> A. Yes.
> Q. Okay. And that section is just blank, is that right?
> A. That's right.
> \*\*\*
> Q. So but even though -- even though you consider yourself an additional operator of the vessel, you didn't list yourself on the application, is that right?
> A. That's correct.

*See* **Exhibit D** at p. 27, ll. 17-23; p. 29, ll. 4-7.

Moreover, Mr. Hassun testified that he knew at the time the Insured Vessel was purchased that he would be operating the Insured Vessel given his relationship with the Plaintiff. *See* **Exhibit D** at p. 58, ll. 2-9; p. 59, ll. 23-25; p. 60, ll. 1-14; p. 62, ll. 6-13.

Given the above, there can be no confusion that Mr. Hassun was an additional operator which should have been disclosed on the Application for the Insurer to consider before providing coverage for the Insured Vessel. Plaintiff's failure to disclose Mr.

Hassun as an additional operator is a material and critical misrepresentation similar to that of the Defendant in *Great Lakes*. Like in *Great Lakes*, Plaintiff's failure to disclose Mr. Hassun as an additional operator should lead to voiding the insurance policy from its inception.

### 3. Plaintiff Made Material Misrepresentations on the Application Regarding His Prior Vessel Ownership/Experience

Here, like the Insured in *Great Lakes* the Plaintiff admitted there are false representations concerning his prior vessel ownership on the Application. *See* **Exhibit B** at p. 24, ll. 12-24. When further questioned regarding his "ownership" of the Sea Fox as referenced on the Application, Plaintiff responded that the portion of the Application wherein it was indicated that he had previously owned the "Sea Fox" was "inaccurate." *See* **Exhibit B** at p. 47, ll. 12-14; p. 55, ll. 16-24. Further, Mr. Hassun, who filled out the Application for Plaintiff, also testified that the information provided on the Application regarding ownership of the "Sea Fox" was "inaccurate." *See* **Exhibit D** at p. 26, ll. 7-19.

Plaintiff's misrepresentations on the Application regarding his prior ownership and/or experience with prior vessels was not limited to the "Sea Fox," as Plaintiff testified regarding a 36-foot Glasstream vessel that he stated he had owned for one (1) year on the Application. Plaintiff stated that such information regarding the 36-foot Glasstream Vessel was "off by about four months" and that said information was thus "inaccurate." *See* **Exhibit B** at p. 54, ll. 22-25; 55, 1-3.

The Plaintiff and Mr. Hassun misrepresented the scope or extent of the Plaintiff's boat ownership and boating experience on the Application. Such misrepresentations were

material to acceptance of the Policy on behalf of the Defendant. For these reasons alone, the Policy should be voided like the policy in *Great Lakes*.

### 4. Plaintiff Made Material Misrepresentations on the Application Regarding the Insured Vessel's Place of Storage

Moreover, Plaintiff's misrepresentations in the Application are not limited to the above-referenced vessel operation, ownership and/or experience. Despite listing the primary location for where the Insured Vessel would be stored as his place of residence (3301 NW 16 St., Miami, FL), Plaintiff admitted in his deposition that the primary place of storage for the Insured Vessel was not at Plaintiff's place of residence but at multiple locations, none of which were listed on the Application. *See* **Exhibit B** at p. 20, ll. 24-25; p. 21, ll. 1-10. Moreover, Mr. Gamez never resided at the listed residence on the Application, "3301 nw [sic] 16 Street, Miami, FL" during the relevant time period at issue in the instant matter. *See* **Exhibit B** at p. 4, ll. 13-16; p. 6, ll. 1-7. Specifically, Plaintiff testified:

> Q. Okay. So during those 32 or 34 days that the boat was in your possession or your cousin's possession, custody, or control, where was the boat housed during those 32 to 34 days?
> A. As I said, it was at his house the couple times I saw it.
> Q. Other than that, you don't know where the boat was because it wasn't at your residence, correct?
> A. Correct. I have no personal knowledge as to where it was located.
> Q. But it wasn't your residence, correct?
> A. That's correct.
> Q. Is that accurate? I didn't hear you.
> A. That is accurate.
> Q. Your place of residence back at that time -- I want to make sure whether you are accurate here -- was what?
> A. 1831 Southwest 25th Avenue.
> Q. The address located on the application is what?
> A. 3301 Northwest 16 Street.
> Q. Is there any reference to the address where you resided at anywhere in this application?

