IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.:  11-22842-CIV-SEITZ/SIMONTON

EURYS GAMEZ,

       Plaintiff,

vs.

ACE AMERICAN INSURANCE
COMPANY,

       Defendant.

_____/

### PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

     Plaintiff, EURYS GAMEZ ("Gamez"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 50(b), hereby submits this Renewed Motion for Judgment as a Matter of Law against Defendant, ACE AMERICAN INSURANCE COMPANY ("AAIC") or, in the alternative and pursuant to Federal Rule of Civil Procedure 59(a), submits this Motion for New Trial, and states:

### I.      PRELIMINARY STATEMENT

     This case involves Gamez' claim for coverage under a wet marine policy of insurance for his fishing yacht.  AAIC issued Gamez an all risk wet marine policy which afforded the broadest maritime coverage for all unintended losses -- including mysterious disappearance -- unless specifically excluded.  The boat was loaned by Gamez' cousin, Alfredo Hassun,[1] to an acquaintance, Alexis Suarez, for a fishing trip on November 24, 2007.  The boat never returned and Alexis Suarez was never heard from again.  To this day, the cause of the loss is unknown. At trial, the jury found that the loss was "fortuitous," meaning accidental and unintended by the insured.  To void coverage, in addition to proving intentional and material misrepresentations, AAIC was obligated pursuant to Florida Statute §627.409(2) to prove that a breach of a warranty, condition, or provision of this wet marine policy "increased the hazard by any means within the control of the insured."  The jury was correctly instructed as to this burden.  AAIC

_____

[1] The Court determined that Hassun was Gamez' agent as a matter of law.

sought judgment in its favor on one defense based on Late Notice and two affirmative defenses based on alleged breaches of the General Conditions and Exclusions section of the policy – (1) Concealment, Misrepresentation or Fraud; and (2) Dishonest, Illegal or Intentional Acts – but at trial, AAIC utterly failed to address the question of how these alleged breaches "increased the hazard by any means within the control of the insured," let alone adduce any competent evidence to support their burden to prove it.  Because there was no legally sufficient evidentiary basis for a reasonable jury to find that AAIC has met its burden under Fla. Stat. §627.409(2) to show that a breach of the pertinent policy provisions increased the hazard by any means within the control of the insured, Gamez is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, he is entitled to a new trial pursuant to Fed.R.Civ.P. 59(a).

## II.    RELEVANT PROCEDURAL BACKGROUND

This cause, based on Plaintiff's one-count Complaint for breach of contract, was tried by jury between September 9, 2013 and September 17, 2013.  Defendant asserted three affirmative defenses arising pursuant to the provisions of the wet marine policy of insurance:  (1) Late Notice; (2) Concealment, Misrepresentation or Fraud; and (3) Dishonest, Illegal or Intentional Acts.  AAIC bore the burden of proof by the greater weight of the evidence as to each of these defenses.  At the close of all the evidence on September 13, 2013, Gamez moved for directed verdict as to all three affirmative defenses.  The motions specifically raised the issue of AAIC's burden to prove that a breach of the policy increased the hazard by any means within the control of the insured, as to all three of AAIC's affirmative defenses.  Accordingly, the issues raised in this Renewed Motion for Judgment as a Matter of Law have been properly preserved.[2]  The Court denied Plaintiff's motion as to the first and second defenses:  Late Notice; and Concealment, Misrepresentation or Fraud.  The Court reserved ruling on the motion directed at AAIC's third defense:  Dishonest, Illegal or Intentional Acts.

The jury returned a verdict finding that Gamez had proven his breach of contract claim.  To do so, Gamez was required to satisfy, *inter alia*, the *prima facie* element of the claim requiring that his vessel suffered "accidental direct physical loss."  The jury was instructed that "accidental direct physical loss" means "any event which is unforeseen, unexpected, and so far as the parties are concerned is dependent upon chance."  (DE-128, at p. 8).

---

[2] A renewed motion for judgment as a matter of law is technically only a renewal of a motion for directed verdict made at the close of evidence and cannot assert a ground that was not included in the motion for a directed verdict. House of Koscot Development Corp. v. American Line Cosmetics, Inc., 468 F.2d 64 (5th Cir. 1972).

As to AAIC's affirmative defenses, the jury found that AAIC did not prove its first affirmative defense of late notice. The jury rendered a verdict for AAIC, however, based on the second affirmative defense, finding that Gamez (or Hassun, his agent) intentionally misrepresented a material fact or circumstance related to the application of insurance or contract of insurance before or after the alleged loss. (DE-128, Jury Instructions and Verdict Form, at p. 18, Question 3). Based on this case dispositive finding, the jury did not reach AAIC's third affirmative defense, to wit, that the insured vessel was used by Gamez or someone to whom he entrusted the vessel, in a dishonest, illegal or intentional act at the time of the alleged loss. In view of the jury's case dispositive finding, Gamez' motion for directed verdict as to AAIC's third affirmative defense, previously taken under advisement, was denied as moot. (DE-133). Pursuant to Fed.R.Civ.P. 50(b), Gamez herein timely renews his motions for judgment as a matter of law directed to AAIC's second and third affirmative defenses. In the alternative, pursuant to Fed.R.Civ.P. 59(a), Gamez timely moves for a new trial.

### III.   RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW – RULE 50(b) AND THE LEGAL STANDARD

Fed.R.Civ.P. 50(b) provides:

(b) RENEWING THE MOTION AFTER TRIAL; ALTERNATIVE MOTION FOR A NEW TRIAL. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

Under the Eleventh Circuit standard, a district court should grant judgment as a matter of law when a party presents no legally sufficient evidentiary basis for a reasonable jury to find for him or her on a material element of his or her cause of action." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192 (11th Cir. 2004); Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1176-78 (11th Cir. 2002). In order to survive a motion for judgment as a matter of law, a non-moving party must "present evidence that would permit a reasonable jury to find in the

[non-moving party's] favor **on each and every element of the claim**." Bogle v. Orange County Bd. Of County Comm'rs, 162 F.3d 653, 659 (11th Cir. 1998) (emphasis added). "Although [the Court] look[s] at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1312 (11th Cir. 2006), *quoting* Abel v. Dubberly, 210 F.3d 1334, 1337 (11th Cir. 2000). In other words, a motion for judgment as a matter of law "need not be reserved for situations where there is a complete absence of facts to support a jury verdict," but is appropriate when there is no "substantial conflict in evidence to support a jury question." Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989); Ames v. Provident Life and Accident Ins. Co., 942 F.Supp. 551 (S.D.Fla. 1994). Rule 50 allows a trial court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." Weisgram v. Marley Co., 528 U.S. 440, 447 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure §2521, at 240 (2d ed. 1995)).