Brown Sims, P.C. | datran two • 9130 S. Dadeland Blvd., Suite 1609 • Miami, Florida 33156
tel: (305) 274-5507; fax: (305) 274-5517

> A. I don't see it.

*See* **Exhibit B** at p. 35, ll. 22-25; and p. 36, ll. 1-19.

Mr. Hassun also testified that the Insured Vessel was never stored or located at the residence indicated on the Application and no other address was provided on the Application. *See* **Exhibit D** at p. 27, ll. 3, 9-16.

Mr. Hassun further testified that the Insured Vessel was kept at his home address, 15280 Southwest 10th Street, Miami, FL:

> Q. How long did you have the boat in your possession?
> A. I'd say -- a total amount you mean, you want a total?
> Q. Yes, sir, I do.
> A. Maybe like a couple of weeks here, couple weeks there, I think, maybe, like a month or so, month and a half or so."[6]
> Q. And during that month-and-a-half where was the boat primarily stored?
> A. At my home.
> Q. And what's your--what was your address at the time?
> A. 15280 Southwest 10th Street, Miami, Florida 33194.

In addition, a Police Report[7] indicating that the Insured Vessel had been stolen, listed the address of Mr. Hassun (15280 Southwest 10th Street, Miami, Florida 33194) as the location from which the Insured Vessel was allegedly stolen.

Again, because Plaintiff misrepresented where the Insured Vessel was going to be located on the Application thereby failing to provide Defendant with material and critical information, the Policy must be voided, like the policy in the *Great Lakes* decision.

---

[6] As indicated at page 15, *supra*, Mr. Gamez testified that the Insured Vessel was owned for approximately 32 to 34 days or roughly the "month and a half or so" that the Insured Vessel was stored at Mr. Hassun's place of residence, 15260 SW 10 St, Miami, FL.

[7] On or about January 11, 2008, after the Insured Vessel had been reported as missing to the U.S. Coast Guard, the Plaintiff filed a false Police Report stating that the Insured Vessel had been stolen from the rear curtilage area of the residence located at 15280 SW 10 St., Miami, FL 333194, which Mr. Hassun testified to as being his address. *See* Offense Incident Report from the Miami-Dade Police Department attached hereto as **Exhibit E**; *see also* **Exhibit D** at p. 18, ll. 13-19; and ¶¶ 13 and 14, *supra*.

Case No. 11-22842-CIV-SEITZ/SIMONTON

## CONCLUSION

Even viewing the evidence in the light most favorable to the Plaintiff, there is no question that Plaintiff made numerous material and critical misrepresentations on the Application. Further, the Plaintiff failed to make the requisite disclosures required under the marine doctrine of *uberrimae fidei*. The Plaintiff cannot escape the doctrine of *uberrimae fidei* by claiming that he had "no personal knowledge" of what information was incorporated into the Application as he so tried to do during his deposition. The testimony in this case establishes that Plaintiff did not have any reservations about making material misrepresentations on the Application. In fact, the Plaintiff's testimony demonstrates that he did not ever bother to read or review the Application before executing same. *See* **Exhibit B** at p. 15, ll.16-25; and p. 42, ll. 2-12

Federal law from this Court makes it clear that even if a broker, or an agent of the insured fills out an insurance application form for the insured, the insured will still be bound by the information on such application; and if such information is misrepresentative the policy will be void. This very Court has held that:

> Further any reasonable juror would …find that a prospective insured's lack of any previous boating or boat-owning experience is material to the insurer's decision regarding whether to accept the risk and on what terms. (Citation omitted). A person with no boating experience is certainly more of an insurance risk than a person with significant boating experience; auto insurance companies charge new drivers higher premiums than more experienced drivers for this very reason. Applying the doctrine of *uberrimae fidei* to the undisputed facts of this case, the Court finds Defendants' material misrepresentations and/or non disclosures of material facts void the policy. *Great Lakes Reinsurance (UK) plc v. Arbos*,
> 2008 U.S. Dist. LEXIS 109472, *16-17 (S.D. Fla. 2009).

This Court further held that "although Defendants may never have personally made any misrepresentations to Plaintiff or TLD, the fact remains that the Yacht Information and Yacht Application forms that were received by TLD contained such misrepresentations. <u>The existence of such material misrepresentations in an application for insurance voids the policy, regardless of how such misrepresentations came to appear in the application.</u>" *Id.* at *17; *see also HIH Marine Services, Inc. v. Fraser*, at 1362-63 (11th DCA Fla.).

Moreover, in *Certain Underwriter's at Lloyd's v. Giroire*, this Court held that:

> Because the doctrine of uberrimae fidei requires an insured to voluntarily and accurately disclose to the marine insurer all materials risks which might have a bearing on the underwriter's decision to accept or reject the insurance, or with respect to what premium to charge, (citation omitted), Giroire cannot escape this requirement by passing this responsibility on to his agent. Under uberrimae fidei it is the insured who is in the best position to know and report any facts or circumstances material to the risk.

*Underwriter's at Lloyd's v. Giroire*, 27 F. Supp 2d 1306, 1313 (S.D. Fla. 1998)

Consequently, it is the Plaintiff who must carry the risk afforded by such misrepresentations on the Application. When such misrepresentations are material and critical to the Insurer's decision making regarding insurance coverage, the policy must be voided under the doctrine of *uberrimae fidei*. Here the numerous misrepresentations made on the Application are material and critical. As such, based on the above-referenced facts and law, there is no question of material fact concerning whether or not the Defendant is entitled to void the Policy and, as such, final summary judgment should be granted in favor of the Defendant.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully Submitted,

**BROWN SIMS, P.C.**

By: /s/ Frank J. Sioli
FRANK J. SIOLI, ESQ.
Florida Bar No. 009652
fsioli@brownsims.com
MICHELE LO PRESTI, ESQ.
Florida Bar No. 011600
mlopresti@brownsims.com
MARLIN K. GREEN, ESQ.
Florida Bar No. 419532
mgreen@brownsims.com
Brown Sims, P.C.
Datran II, Suite 1609
9130 S. Dadeland Boulevard
Miami, Florida 33156
Telephone:   305.274.5507
Facsimile:    305.274.5517
Attorneys for Defendant, ACE
AMERICAN INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Court by using the CM/ECF system, which will send notice and serve a true and correct copy of the foregoing on all counsel of record on the Service List below on this 17th day of August, 2012.

/s/ Frank J. Sioli
FRANK J. SIOLI
For the Firm

Case No. 11-22842-CIV-SEITZ/SIMONTON

## SERVICE LIST

**HOWARD LEVINE, ESQ.**
Florida Bar No.: 0075670
Attorney for Plaintiff
1560 Lenox Avenue, Suite 307
Miami Beach, Florida 33139
Telephone: 305/534-0403
Facsimile: 305/672-5305
HLevineEsq@aol.com

**MICHAEL LAURATO, ESQ.**
Florida Bar No: 181447
AUSTIN & LAURATO, P.A.
1902 West Cass Street
Tampa, Florida 33606
(813)258-0624
(813)258-4625 Facsimile
Mlaurato@Austinlaurato.com
TRIAL COUNSEL