## IV.     MOTION FOR A NEW TRIAL –
## RULE 59(a)(1)(A) AND THE LEGAL STANDARD

Fed.R.Civ.P. 50(a)(1)(A) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party -- . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." While Rule 59 itself does not set forth a specific standard applicable to Rule 59 relief, a federal district court judge may set aside a verdict and grant a new trial if in her opinion verdict is against the clear weight of evidence or will result in miscarriage of justice, even though there may be substantial evidence which would prevent direction of verdict. Byrd v. Blue Ridge Rural Elec. Cooperative, Inc., 356 U.S. 525, 540 (1958); Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183 (11th Cir. 2001); Ames v. Provident Life and Accident Ins. Co., 942 F.Supp. 551, 555 (S.D.Fla. 1994).

Unlike motions for judgment as a matter of law, motions for new trial are committed to the discretion of a federal district court judge. McDonough Power Equipment v. Greenwood, 464 U.S. 548, 556 (1984); Hessen v. Jaguar Cars, 915 F.2d 641, 644 (11th Cir. 1990). That authority vested in the federal district court judge is large. *See* 6A Moore's Federal Practice ¶ 59.05[2], pp. 59–44 to 59–46 (2d ed. 1996). The exercise of the trial court's power to set aside the jury's verdict and grant a new trial is not in derogation of the right of trial by jury but is one

of the historic safeguards of that right." <u>U.S. for Use and Benefit of Weyerhaeuser Co. v. Bucon Constr. Co.</u>, 430 F.2d 420 (5th Cir. 1970) (citations omitted).[3]  While the trial judge cannot weigh the evidence when confronted with a motion for judgment as a matter of law, he or she may do so on a motion for new trial, provided that the motion is granted only if the jury verdict has been found to be contrary to the great, not merely greater, weight of the evidence.  <u>Watts v. Great Atlantic and Pacific Tea Co., Inc.</u>, 842 F.2d 307, 310 (11th Cir. 1988).

If alternative motions for judgment as a matter of law and for new trial are presented, the Court should rule on the motion for judgment, and "whatever his [or her] ruling thereon he [or she] should also rule on the motion for a new trial, indicating the grounds of his [or her] decision." <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243 (1940); *see also* <u>Fed.R.Civ.P. 50(c)(1)</u>.  If the Court concludes that the jury verdict was against the great weight of the evidence, granting a new trial is proper.  <u>Bazile v. Bisso Marine Co.</u>, 606 F.2d 101, 105 (5th Cir. 1979), *citing* <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. at 306-307.

## V.    ARGUMENT

**A.    <u>The Jury's Verdict, that Gamez and/or Hassun (as Agent of Gamez) Intentionally Misrepresented a Material Fact or Circumstance Related to the Contract of Insurance Before or After the Alleged Loss, Must be Vacated as a Matter of Law.</u>**

Florida law has long distinguished defenses applicable to wet marine insurance policies from those available under all other types of policies.  The legislature has determined that only certain limited, causally connected misrepresentations constitute valid defenses to wet marine policies.  Fla. Stat. §627.409(2).  On the evidence presented at trial there was no legally sufficient evidentiary basis for a reasonable jury to have found that AAIC satisfied its burden to prove, as required under Florida Statute §627.409(2), that any misrepresentation made by Gamez or his agent Alfredo Hassun "increased the hazard by any means within the control of the insured."  Such a finding would necessarily, as per the plain wording of the relevant statutory provision, require that Defendant prove a direct causal connection between any alleged breach of a warranty, condition or provision of the subject wet marine policy of insurance and an increase in the hazard by any means within the control of the insured.[4]  This burden may be properly

---

[3] Decisions of the Fifth Circuit issued prior to October 1, 1981 are binding precedent in the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).
[4] Note that Florida Statute §627.409(2) does not require that the increased hazard be the effectual cause of the loss for an insurer to avoid liability.  (In this regard, Fla. Stat. §627.409(2) is more favorable to insurers than certain corresponding statutes in some other states.  For example, in Texas, Tex. Ins. Code §862.054 (2006) does not allow

regarded as a heightened standard of "materiality" which Florida law imposes on an insurer as to wet marine policies of insurance.  The jury was correctly instructed on this point of law.[5]  The verdict that AAIC proved its affirmative defense regarding the policy's "Fraud, Misrepresentation, or Concealment" provision must be vacated because the jury's decision was plainly wrong.  The verdict was unsupported by any evidence at all; thus, it cannot possibly meet the "more than a mere scintilla of evidence" standard which is required by the Eleventh Circuit.

### 1.  AAIC Was Unprepared to Meet Its Fla. Stat. §627.409(2) Burden Because It Misapprehended the Applicable Law of the Case.

At every stage of these proceedings, including throughout the trial, it has been evident that AAIC failed to apprehend its heightened statutory burden under a wet marine policy of insurance to prove that a breach of any warranty, condition or provision of the policy increased the hazard by any means within the control of the insured.  Instead, AAIC invited the jury to disregard the law and to apply an incorrect legal standard, based on (1) the general maritime doctrine of *uberrimae fidei* and its concomitant approach to disposing of "materiality" when an insured makes misrepresentations on an insurance application or relating to a contract of insurance before or after a loss.  This invitation to nullify the law was improper, as counsel is confined to principles that will later be incorporated and charged to the jury.  United States v. Trujillo, 714 F.2d 102, 106 (jury nullification argument would improperly encourage jurors to violate their oath and apply the law at their own caprice).

*Uberrimae fidei* is a maritime doctrine which requires that an insured voluntarily discloses to the insurer, fully and accurately, all facts material to a calculation of the insurance risk.  Great Lakes Reinsurance (UK) PLC v. Morales, 760 F.Supp.2d 1315 (S.D.Fla. 2010), *quoting* Certain Underwriters at Lloyd's, London v. Giroire, 27 F.Supp.2d 1306, 1311 (S.D.Fla. 1998).  When *uberrimae fidei* is applied, the next inquiry is whether the misrepresentation was "material" to the extent that it provides grounds for voiding the policy.  A misrepresentation is

---

an insurer to avoid liability unless the breach of a warranty, condition or provision of a fire insurance policy or contract of personal property insurance or an application therefor contributes to the cause of destruction of the property.)  Imagine, for example, that an insured under a wet marine policy of insurance places a whiskey still on her vessel, which constitutes a known fire hazard.  In Florida, an insurer could avoid liability if a fire erupted on the vessel for a reason other than the installation of the still, presuming that the insurer proffers more than a mere scintilla of evidence that the flammability of escaped alcohol vapors is an inherent risk in the process of distilling moonshine onboard the vessel.  Nevertheless, it is clear and unequivocal that the plain language of the statute does **not** allow an insurer to avoid liability unless the insurer **does** prove a causal relationship between the breach of a provision of the insurance policy and the increase in the hazard.  This is precisely what AAIC has failed to address.
[5] See DE-128, Court Jury Instructions, at p. 9.

material if "it might have a bearing on the risk to be assumed by the insurer." <u>HIH Marine Servs. Inc. v. Fraser</u>, 211 F.3d 1359, 1363 (11th Cir. 2000); *see also* <u>Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.</u>, 795 F.2d 940, 942-43 (11th Cir. 1986) (materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk"). Fla. Stat. §627.409(1) incorporates a similarly stringent (as to the insured) standard for materiality, and allows an insurer to void coverage where there is any misrepresentation on an application for insurance, even if the misrepresentation is unintentional, providing that the insurer prove that the misrepresentation is material to the acceptance of the risk or the hazard by the insurer (Fla. Stat. §627.409(1)(a)), or that the insurer would not have issued the policy or would not have issued the policy at the same premium, had the true facts been known. (Fla. Stat. §627.409(1)(b). <u>Life Ins. Co. of Va. Shifflet</u>, 201 So. 2d 715 (Fla. 1967) (construing predecessor statute); *see also* <u>Casamassina v. U.S. Life Ins. Co. in the City of New York</u>, 958 So. 2d 1093 (Fla. 4th DCA 2007).

As resolutely held by this Court in its Order Denying Defendant's Motion for Summary Judgment (DE-54), the foregoing standard does **not** apply in this case. This is because AAIC contracted around *uberrimae fidei* by using policy language which voids coverage only when there are intentional misrepresentations of any material fact or circumstances relating to the contract of insurance or the application for such insurance. <u>King v. Allstate Ins. Co.</u>, 906 F.2d 1537 (11th Cir. 1990). Accordingly, the parties' relationship is governed by the policy language which provides the insured with a more favorable standard regarding misrepresentation (i.e., **intentional** misrepresentation is required to void coverage) than that which is prescribed by Fla. Stat. §627.409(1) or *uberrimae fidei*. It is well-established under Florida and Eleventh Circuit law that once an insurer has set its own standard by contract for judging misrepresentations and concealment, it cannot rely on a statute imposing more stringent requirements on an insured. <u>State Farm Fire & Cas. Co. v. Oliver</u>, 854 F.2d 416, 419-420 (11th Cir. 1988).

The Florida Supreme Court has recognized that a forfeiture of rights under an insurance policy is not favored by the law, especially where, as in the case *sub judice,* "a forfeiture is sought after the happening of the event giving rise to the insurer's liability." <u>Johnson v. Life Ins. Co. of Ga.</u>, 52 So. 2d 813, 815 (Fla. 1951). An insurer remains bound to adhere to those statutory protections which are afforded to the insured, and is not free to evade or attempt to elude the imposition of such statutory protections. This platitude is not vitiated by the fact that

an insurer contracts into a more favorable standard for its insured than that which would otherwise be imposed by a statutory standard, as AAIC has done in the instant case.  Once such statutory protection is Fla. Stat. §627.409(2), which prevents an insurer from avoiding coverage unless it can establish that a breach of a wet marine insurance policy increased the hazard by any means within the control of the insured.

Despite the fact that *uberrimae fidei* was rejected as the law of the case, at trial AAIC constructed its legal theory of avoidance of liability based on its tenets – that an insurer could reject coverage and avoid coverage *ab initio* upon a showing that Gamez (and/or Hassun as the Gamez' agent) displayed a lack of utmost good faith by willfully concealing, or failing to willfully disclose, all of the information which AAIC either sought on the insurance application, and, after the loss, by misrepresenting material facts about the ownership of the subject vessel to the United States Coast Guard and on the Sworn Proof of Loss, and by filing a "false police report.[6]  In the minds of AAIC and its counsel, the Fla. Stat. §627.409(2) hurdle really didn't come into play.  This oversight is fatal to AAIC's case.

## 2. The Jury was Correctly Charged Regarding the Applicability of Fla. Stat. §627.409(2), which Imposes a Stricter Standard of Materiality in a Wet Marine Policy, as to Which AAIC Bears the Burden of Proof.

Florida Statute §627.409(2) provides:

> (2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor shall not render void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

This statute is commonly known as Florida's "anti-technical" statute.  Independent Fire Ins. Co. v. Paulekas, 633 So. 2d 1111, 1113 (Fla. 3d DCA 1994).  This is because the statute is designed "to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss," Pickett v. Woods, 404 So. 2d 1152, 1153 (Fla. 5th DCA 1981), and to ensure that the

---

[6] While AAIC was expected to adduce evidence to support its view that Gamez also misrepresented material facts after the loss by filing a "false police report," neither the so-called "false police report," which was authored by Miami-Dade Police Officer Perez (and not by Gamez or Hassun), nor any evidence to support the argument that Gamez provided the police officer with false information, was admitted into evidence, as Officer Perez lacked personal knowledge about his report.  Therefore, Gamez asserts that for AAIC has adduced no competent probative evidence upon which a reasonable juror could have found that Gamez or Hassun intentionally made material misrepresentations after the loss relating to the contract of insurance by filing a false police report, for purposes of both Gamez' Rule 50(b) and alternative Rule 59(a) motions.

breach "significantly alters the risk of loss [the insurer] would be called on to bear."  Fireman's
Fund Ins. Co. v. Cox, 742 F.Supp. 609, 611 (M.D.Fla.), aff'd 892 F.2d 87 (11th Cir. 1989).
Otherwise, if an insured breached a condition of the policy not pertinent to the loss, "the insurer
would collect a premium but would have no exposure to the risk because the policy would no
longer be effective.  Pickett, at 1153.  By its very terms, Fla. Stat. §627.409(2) applies, and will
be enforced, only as to wet marine and transportation insurance policies.  Oretsky v. Infinity Ins.
Co., --- Fed.Appx. ----, 2013 WL 3838113 (11th Cir. July 26, 2013); Paulekas, 633 So. 2d at 113.

Maritime insurance contracts are governed by state substantive law pursuant to the
"reverse Erie Doctrine," because uniform admiralty laws have not been, and should not be,
fashioned to regulate maritime insurance policies.  Wilburn Boat Co. v. Fireman's Fund Ins. Co.,
348 U.S. 310, 75 S.Ct. 368, L.Ed. 337 (1955).[7]  Accordingly, the trial court's jury instruction
incorporating Fla. Stat. §627.409(2) was not only proper, but was mandatory.

The paradigm for the correct application of Fla. Stat. §627.409(2) to preclude an insurer
from rescinding a policy as a matter of law is described in Proprietors Ins. Co. v. Siegel, 410 So.
2d 993 (Fla. 3d DCA 1982).  In Siegel, the insurer sought reversal of a summary judgment which
established that Siegel's yacht was covered by a marine policy of insurance when it sank while
under the care of a charterer and argued, inter alia, that Siegel breached a policy provision which
voided coverage in the event that the insured chartered the vessel without written consent.
Applying Fla. Stat. §627.409(2), the Third DCA affirmed summary judgment in favor of Siegel
on the ground that Proprietors did not argue that Siegel's failure to obtain its consent increased
the hazard.  The 3rd DCA held, as Gamez is requesting the Court to hold here, that Proprietors'

---

[7] While both the Eleventh Circuit and Florida courts have held that an exception applies specifically to "navigational
limit warranties" which have been found to be governed by general admiralty law, those exceptions are inapposite as
to the case sub judice and are, accordingly, beyond the reach of this motion.  See, e.g., Lexington v. Cooke's
Seafood, 835 F.2d 1364 (11th Cir. 1988) (holding that construction of navigational limit warranties has been an
established admiralty rule of the federal judiciary for purposes of applying the reverse Erie doctrine and therefore
rejecting the applicability of Fla. Stat. §627.409(2)); Home Ins. Co. v. Vernon Holdings, 1994 WL 791971 (S.D.Fla.
1994) (same); Aetna Ins. Co. v. Dudney, 595 So.2d 238 (Fla. 4th DCA 1992) (same).  Cf., Windward Traders, Ltd. v.
Fred S. James & Co. of New York, Inc., and P.W. Kininmonth, Ltd., 855 F.2d 814 (M.D.Fla. 1988) (applying Fla.
Stat. §627.409(2) to reject insurer's attempt to avoid coverage based on insured's breach of a policy provision
requiring proper prior notice in the event the insured breached a "locality" warranty, holding that the insured's
failure to notify underwriters that the vessel was outside of Caribbean waters when it sank clearly did not increase
the hazard to the vessel).  In the instant case, in addition to the fact that the parties contracted around general
maritime law, the General Conditions of the subject maritime insurance policy contain a CONFORMITY TO
STATE LAW provision which expressly provides that "[w]hen a provision of this policy is in conflict with the
applicable law of a state in which this policy is issued, then the law of the state shall apply."  (DE-1-1, at p. 16 of
19).

contention that the policy was void was a nullity in the absence of competent evidence disclosing the existence of genuine issues of material fact as to how the breach increased the hazard.

It is settled as a matter of Florida law that the burden of pleading and proving a breach of a wet marine policy condition and a **resulting** increase of the hazard is on the insurer.  Great Lakes Reinsurance (UK), PLC v. Rosin, 757 F.Supp.2d 1244, 1258 (S.D.Fla. 2010), *citing* Florida Power & Light Co. v. Foremost Ins. Co., 433 So. 2d 536, 536-37 (Fla. 4th DCA 1983). For purposes of a §672.409(2) analysis, the term "hazard" is to be construed as "danger to the insured vessel itself." Eastern Ins. Co. v. Austin, 396 So. 2d 823, 825 (Fla. 4th DCA 1991).

### 3.  AAIC has Adduced NO Evidence of an Increased Hazard By Any Means Within the Control of the Insured, Let Alone Evidence to Support its Burden to Prove that One of the Plaintiff's Alleged Intentional Misrepresentations or Concealments Proximately Caused Such an Increased Hazard.

The record contains an absolute dearth of admissible evidence as to what happened to the missing vessel.  AAIC has strained, through improper innuendo and by inviting the jury to draw impermissible inferences therefrom,[8] to create the misimpression that Hassun was a miscreant who in some undefined fashion was aware that the boat was used to smuggle Cubans into the United States.   This conjecture is rooted in the report of U.S. Coast Guard Special Agent Aaron Woods and his concomitant deposition testimony that he interviewed Gamez and Hassun regarding a Miami Herald newspaper article which referred to a vessel missing at sea which Special Agent Woods believed to be Gamez' vessel.  The vessel described in the newspaper

---

[8] *See, e.g.*, Rodgers v. Auto-Owners Ins. Co., 379 So. 2d 700 (Fla. 2d DCA 1980).  In Rodgers, a directed verdict in favor of the insurer was reversed and judgment rendered in favor of the insured, where circumstances which were relied upon by the insurer to show that the insured had knowledge that a fire was about to occur were equally susceptible to other explanations and therefore did not prove the insurer's defense that insured's knowledge of impending fire voided coverage under the policy.  The court held that, despite the occurrence of various arguably suspicious events, such as, *inter alia*, (1) Rodgers extended her policy just prior to the fire, (2) Rodgers removed a considerable number of personal items from the insured premises and placed them into a rented storage bin a few weeks before the fire, and (3) Rodgers borrowed money shortly after the fire, the confluence of events was insufficient to prove that Rodgers had knowledge that a fire was about to occur, because proving Rodgers' knowledge would require an impermissible "pyramiding of inferences." Rodgers, 379 So. 2d at 702.  Here, throughout the trial, AAIC sought to create an impression that Suarez was culpable of dishonest, illegal or intentional acts, albeit there was no admissible evidence to support the innuendo.  Further, AAIC sought to create the impression that, somehow, because of the alleged misrepresentations by Gamez and/or Hassun on the application for insurance and to the United States Coast Guard relating to the ownership of the vessel, that inferences should be drawn that Gamez and/or Hassun were complicitous in the allegedly wrongful acts of Suarez.  To bolster this effort, during hostile direct-examination of Hassun, counsel for AAIC asked in the presence of the jury, in flagrant violation of the conditions set forth at Fed.R.Evid. 609(b) for the admissibility of a remote conviction, ". . . you've been convicted of burglary, right"?  *See* Transcript of Trial Testimony of Alfredo Hassun, attached as Exhibit "A", at 82:3-97:3.  As such, AAIC was inviting precisely the kind of impermissible pyramiding of inferences which was rejected in Rodgers.

article was purportedly used to smuggle Cubans and 44 persons were presumed dead.[9]   The Court ruled that the Woods' report was inadmissible hearsay (DE-95) and instructed the jury not to consider Woods' theory as to what happened to Gamez' vessel as substantive evidence as to its truth.  The only other evidence of record with respect to the cause of the loss is testimony from Gamez that he was asked by the United States Coast Guard to assume, first, that the vessel was stolen and, later, that the vessel was missing at sea.

Upon consideration of Fla. Stat. §627.409(2) as it applies to the facts of this case, a threshold question arises:  is it even possible for an insurer to satisfy its burden to establish that a breach of a policy provision "increased the hazard by any means within the control of the insured" where, as here, there is no competent evidence as to what caused the loss of the boat, or in another words, what the hazard even is?

Gamez asserts that it should be plainly evident, that without having placed any competent admissible evidence into the record as to what happened to the missing vessel on the record, AAIC should be foreclosed from even attempting to satisfy the statute as a matter of law, because AAIC has been unable to even identify the target at which to take aim.  Having failed to identify the "hazard," AAIC has relied on its efforts to impeach the credibility of Gamez and Hassun to garner jury sympathy for its cause that there should be no recovery if the jury finds material misrepresentations have been made by Gamez (or Hassun, his agent).  AAIC has neglected to address the heightened burden of materiality imposed on a wet marine insurance carrier to demonstrate by the greater weight of the evidence that an insured's misrepresentation increased the hazard by means within the control of the insured.  Where the insurer does not even have a scintilla of competent evidence to identify what that hazard is, the degree to which an insurer might succeed at impeaching the credibility of the insured is of no significance, in the absence of the insurer's ability to address, let alone satisfy, the causation element of Fla. Stat. §627.409(2).

---

[9] In fact, the Miami Herald article referred to a "Wellcraft" vessel, as opposed to a "Glasstream" vessel, which was owned by Gamez.  At trial, Gamez testified that he told Special Agent Woods that the vessel could not have been his boat because, *inter alia*, the vessel referred to was a "Wellcraft" and not a "Glasstream."  In closing argument, counsel for AAIC ridiculed Gamez' testimony that Special Agent Woods inquired about a "Wellcraft" vessel, and not a "Glasstream" vessel, as self-serving, and thereby impugned the credibility of Gamez.  To the extent that inadmissible hearsay is excluded from evidence precisely because of its inherent unreliability, it is ironic that  AAIC was able to capitalize on the inadmissibility of the newspaper article, which even if it were inherently inaccurate (and unreliable) in its factual presentation, would have at least vindicated Gamez with respect to the credibility of his testimony, to the extent that he relied in good faith on the accuracy of the factual presentation in the Miami Herald article.

Assuming *arguendo* that the Court may find that even though the cause of the loss is unknown in this case, the cognizable "hazard" to which Fla. Stat. §627.409 applies in this case may be rightfully identified as that of a "missing vessel," a proper and thorough analysis still necessitates the same finding, to wit:   AAIC has not satisfied its burden to prove a causal relationship between any intentional misrepresentation of a material fact or circumstance related to the application of insurance or contract of insurance before or after the alleged loss fraud and the increased hazard of a missing vessel.

Gamez does not purport to fatuously assert that under no circumstances can a court ever find for an insurer under Fla. Stat. §627.409(2) and hold that an insured did increase the hazard by any means within his or her control.  In fact, the illustration of those circumstances under which courts of this appellate circuit have found that Fla. Stat. §627.409(2) does (or would, if Florida law applied) apply to vitiate coverage can only serve to elucidate the reasons that such relief does not apply in this instant case.

For example, in Great Lakes Reinsurance (UK), PLC v. Rosin, 757 F.Supp.2d 1244 (S.D.Fla. 2010), an insured vessel sank while operated by the insured's son, who was neither a "named operator" nor a "covered person" under the policy of marine insurance.  Although the court held that New York law applied, Fla. Stat. §627.409 was applied as well, in an abundance of caution, to demonstrate that the outcome would be the same.  The court held that the marine policy did not cover the loss because the risk of the hazard (the vessel sinking) was increased, in that the evidence showed that the insured's son had not taken any safety courses and had only operated the vessel three or four times, far fewer than his mother (the insured).

The case of Fireman's Fund Ins. Co. v. Cox, 742 F.Supp. 609 (M.D.Fla. 1989), involved a mutiny on a trawler, in which the captain and mate were attacked by two crew members.  The captain was missing and presumed dead.  Claims were filed against the insurer by the mate and by the family and estate of the captain.  The relevant wet marine policy had a provision which allowed the insurer to void the policy if there were more than three crew members.  The insured violated the policy by having five.  The court ruled in favor of the insurer and voided the policy, holding that under Fla. Stat. §627.409(2), the presence of the two additional crew members (where only three were allowed) increased the risk of mutiny – the insured hazard.

In Oretsky v. Infinity Ins. Co., --- Fed.Appx. ----, 2013 WL 3838113 (11th Cir. July 26, 2013), the Eleventh Circuit upheld the holding of the Southern District of Florida in favor of the

insurer where the insured had an insurance policy requiring that his insured Maserati be parked inside a locked garage.   While parked in the driveway, in breach of the "locked garage" provision, with the keys in the garage in plain view, the vehicle was stolen.  The insured argued, *inter alia*, that coverage could not be voided because Fla. Stat. §627.409(2) could not be satisfied, to the extent that the car would have been stolen even if it had been parked inside the garage.  While refusing to apply Fla. Stat. §627.409(2) to a policy which was not a wet marine or transportation policy, the Eleventh Circuit nevertheless opined that the insured's argument was in any event unavailing, in that common sense dictates that a car parked in a locked garage is less likely to be stolen than a car parked in an open driveway.

What sets the foregoing cases apart from the instant case is the simple fact that there is a common-sense based causal nexus between the breach and the increased hazard, or danger to the vessel itself.  For AAIC to vitiate coverage, they would need to demonstrate a similar causal nexus.  For example, had AAIC prevailed on its "late notice" defense, such a causal nexus would arguably be colorable based on the testimony of Gamez that as time passes, it becomes more difficult it is for the Coast Guard to locate a missing vessel, or if AAIC placed statistical facts into evidence to support that notion.  But the jury found that there was not late notice, so AAIC cannot avail itself of this argument.  Or, for example, if the insurance policy required that a vessel not sail without a working GPS system onboard and AAIC alleged such a breach, based on Gamez' testimony that the GPS system for the new model Glasstream was on back order at the time of the loss, and thus was not on the vessel, the absence of the GPS system could be found to increase the hazard of a "missing vessel."   But the policy contained no such requirement, and so no such misrepresentation can be alleged.  Viewing all facts relating to the misrepresentations actually alleged by AAIC in the light most favorable to AAIC, however, it is easy to demonstrate that AAIC cannot satisfy the requirement of establishing proximate causation, as follows:

**a.  For Each of Its Defenses, AAIC Was Required to Prove a Causal Connection Between the Misrepresentation/Concealment and the Hazard By Any Means Within the Control of the Insured Under Fla. Stat. §627.409(2); AAIC Failed to Do So.**

At trial, AAIC alleged and addressed the following misrepresentations by Gamez (or Hassun, his agent) on the application of insurance:  (1) ownership; (2) residence; (3) additional operator (concealment); (4) primary operator; (5) prior ownership of vessels.  At trial, AAIC

addressed the following misrepresentations by Gamez or Hassun, which AAIC believes relate to the contract of insurance, before or after a loss:  (6) ownership, (a) as implied by a statement in the Sworn Proof of Loss that Hassun made the "majority of payments" on the vessel, and (b) in communications between both Gamez and Hassun and the U.S. Coast Guard); and (7) the filing of a false police report.

None of these alleged misrepresentations relates, by any stretch of the imagination, to an increase in the hazard of a "missing vessel."  Each will be considered, *in seriatim*.

(1) Whether Gamez or Hassun was the owner of the vessel is immaterial to the question of "increased hazard" as a matter of law where, as here, the evidence shows (to the extent loss history might or not be relevant to the question) that the application did not even request the social security number (*See* AAIC Trial Exhibit 2 (DE-127)) of Gamez, nor did any AAIC representative provide testimonial evidence that a loss history was performed on Gamez, or that a loss history of Gamez and Hassun was compared and found to be relevant to an increased risk.[10]  In the absence of such evidence, the alleged misrepresentation regarding ownership is a nullity for purposes of a Fla. Stat. §627.409(2) analysis.

(2) AAIC asserted that the insurance application concealed that the boat would be stored at the residence of Hassun.[11]  The only evidence relating this alleged concealment to the risk was the trial testimony of Gamez that the decision to store the boat at Hassun's residence, rather than Gamez', involved a safety consideration – Hassun's residence, unlike Gamez' multiple residences, had an enclosure which blocked the vessel's visibility to the public.[12]  Therefore, in the absence of any direct evidence that knowledge of the Hassun storage might have increased the hazard, the alleged concealment regarding vessel location must be considered a nullity for

---

[10] In fact, at the time the insurance application was submitted, neither Gamez nor Hassun had any boat loss history.
[11] This so-called "concealment," cannot be a concealment as a matter of law, because the insurance application consisted of a dropdown menu which permits an applicant, responding to the application item "Location," only to choose between "marina" or "residence."  Contrary to the exhortations of AAIC's counsel, then, there is not even opportunity, let alone a requirement, for an applicant to enter a complete address (other than a zip code) of the residence at which a vessel would be stored.  In this regard, a percipient juror may have understood that the entry of "33010" under zip code, which unfolded at trial as an unsolvable mystery underscoring inconsistency of the testimony of Gamez and Hassun, reflected nothing other than the applicant's attempt to enter the address which was listed on the application, "3301 N.W. 16th Street," but being thwarted from doing so by the fact that the online menu only permitted a 5 digit zip code, but not an entire street address.  The final "0" in "33010" the allegedly misrepresented zip code, was evidently supplied as a default by the application's software.  Where, as here, an intent-based standard must be applied, an insured cannot be held accountable for a "misrepresentation" which is supplied by the insurer's software itself.
[12] This motion has been drafted without the benefit of the completed trial transcript, which was ordered on or about September 20, 2013.  Plaintiff requests the right to supplement or correct, if necessary, this motion to provide accurate references to the transcript after it is received.

purposes of a Fla. Stat. §627.409(2) analysis.  *See* <u>AXA Global Risks (UK) Ltd. v. Pierre</u>, 2001 WL 1825853 (S.D.Fla. November 8, 2001) (rejecting the materiality of an alleged "vessel location" misrepresentation, stating:  "It is not so obvious, however, that storing a vessel at a home in Islamorada is riskier than storing a vessel at a home in Miami Beach. The comparative risk determination would likely require a careful analysis of crime rates of the two locations, the dock quality, the boating traffic, and the average weather conditions, including the likelihood of being subjected to hurricanes and tropical storms in each location—none of which are obviously different. Therefore, in the absence of any direct evidence that knowledge of the Islamorada storage might have affected AXA's decision to insure, the Court is not persuaded that the omission was material.").

(3)     The additional operator "concealment" is a tempest in a teapot[13]  As pertains strictly to this Renewed Motion for Judgment as a Matter of Law, the salient consideration is that there is not a scintilla of evidence that Hassun's "additional" operation of the vessel would increase the specific hazard that the vessel would mysteriously disappear.  AAIC is not entitled to the benefit of any impermissible pyramiding of inferences in this regard.  <u>Rodgers</u>, *supra*.

(4)     AAIC has attempted to show that Gamez misrepresented on the insurance application that he would be the primary operator of the boat when, in fact, AAIC believes the greater weight of evidence establishes that the primary operator was Hassun.[14]  AAIC has nowhere placed evidence on the record to demonstrate how, if at all, this alleged breach of the policy increased the hazard of a missing vessel and must therefore be disregarded for purposes of satisfying AAIC's Fla. Stat. §627.409(2) burden.  The case is distinguishable from <u>Rosin</u>, *supra*, because here, it is incontrovertible that Hassun was a Covered Person under the policy, and the evidence shows that there was not considerable difference in the comparable boating experience

---

[13] In conjunction with Plaintiff's alternative Motion for New Trial, the Court should consider that there can be no materiality to this "concealment" as a matter of law, because the insurance policy defines "Covered Person" to include "any person . . . operating [the] vessel . . . for private pleasure use with your direct and prior permission."  In addition, the application is problematic to the extent that the dropdown menu on the subject insurance application only permitted the entry of one "additional operator."  Gamez testified that he left the application item blank because he intended that the boat would be operated by multiple persons and the application afforded no way to address that.  For an excellent analysis and illustration of how ambiguities and uncertainties in insurance applications must be construed in favor of the insured, see <u>Ocean's 11 Bar & Grill, Inc. v. Indemnity Ins. Corp. RRG</u>, 2012 WL 5398625 (S.D.Fla. 2012) (*passim*).

[14] It is anticipated that AAIC might argue that the Primary Operator mispresention is governed by uniform general admiralty law rather than Florida law.  In this regard, the Court should be mindful that this district court has previously considered, and rejected, such argument.  <u>Rosin</u>, *supra*, at 1257 (Judge Jordan:  "I conclude that there is no established and entrenched federal precedent concerning the effect of a breach of a "named operator" warranty.").

of Gamez and Hassun, and Gamez and Hassun operated the subject Glasstream more or less equally. Further, the hazard involved in this case is not a boating accident involving Hassun, but rather a "missing vessel," and there is no competent evidence of record that establishes how the failure to disclose that Hassun was the primary operator of the vessel (assuming *arguendo* that he was, in order to consider the facts in the light most favorable to AAIC), could have increased the hazard of the boat fortuitously (as found by the jury) going missing at sea. This is especially true in view of the jury's finding that the loss was fortuitous.

(5)     AAIC asserts that the application for insurance misrepresented that Gamez owned the "Sea Fox," which in fact was owned by Gamez' father.[15] The insurance application indicates that Gamez had four years of boating experience, which was true, and that he had owned the "Sea Fox" for three years. Gamez testified that the Sea Fox was owned by his father. How the fact that Gamez did not disclose the fact that he did not own the vessel on which he had three years of boating experience relates to an increase in the hazard of a missing vessel by any means within the control of the insured, is not readily apparent. Because AAIC made no effort to introduce evidence of any such causal connection, this court has an obligation to hold that this alleged misrepresentation fails to satisfy Fla. Stat. §627.409(2) as a matter of law.

(6)(a)   The Sworn Proof of Loss submitted by Gamez, indicates that Hassun used the vessel and made the "majority of payments" thereupon. It is important to note at the outset that AAIC is not really asserting, as it cannot, because the factual record clearly establishes otherwise, that Gamez is not the owner of the boat.[16] Rather, the gravamen of AAIC's

---

[15] In addition to being unrelated to AAIC's burden under Fla. Stat. §627.409(2), Gamez asserts that for purposes of his alternative Motion for New Trial, that the alleged misrepresentation is neither intentional nor material as a matter of law. First, the application couples the line which contains the items, "Years of Boat Ownership" and "Years Boating Experience with the line which contains the item, "Prior Owned Vessels." A reasonable person could assume, as did Hassun  (*see* transcript of deposition testimony of Alfredo Hassun, DE-38-4, at 25:12-14), that it would be appropriate to adopt the line after "Prior Owned Vessels" for use in identifying vessels on which the applicant had prior boating experience, even if the vessel were not actually owned by the applicant, with no intent to deceive the insurer. Further, an insurer seeking to rescind or avoid coverage bears the burden to prove the materiality of a misrepresentation, which may be satisfied by the testimony of an underwriter with knowledge that the subject policy would not have been offered, or would not have been offered at the same premium, had the true facts been known. Griffin v. Am. Gen. Life & Acc. Ins. Co., 752 So. 2d 621, 623 (Fla. 2d DCA 1999); Carter v. United of Omaha Life Ins., 685 So. 2d 2, 6 (Fla. 1st DCA 1996); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen, 999 F.2d 1532, 1536 (11th Cir. 1993). AAIC has adduced no evidence whatsoever in support of its burden to establish that a different lower premium was assigned by its underwriting department because of the representation that Gamez "owned" a vessel which he did not own.

[16] In Florida, the analysis of whether an insured has standing to recover under a policy of insurance is governed by Fla. Stat. §627.405, the insurable interest statute. An insurable interest is not determined by the concept of title, but rather whether the insured has a substantial economic interest in the safety or preservation of the property free from loss, destruction or pecuniary damage or impairment." Aetna Ins. Co. v. King, 265 So. 2d 716, 718 (Fla. 1st DCA

contention is that Gamez and Hassun failed to adequately disclose whatever interest Hassun may have had in the vessel.[17]  The fanfare relating to inconsistent statements relating to the payments on the vessel and the true ownership of the vessel are red herrings from the standpoint of assessing AAIC's burden under Fla. Stat. §627.409(2), because AAIC has introduced no admissible evidence to explain how the failure to disclose Hassun's alleged interest in the vessel increased the hazard that the vessel would "go missing."

(6)(b)  The alleged misrepresentations to Special Agent Aaron Woods, USCG, according to the trial testimony of both Gamez and Hassun, were designed to expedite and maximize the efficiency of the Coast Guard's investigation into the missing persons and missing vessel after the loss.  As such, not only did these misrepresentations not relate to the contract of insurance and thus did not constitute a misrepresentation to the insured after a loss as a matter of law, but they also are evidence that the misrepresentation "decreased" the hazard of a missing vessel to the extent that the Coast Guard had a higher probability of locating the vessel if it commenced its search sooner rather than later.  AAIC has again introduced no counterveiling evidence of how the hazard of a missing vessel was increased by the fact that Gamez and Hassun each told Special Agent Woods that Hassun "owned" the vessel.

(7)  For the reasons set forth in footnote 6, AAIC adduced no competent evidence on the record to develop its theory of a "false police" report.  As such, it is unnecessary for this motion to consider the alleged misrepresentation of a "false police report."

The analytical gap between the dearth of evidence presented by AAIC at trial and the inferences required to be drawn on this ultimate issue that a misrepresentation, concealment or fraud increased the hazard of a missing vessel is simply too wide.  No degree of impeachment or innuendo relating to Hassun's character can substitute for the competent substantive evidence which was required from AAIC, and was utterly lacking, of a causal nexus between an established breach of a policy provision and an increased hazard of a missing vessel.  Under such

---

1972).  The uncontroverted evidence establishes that Gamez had such an insurable interest, as he made payments on the subject Glasstream vessel which continued for more than a year after the loss and is also subject to a continuing mortgage on the vessel.

[17] In conjunction with Plaintiff's Motion for New Trial, Gamez also asserts that AAIC has produced no specific evidence that any undisclosed interest that Hassun may have had in the vessel, would have  materially altered the risk of insuring the vessel or might have affected its decision to insure.  In this respect, argument of AAIC's counsel or the trial testimony of AAIC's underwriter Sheryl Johnson, who admitted that she had no personal knowledge regarding the specific underwriting of the subject policy, proffering conclusory statements regarding materiality of the non-disclosure is entirely unavailing.  *See* AXA Global Risks (UK) Ltd. v. Pierre, *supra*, at *5, *citing* Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).

circumstances, a jury should not be asked to speculate on the issue of causation, and this Court has not only the discretion, but the **obligation**, to grant Gamez' renewed motion for judgment as a matter of law. Resolution Trust Corp. v. Strooock & Stroock & Lavan, 853 F.Supp. 1422, 1426-27 (S.D.Fla. 1994), quoting Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992)

**B.    The Court Must Enter Judgment as a Matter of Law as to AAIC's Third Affirmative Defense, that the Insured Vessel was Used, Either By Plaintiff or by Someone to Whom Plaintiff Entrusted the Vessel, in a Dishonest, Illegal or Intentional Act at the Time of the Allged Loss.**

Pursuant to Fed.R.Civ.P. 50(b), this portion of Plaintiff's Renewed Motion for Judgment as a Matter of Law timely addresses AAIC's third affirmative defense, a jury issue not decided by a verdict. The Verdict Form correctly called upon the jury to resolve whether AAIC established by a greater weight of the evidence that the insured vessel was used, either by Plaintiff or by someone to whom Plaintiff entrusted the vessel, in a dishonest, illegal or intentional act at the time of the alleged loss. If the jury were to have found that AAIC met its burden of proof on this issue, then coverage would be voidable pursuant to the Dishonest, Illegal and Intentional Acts provision of the policy, which provides:

> We do not pay for loss or damage caused by the dishonest, illegal or intentional acts of any covered person, or any person to whom your insured property is entrusted, regardless of whether or not such person is convicted of such an act by a criminal court.

As the Dishonest, Illegal and Intentional Acts provision is a General Condition and Exclusion of the policy, Fla. Stat. §627.409(2) applies to require that AAIC prove a causal connection between a breach of the provision and an increased hazard by any means within the control of the insured. At the conclusion of the presentation of the evidence at trial, this Court reserved ruling on Gamez' motion for a directed verdict as to this defense, which asserted that AAIC failed to present any admissible evidence to support a theory of cause of loss of the vessel, and that AAIC failed to prove that a dishonest, illegal or intentional act increased the hazard by any means within the control of the insured.

First, to find a breach of the Dishonest, Illegal and Intentional Acts provision, AAIC would be required to prove that a dishonest, illegal or intentional act on the part of Gamez, Hassun or Suarez **caused** the loss of the insured vessel. Again, only hearsay statements of Special Agent Woods, USCG, relating to his belief that the subject vessel was used to smuggle Cubans and was missing at sea, which were expressly ruled inadmissible as substantive

evidence, were proffered by AAIC's counsel.[18]   AAIC has introduced no competent evidence whatsoever to establish the cause of loss, for which reason there is no way from the record to ascertain whether there was a dishonest, illegal or intentional act.  Therefore, Gamez is entitled to judgment as a matter of law as to the third affirmative defense, without the need to even reach the burden which Fla. Stat. §627.409(2) imposes on AAIC to demonstrate an increased hazard flowing from the breach.

Should this Court nevertheless deem it necessary to apply a Fla. Stat. §627.409 analysis to the third affirmative defense, the salient consideration is that the jury returned a verdict in favor of Gamez on the issue of whether the loss was fortuitous.  As such, the jury has determined that the loss was accidental, meaning that Gamez and Hassun had no knowledge of what became of the Glasstream and did not intend for the vessel to mysteriously disappear or to be used in dishonest or illegal acts.  This is crucial because if Hassun or Gamez did have knowledge of an illegal act (such as smuggling of Cubans or theft of the boat), then AAIC would have a colorable argument that a breach of the Dishonest, Illegal or Intentional Acts provision of the policy increased the hazard of the mysteriously disappearing vessel **by means within the control of Gamez or Hassun**.  This is simply because a failure to disclose to AAIC that one of the additional operators of the boat was a smuggler of Cubans could arguably have increased the hazard of a mysteriously disappearing vessel.  But because the loss was found to be unintended and accidental, any hypothetical finding of a dishonest or illegal act on the part of Suarez (which in any event could only be based on improper conjecture, as argued *supra*) could not have been influenced by any means within the control of Gamez or Hassun as a matter of law, as Gamzez and Hassun lacked knowledge as to whether the boat would be used for an illegal or dishonest purpose.  In sum, there is not even a scintilla of evidence to support the Defendant's burden to prove that a breach of Dishonest, Illegal and Intentional Acts provision (which there was not) increased the hazard of a missing vessel by any means within the control of Gamez or Hassun.  Accordingly, Gamez is entitled to judgment as a matter of law on the third affirmative defense.

**C.   Gamez is Entitled to a New Trial Based on the Great Weight of the Evidence, and Because the Jury Ignored the Court's Instructions.**

---

[18] *See* Order Following Pretrial Conference (DE-95, at (A.(3)), holding that the Report of Investigation and Deposition Testimony of U.S. Coast Guard Special Agent Woods may be introduced at trial solely for the purposes of impeachment of pre-identified statements of Gamez and Hassun.  Gamez testified at trial that to this day, nobody has come forth with any probative evidence as to what became of the subject vessel.

Gamez is entitled to a new trial based on the great weight of the evidence.  In this regard, Gamez incorporates herein all prior argument to the extent that Gamez demonstrates both that AAIC has failed to address its burden under Fla. Stat. §627.409(2) and that AAIC's presentation of evidence was also frivolous and woefully insufficient to establish both intent to deceive and materiality, as AAIC was required to prove in view of the plain wording of the policy.  *See*, Allstate v. King, *supra*.

Finally, in view of the absolute dearth of evidence adduced by AAIC at trial to support its burden under Fla. Stat. §627.409(2), one can only conclude that the jury either ignored or knowingly defied the Court's instructions on AAIC's Fla. Stat. §627.409 burden,[19] as well as the limiting instructions regarding preclusion of (1) consideration of Special Agent Woods' opinions regarding the use of the subject vessel, and (2) AAIC's counsel's improper attempt to introduce evidence regarding a prior conviction of Hassun.  In addition, it must be assumed that AAIC's counsel's invitation for the jury to apply improper law, under which a demonstration of Plaintiff's inconsistent statements and innocuous, immaterial misrepresentations alone could vitiate an insurance policy, clearly paid off.  AAIC's defense strategy involved an attempt to parlay the inadmissible evidence relating to Special Agent Woods' belief that the vessel was used to smuggle Cubans, which was admitted for the limited purpose of impeaching statements of Gamez and Hassun, to prove the unreliable suspicions for which the evidence was specifically inadmissible.  It was AAIC's hope, which successfully came to pass, that the jury would carry the day by responding to its efforts to besmirch an innocent insured with unprovable, inherently unreliable and vague allegations of criminality.  This approach of AAIC's counsel frustrates jurors seeking to apply the correct law and improperly invites the jurors to apply the wrong law at their caprice.  To permit the jury verdict to stand under AAIC's expansive theory which flouts the existence of Fla. Stat. §627.409(2) would effectively eviscerate a straightforward statutory protection afforded to insureds under a wet marine policy.  Essentially, the jury, at the behest of AAIC's counsel, has actually created defenses to claims, where the legislature expressly intended to destroy such defenses.  While AAIC's litigation strategy effectively, albeit improvidently, deflected the jury from considering the ineluctable fact that AAIC adduced no proof to carry its burden under the correct legal standard (i.e., Fla. Stat. §627.409(2)), it is now not only within the Court's authority, but it is the obligation of the Court, to correct such manifest legal error.

---

[19] The failure of a jury to follow just one instruction warrants a new trial under Rule 59.  J.A. Jones Constr. Co. v. Steel Erectors, Inc., 901 F.2d 943, 944 (11th Cir. 1990).

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed with the Clerk of Court through the CM/ECF system, which will in turn send notice and electronically serve a true and correct copy of the foregoing on:  Marlon Green, Esq., Michele A. Lo Presti, Esq., Frank J. Sioli, Esq., Brown Sims, P.C., Attorneys for Defendant, Datran II Suite 1609, 9130 S. Dadeland Boulevard, Miami, Florida 33156, this 14th day of October, 2013.

                /s/ Howard Levine, Esq.
                HOWARD LEVINE, ESQ.
                Florida Bar No: 0075670
                Law Offices of Howard Levine
                1560 Lenox Avenue, Suite 307
                Miami Beach, Florida 33139
                Tel:  (305) 534-0403
                Fax:  (305) 672-5305
                HLevineEsq@aol.com
                Co-Counsel to Plaintiff