```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
 3                    CASE 11-22842-CIV-SEITZ
 4
     EURYS GAMEZ,
 5
                  Plaintiff,
 6       vs.                              MIAMI, FLORIDA
                                          SEPTEMBER 11, 2013
 7   ACE AMERICAN INSURANCE COMPANY,      TUESDAY - 8:45 A.M.
                                          EXCERPT
 8
                  Defendant.              [PAGES 1 - 111]
 9   ------------------------------------------------------------
10       EXCERPT TRANSCRIPT OF JURY TRIAL PROCEEDINGS
                        [Witness testimony]
11          BEFORE THE HONORABLE PATRICIA SEITZ
                  UNITED STATES DISTRICT JUDGE
12                           DAY 3
     ------------------------------------------------------------
13   APPEARANCES:
14   FOR THE PLAINTIFF:
                         MICHAEL LAURATO, ESQ.
15                       ERIN DUNNAVANT, ESQ.
                         Austin & Laurato, P.A.
16                       1902 West Cass Street
                         Tampa, FL  33606 - 813.258.0624
17                       Email:  Mlaurato@austinlaurato.com
18                       HOWARD LEVINE, ESQ.
                         Law office of Howard Levine
19                       1560 Lenox Ave., Ste. 307
                         Miami Beach, FL  33139 - 305.534.0403
20                       Email:  Hlevineesq@aol.com
21   FOR THE DEFENDANT:
                         MARLIN GREEN, ESQ.
22                       MICHELE LO PRESTI, ESQ.
                         Brown Sims
23                       Datran II Suite 1600
                         9130 S. Dadeland Boulevard
24                       Miami, FL  33156  305.274.5507
                         Emails:  Mgreen@brownsims.com
25                                Mlopresti@brownsims.com
```

```
 1   REPORTED BY:
                      ROBIN MARIE DISPENZIERI, RPR
 2                    Official Federal Court Reporter
                      Wilkie Ferguson Federal Courthouse
 3                    400 N. Miami Avenue, Ste. 08S67
                      Miami, FL  33128 - 305/523-5659
 4                    Email:  Rdispenzieri@gmail.com

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

TABLE OF CONTENTS

Page

EURYS GAMEZ ................................................. 5

Cross-Examination Cont'd By Mr. Green ....................... 5

EDWIN PEREZ ............................................... 72

     Direct Examination By Mr. Green ..................... 72

CHERYL LEE JOHNSON ........................................ 78

     Direct Examination By Mr. Green ..................... 78

     Cross-Examination By Mr. Laurato ...................... 90

Reporter's Certificate ................................... 111

INDEX TO EXHIBITS

| Exhibits | Marked for Identification | | Received in Evidence | |
|----------|---------------------------|---|----------------------|---|
| Description | Page | Line | Page | Line |

SIDEBAR CONFERENCE TABLE

| Descriptions | Page | Line |
|--------------|------|------|
| Sidebar Conference Begins ......................... 55 | | 19 |
| Proceedings In Open Court Resume ................. 56 | | 10 |
| Sidebar Conference Begins ......................... 56 | | 20 |
| Proceedings In Open Court Resume ................. 58 | | 12 |
| Sidebar Conference Begins ......................... 62 | | 3 |
| Proceedings In Open Court Resume ................. 62 | | 7 |
| Sidebar Conference Begins ......................... 67 | | 20 |
| Proceedings In Open Court Resume ................. 68 | | 11 |

```
 1              SIDEBAR CONFERENCE TABLE CONT'D
 2  Descriptions                                    Page      Line
 3  Sidebar Conference Begins ......................... 80        24
 4  Proceedings In Open Court Resume .................. 82         3
 5  Sidebar Conference Begins ......................... 83        11
 6  Proceedings In Open Court Resume .................. 84        14
 7  Sidebar Conference Begins ......................... 90        17
 8  Proceedings In Open Court Resume .................. 91         2
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                            **********

2           [The jury returns to the courtroom at 9:40 a.m.]

3           THE COURT:  Good morning, members of the jury.  Please

4    have a seat, everyone.  I hope everyone had a restful evening.

5           Where we were yesterday was in the cross-examination

6    of Mr. Gamez by Mr. Green.  Before we begin, one instruction I

7    forgot to give you, it was sort of touched on in voir dire, but

8    I need to make sure all of you hear it.  I instruct the parties

9    and counsel that they cannot have any contact with you

10   whatsoever during the course of this trial.

11          So they have to use the restrooms on a different floor

12   than this floor.  I tell them that if they accidentally run

13   into you on the elevator, they step out of the elevator and

14   wait for the next one.

15          It is so stringent an order that they cannot talk to

16   you, even to say hello, good morning.  They need to, when they

17   see you with your little badge, they almost need to run away

18   from you.  So if they are acting strange around you outside of

19   the courtroom, it's not because they're strange.  They're just

20   trying to make sure that they are very, very religious in

21   following my instruction, okay?

22          Okay, you may proceed.

23          MR. GREEN:  Thank you, Your Honor.

24                     CROSS EXAMINATION CONT'D

25                     [Continued from 9/10/13]

1  BY MR. GREEN:

2  Q.  Mr. Gamez, good morning.  How are you?

3  A.  Good morning.  Good.  How are you?

4  Q.  Yesterday, when we left off, we were in the middle

5  discussing your first contact with the Coast Guard.

6      Do you recall that?

7      MR. LAURATO:  Your Honor, can I bring a point to the

8  Court's attention?  I don't know if you wanted the cameras on,

9  but it doesn't appear that they're on at all.  I don't know if

10 you needed that.  I just wanted to bring that to the Court's

11 attention.

12     THE COURT:  Ms. Webb has this on.  Yes.  As long as

13 you all are on camera and I'm not, I'm a happy camper.

14 BY MR. GREEN:

15 Q.  Mr. Gamez, do you remember yesterday when we were going

16 through your cross-examination, and we were at the point where

17 we were discussing the recording and the transcript of the

18 Coast Guard conversation you had back in December of 2007?

19     Do you recall that?

20 A.  Yes.

21 Q.  Do you need to hear that again in order to refresh your

22 recollection as to where we were yesterday?

23 A.  It depends on what your question will be.

24 Q.  Certainly.

25     THE COURT:  Pose your question, and then, if he can't

1    recall, he'll tell you.

2              MR. GREEN:  Yes, ma'am.

3    BY MR. GREEN:

4    Q.  Mr. Gamez, during the conversation that you had with the

5    Coast Guard, didn't you make a representation that you just

6    signed the loan for the boat?

7    A.  I told him that I did sign for the boat.

8    Q.  Did you say that you signed for the loan on the boat?

9    A.  Yes, I did sign the loan on the boat.

10   Q.  Did you represent that in the recordings that we heard

11   yesterday?

12   A.  Yes.

13   Q.  That representation was made after you advised the Coast

14   Guard that your cousin, Alfredo Hassun, was the owner of the

15   boat, correct?

16   A.  Again, I'll repeat, that was done in order to expedite, not

17   to slow down anything.

18   Q.  Mr. Gamez, I understand that you want to explain your

19   response, and I have no problem with that whatsoever.

20              But the question was, the statement you made that you

21   just signed for the loan on the boat was made after you advised

22   the Coast Guard that your cousin, Alfredo Hassun, was the owner

23   of the boat, correct?

24   A.  Well, it's a fact that I signed for the boat.  November

25   1st, 2007, I did sign for the boat.  I did sign for the loan.

1  I did sign for the insurance.

2  Q.  Mr. Gamez, I'm going to attempt to ask the question again.

3  I'm not trying to browbeat you, but I don't think you're really

4  listening to my question.

5       The question was, you represented to the Coast Guard

6  that you signed for the loan on the boat after you told the

7  Coast Guard that the boat was owned by your cousin; is that or

8  is that not correct?

9  A.  Whatever is in the chronological order of the transcript.

10  I'm not sure if it was before or afterwards, but I did say that

11  I signed it.

12  Q.  We can play it again if you don't understand the

13  chronological order.

14  A.  I signed for the boat, yes.

15  Q.  Do you agree with me that you told the Coast Guard that you

16  signed for the loan on the boat after you told the Coast Guard

17  that your cousin was the owner of the boat?

18  A.  If that's what it says in the transcript, yes.

19  Q.  Let's play the transcript again in order to clarify that.

20  I won't play the entire thing, but I'll play certain portions

21  of it, okay?

22  A.  Sure.

23       THE COURT:  It's which exhibit?

24       MR. GREEN:  It's Defendant's Exhibit Number 7.

25       MR. LAURATO:  Your Honor, I prefer to invoke the Rule

```
            1  of Completeness.  I'd like the whole thing played again.

            2          MR. GREEN:  We can do that as well.

            3          THE COURT:  Let's play the whole thing then.  This is

            4  Defendant's Exhibit 7.

            5          [Recording was played].

09:47:49    6          MR. GREEN:  Stop the tape, please.

09:47:52    7          Are you playing Defendant's Exhibit 7?

09:48:06    8          THE WITNESS:  Could you put my screen up.  I can't see

09:48:11    9  anything.  I was trying to keep up.

09:48:17   10          THE COURT:  I'm sorry.  I'm the one who is in control

09:48:20   11  of that.  I didn't realize that it was off.

09:50:48   12          [Recording was played].

09:54:06   13  BY MR. GREEN:

09:54:06   14  Q.  Mr. Gamez, does that refresh your recollection as to

09:54:10   15  whether you told the Coast Guard that you signed for the loan

09:54:14   16  after you told the Coast Guard that your boat was owned by

09:54:21   17  Alfredo Hassun?

09:54:23   18  A.  Yes.

09:54:23   19  Q.  You made reference to a conversation wherein Mr. Walker

09:54:30   20  from the Coast Guard advised you to file a police report.

09:54:36   21          Do you remember that?

09:54:36   22  A.  Yes.

09:54:37   23  Q.  Did Mr. Walker advise you to file a police report --

09:54:43   24          MR. LAURATO:  Objection, relevance.

09:54:45   25          THE COURT:  Overruled.
```

| | | |
|---|---|---|
| 09:54:46 | 1 | THE WITNESS:  Not in this conversation, but you have a |
| 09:54:49 | 2 | recording where he does. |
| 09:54:50 | 3 | BY MR. GREEN: |
| 09:54:50 | 4 | Q.  Are you aware of where that recording is? |
| 09:54:56 | 5 | A.  No, I don't. |
| 09:54:58 | 6 | Q.  I didn't hear you. |
| 09:55:02 | 7 | A.  No, I don't. |
| 09:55:04 | 8 | Q.  If you can, could you lean forward a little bit so we can |
| 09:55:15 | 9 | hear you better, because you're leaning back. |
| 09:55:25 | 10 | A.  The sun is in my eyes. |
| 09:55:30 | 11 | THE COURT:  I can put the shades down. |
| 09:55:49 | 12 | BY MR. GREEN: |
| 09:55:49 | 13 | Q.  Now, what happened subsequent to the recording or the |
| 09:55:54 | 14 | conversation that you had with the Coast Guard?  What did you |
| 09:55:58 | 15 | do subsequent to that? |
| 09:56:00 | 16 | A.  What are you referring to exactly? |
| 09:56:02 | 17 | Q.  Did you have further communications with the Coast Guard |
| 09:56:06 | 18 | subsequent to that? |
| 09:56:07 | 19 | A.  There were various communications. |
| 09:56:09 | 20 | THE COURT:  I'm sorry, say it again. |
| 09:56:12 | 21 | THE WITNESS:  There were various communications. |
| 09:56:14 | 22 | BY MR. GREEN: |
| 09:56:14 | 23 | Q.  Do you remember those conversations? |
| 09:56:19 | 24 | A.  No, because it says here December 2007, so it looks like a |
| 09:56:22 | 25 | couple of them are together on the same tape. |

GAMEZ - Cross

| | | |
|---|---|---|
| 09:56:24 | 1 | Q.  Do you recall having conversations with the Coast Guard on |
| 09:56:27 | 2 | the same day repeatedly? |
| 09:56:30 | 3 | A.  Yeah, I believe we talked a couple times. |
| 09:56:36 | 4 | Q.  If I were to play you a conversation that you had with the |
| 09:56:41 | 5 | Coast Guard, would you be able to recognize your voice? |
| 09:56:44 | 6 | A.  Yes. |
| 09:56:45 | 7 | Q.  Would you be able to discern whether you remember the |
| 09:56:48 | 8 | context of the conversations that you had with the Coast Guard |
| | 9 | at that time? |
| 09:56:51 | 10 | A.  I would have to listen to the conversation. |
| 09:56:59 | 11 | Q.  Certainly, we can play that for you. |
| 09:57:02 | 12 | MR. LAURATO:  Your Honor, I would request a question. |
| 09:57:08 | 13 | THE COURT:  What is the question that you want him to |
| 09:57:12 | 14 | listen to the tape for? |
| 09:57:14 | 15 | MR. GREEN:  Your Honor, this is about a subsequent |
| 09:57:17 | 16 | conversation that he had with the Coast Guard related to the |
| 09:57:23 | 17 | vessel and the whereabouts of the vessel.  It really goes to |
| 09:57:24 | 18 | the issue of what steps were taken to locate this vessel and |
| 09:57:30 | 19 | what steps did he take with regard to helping the Coast Guard |
| 09:57:33 | 20 | identify this vessel and its whereabouts. |
| 09:57:37 | 21 | THE COURT:  That's pretty general. |
| | 22 | MR. GREEN:  Additionally, Your Honor -- |
| 09:57:48 | 23 | THE COURT:  What is the question that is precipitating |
| 09:57:51 | 24 | the playing of the transcript? |
| 09:57:53 | 25 | MR. GREEN:  Yes, Your Honor, no problem. |

| | | |
|---|---|---|
| 09:57:56 | 1 | THE COURT:  The playing of the recording, I'm sorry. |
| 09:57:58 | 2 | BY MR. GREEN: |
| 09:58:03 | 3 | Q.  Mr. Gamez, you indicated, during the conversation with the |
| 09:58:06 | 4 | Coast Guard at various points, that you did not know |
| 09:58:10 | 5 | Mr. Suarez, correct? |
| 09:58:12 | 6 | A.  Yes. |
| 09:58:12 | 7 | Q.  You also indicated to the Coast Guard that it was your |
| 09:58:15 | 8 | understanding that the boat was loaned by your cousin to |
| 09:58:19 | 9 | Mr. Suarez, correct? |
| 09:58:21 | 10 | A.  Yes. |
| 09:58:22 | 11 | Q.  Did you have subsequent conversations with the Coast Guard |
| 09:58:25 | 12 | about Mr. Suarez? |
| 09:58:26 | 13 | A.  I believe I did. |
| 09:58:28 | 14 | Q.  Do you remember the context of those conversations you had |
| 09:58:31 | 15 | about Mr. Suarez? |
| 09:58:34 | 16 | A.  No. |
| 09:58:35 | 17 | Q.  Would the audiotape of those conversations you had with the |
| 09:58:39 | 18 | Coast Guard about Mr. Suarez refresh your recollection |
| 09:58:43 | 19 | regarding the same? |
| 09:58:44 | 20 | A.  I would have to listen to it. |
| 09:58:49 | 21 | THE COURT:  Which exhibit is it? |
| 09:58:52 | 22 | MR. GREEN:  It is Defendant's Exhibit 8.  We have |
| 09:58:56 | 23 | copies for the jury.  Obviously, since we're only allowed to |
| 09:59:01 | 24 | give the jury what's been admitted into evidence, we haven't |
| 09:59:05 | 25 | provided it to them yet. |

| | | |
|---|---|---|
| 09:59:08 | 1 | THE COURT:  Give them to the Court Security Officer. |
| 09:59:11 | 2 | Members of the jury, the same instruction that I gave |
| 09:59:14 | 3 | you yesterday, you're now going to hear a recorded |
| 09:59:19 | 4 | conversation, and the recorded conversation is -- what is the |
| 09:59:29 | 5 | exhibit number for the recording? |
| 09:59:30 | 6 | MS. LO PRESTI:  Joint Exhibit 15. |
| 09:59:37 | 7 | THE COURT:  Joint Exhibit 15 is in evidence, and that |
| 09:59:52 | 8 | is the recording.  The Court Security Officer has just handed |
| 09:59:58 | 9 | you Defense Exhibit 8, which is a transcript of the December |
| 10:00:01 | 10 | 7th, 2007 phone conversation between the plaintiff, Mr. Gamez, |
| 10:00:06 | 11 | and Petty Officer Smith. |
| 10:00:08 | 12 | THE WITNESS:  Excuse me, I would like to clarify these |
| 10:00:13 | 13 | recordings.  They happened at different dates.  You only have |
| 10:00:18 | 14 | December of 2007, so we don't know which came first in |
| 10:00:25 | 15 | chronological order. |
| 10:00:25 | 16 | BY MR. GREEN: |
| 10:00:25 | 17 | Q.  I appreciate your explanation, but there wasn't a question |
| 10:00:31 | 18 | pending. |
| 10:00:34 | 19 | A.  Since you're asking for chronological order, I think it's |
| 10:00:38 | 20 | important to have that. |
| 10:00:40 | 21 | THE COURT:  All of the tape recordings that you're |
| 10:00:43 | 22 | going to play between Mr. Gamez and the Coast Guard are on |
| 10:00:55 | 23 | Joint Exhibit 15. |
| 10:00:56 | 24 | MR. GREEN:  Yes, Your Honor. |
| 10:00:59 | 25 | THE COURT:  Is there any indication of the date on |

| | | |
|---|---|---|
| 10:01:04 | 1 | which these recordings were made?  It could be that they were |
| 10:01:08 | 2 | all on the same date, but is there a sequence? |
| 10:01:13 | 3 | MR. GREEN:  Your Honor, I believe that when you play |
| 10:01:15 | 4 | the tape, it is clear that this conversation is the second |
| 10:01:19 | 5 | conversation that Mr. Gamez had with the Coast Guard subsequent |
| 10:01:22 | 6 | to the first. |
| 10:01:25 | 7 | THE COURT:  Members of the jury, you're now going to |
| 10:01:28 | 8 | hear a recorded conversation that's on Joint Exhibit 15.  This |
| 10:01:32 | 9 | is proper evidence for you to consider.  Please listen to it |
| 10:01:37 | 10 | very carefully. |
| 10:01:37 | 11 | I'm going to allow you to have a transcript of that |
| 10:01:42 | 12 | recording that has been prepared by Merrill Corporation to help |
| 10:01:50 | 13 | you identify the speakers and to guide you through the |
| 10:01:54 | 14 | recording. |
| 10:01:57 | 15 | Remember that it is the recording that is the |
| 10:01:59 | 16 | evidence, not the transcript.  If you believe that the |
| 10:02:04 | 17 | transcript says something different than what you hear on the |
| 10:02:06 | 18 | recording, disregard that portion of the transcript and rely |
| 10:02:10 | 19 | instead on what you hear.  The transcript is Defendant's |
| 10:02:15 | 20 | Exhibit 8. |
| 10:02:17 | 21 | You may proceed. |
| 10:04:36 | 22 | [Recording was played]. |
| 10:07:41 | 23 | BY MR. GREEN: |
| 10:07:41 | 24 | Q.  Mr. Gamez, do you recognize your voice on that tape? |
| 10:07:46 | 25 | A.  Yes. |

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
|          | 1  | Q.  And you remember the conversations you had?                          |
|          | 2  | A.  Yes.                                                                  |
| 10:07:47 | 3  | Q.  There are a couple of things I want to talk about related            |
| 10:07:52 | 4  | to this particular conversation that you had with the Coast              |
| 10:07:53 | 5  | Guard.                                                                    |
| 10:07:54 | 6  | The Coast Guard advised you that they had phone                          |
| 10:07:57 | 7  | records that indicated that you received phone calls from                |
| 10:08:01 | 8  | Mr. Suarez on November 28th and December 4th.                            |
| 10:08:05 | 9  | Do you remember that?                                                    |
| 10:08:07 | 10 | MR. LAURATO:  Objection, hearsay.                                        |
| 10:08:15 | 11 | THE COURT:  Overruled.  We just listened to the tape.                    |
| 10:08:19 | 12 | The question was going to was that statement made to you, not            |
| 10:08:24 | 13 | for the truth of the statement.                                          |
| 10:08:25 | 14 | MR. LAURATO:  Your Honor, I would request a limiting                     |
| 10:08:29 | 15 | instruction.                                                             |
| 10:08:30 | 16 | THE COURT:  Members of the jury, for the out-of-court                    |
| 10:08:32 | 17 | statements by the Coast Guard, since we don't have Coast Guard           |
| 10:08:36 | 18 | Officer Walker here to listen to on cross-examination, I'm               |
| 10:08:47 | 19 | letting his part of the conversation in for the fact that it             |
|          | 20 | was stated and not for the truth of whether or not he, in fact,          |
|          | 21 | received the phone conversations, but for the fact that he               |
|          | 22 | stated that he had recieved phone conversations.                         |
| 10:09:07 | 23 | BY MR. GREEN:                                                            |
| 10:09:07 | 24 | Q.  The question, Mr. Gamez, to you is did you receive phone             |
| 10:09:12 | 25 | calls from someone at the phone number that was identified as            |

| | | |
|---|---|---|
| 10:09:19 | 1 | Mr. Suarez's phone? |
| 10:09:20 | 2 | A.  As we heard in the recording, I stated to the Coast Guard |
| 10:09:24 | 3 | that I did not receive calls on that date.  I was looking at my |
| 10:09:29 | 4 | caller I.D. |
| 10:09:31 | 5 | THE COURT:  The question was did you receive phone |
| 10:09:34 | 6 | calls from that number. |
| 10:09:37 | 7 | THE WITNESS:  Not that I recall. |
| 10:09:39 | 8 | BY MR. GREEN: |
| 10:09:39 | 9 | Q.  So you don't recall a friend of Mr. Suarez calling you, as |
| 10:09:50 | 10 | you represented in this transcription? |
| 10:09:53 | 11 | A.  Yes, I had called the phone the Saturday it had gone out, |
| 10:09:59 | 12 | and I got no answer.  They had called back, but I don't think |
| 10:10:04 | 13 | it was on December 8th or 4th. |
| 10:10:06 | 14 | Q.  Mr. Gamez, respectfully, that wasn't my question. |
| 10:10:10 | 15 | Did you receive a phone call from a number that was |
| 10:10:14 | 16 | identified as Mr. Suarez's phone number, as you indicated to |
| 10:10:17 | 17 | the Coast Guard in this recording? |
| 10:10:19 | 18 | A.  I don't recall. |
| 10:10:20 | 19 | Q.  In this transcription that you recognize to be your voice, |
| 10:10:26 | 20 | that does not refresh your recollection on this issue? |
| 10:10:32 | 21 | A.  Yes, it does.  I stated to the Coast Guard I didn't see any |
| | 22 | phone calls on those dates. |
| 10:10:34 | 23 | Q.  Do you remember having any conversation with the Coast |
| 10:10:36 | 24 | Guard about phone calls that were made to your phone from |
| 10:10:42 | 25 | Mr. Suarez's cell phone number? |

| | | |
|---|---|---|
| 10:10:44 | 1 | A.  I don't recall. |
| 10:10:44 | 2 | Q.  You have the transcription in front of you, correct? |
| 10:10:48 | 3 | A.  I would have to open up to the page.  I was listening to |
| 10:10:53 | 4 | the recording. |
| 10:10:54 | 5 | MR. LAURATO:  Same hearsay objection. |
| 10:10:56 | 6 | THE COURT:  Overruled. |
| 10:10:58 | 7 | BY MR. GREEN: |
| 10:10:58 | 8 | Q.  That would be Defendant's Exhibit 8. |
| 10:11:04 | 9 | THE COURT:  Why don't you direct him to the page that |
| 10:11:10 | 10 | you want him to look at. |
| 10:11:13 | 11 | MR. GREEN:  Yes, Your Honor, I'm looking for it |
| 10:11:15 | 12 | myself. |
| 10:11:18 | 13 | THE COURT:  While he's flipping, I failed to introduce |
| 10:11:22 | 14 | David Roller, who is sitting up here next to Ms. Webb. |
| 10:11:27 | 15 | Mr. Roller is also a law student.  He is also interning.  He is |
| | 16 | a third-year student at the University of Miami. |
| 10:11:36 | 17 | Before he went to law school, he was a graduate of |
| 10:11:41 | 18 | West Point.  He served a tour in Iraq and Afghanistan before |
| 10:11:48 | 19 | going to law school.  He and Ms. Breck, you will see both of |
| 10:11:56 | 20 | them on Friday. |
| 10:12:24 | 21 | BY MR. GREEN: |
| 10:12:24 | 22 | Q.  Mr. Gamez, I'm going to point you to page 33 of that |
| 10:12:32 | 23 | transcription, and in particular to line 7 through line 10 on |
| 10:12:37 | 24 | there.  I want you to read that, and then we can talk about |
| 10:12:44 | 25 | that particular portion of the conversation. |

| | | |
|---|---|---|
| 10:12:46 | 1 | MR. LAURATO:  Your Honor, I would request a question. |
| 10:12:51 | 2 | THE COURT:  I believe he's asked him to look at that |
| 10:12:55 | 3 | portion of the transcript to see if it refreshes his |
| 10:12:59 | 4 | recollection. |
| 10:13:02 | 5 | BY MR. GREEN: |
| 10:13:02 | 6 | Q.  Mr. Gamez, have you read that to refresh your recollection |
| 10:13:08 | 7 | a little bit? |
| 10:13:08 | 8 | A.  Yes. |
| 10:13:08 | 9 | Q.  In reading that, doesn't the Coast Guard indicate that |
| 10:13:11 | 10 | there was a phone call made to you from Mr. Suarez's phone on |
| 10:13:15 | 11 | December 4th, 2007? |
| 10:13:21 | 12 | A.  They indicate that on the call. |
| 10:13:22 | 13 | Q.  That information came from Mr. Suarez's phone records; |
| 10:13:29 | 14 | isn't that right? |
| 10:13:30 | 15 | MR. LAURATO:  Objection, hearsay. |
| 10:13:32 | 16 | THE COURT:  Sustained. |
| 10:13:39 | 17 | BY MR. GREEN: |
| 10:13:39 | 18 | Q.  Now, in this particular transcription, don't you indicate |
| 10:13:43 | 19 | that Mr. Suarez left with the boat on Wednesday or Thursday, |
| 10:13:48 | 20 | which would be November 21st or 22nd of 2007? |
| 10:13:54 | 21 | A.  Where is that? |
| 10:13:57 | 22 | Q.  If you look to page 31, starting at line 3, don't you |
| 10:14:22 | 23 | reference the fact that Mr. Suarez left with the boat on |
| 10:14:25 | 24 | Wednesday or Thursday, and he was supposed to be back on that |
| 10:14:29 | 25 | Saturday?  Don't you reference that? |

10:14:35  1  A.  Yes, it says that.  It must have been before I clarified

10:14:40  2  that it was actually a Saturday.

10:14:42  3  Q.  Is this your first conversation with the Coast Guard?

10:14:46  4  A.  I don't know.  Since these are not in chronological order,

10:14:49  5  I don't know the dates.

10:14:50  6  Q.  So you're representing to the Court and to this jury that

10:14:54  7  Mr. Suarez did not leave on a Wednesday or a Thursday, correct?

10:14:58  8  A.  Yes, it was a Saturday.

10:15:01  9  Q.  Why did you tell the Coast Guard, in this conversation,

10:15:05  10  that he left on a Wednesday or Thursday?

10:15:07  11  A.  I don't know why this says Wednesday or Thursday.

10:15:10  12  Q.  Were you making it up as you were going along?

10:15:14  13        MR. LAURATO:  Objection, Your Honor, argumentative.

10:15:17  14        THE COURT:  Sustained.

10:15:18  15  BY MR. GREEN:

10:15:18  16  Q.  Can you tell me a reason why you told the Coast Guard that

10:15:21  17  Mr. Suarez left with the boat on Wednesday or Thursday?

10:15:24  18  A.  I wasn't sure at this point.  As it says here on line 3, "I

10:15:30  19  think he left on a Wednesday or Thursday."

10:15:32  20  Q.  At this point in time, had you spoken to your cousin,

10:15:36  21  Mr. Alfredo Hassun, about when the boat left in Mr. Suarez's

10:15:43  22  possession?

10:15:44  23  A.  Again, that's not chronological.  I'm not sure.

10:15:47  24  Q.  When you advised the Coast Guard that -- when you told

10:15:48  25  Mr. Hassun -- you told Mr. Hassun to call the Coast Guard,

| | | |
|---|---|---|
| 10:15:52 | 1 | correct? |
| 10:15:53 | 2 | A.   Yes. |
| 10:15:53 | 3 | Q.   When did you tell him that? |
| 10:15:55 | 4 | A.   The Saturday night when the boat was supposed to return. |
| 10:15:59 | 5 | Q.   In that conversation with Mr. Hassun, when did he advise |
| 10:16:03 | 6 | you that the boat left? |
| 10:16:05 | 7 | A.   Saturday morning. |
| 10:16:07 | 8 | Q.   That would be November 24th, correct? |
| 10:16:09 | 9 | A.   Yes, 2007. |
| 10:16:19 | 10 | Q.   Didn't Mr. Hassun, your cousin, speak to the Coast Guard |
| 10:16:25 | 11 | before you did? |
| 10:16:26 | 12 | A.   Yes. |
| 10:16:26 | 13 | Q.   We know that because the Coast Guard called you, correct? |
| 10:16:33 | 14 | A.   I am not sure if I called them before they called me.  I |
| 10:16:37 | 15 | would have to see the chronological order of the phone calls. |
| 10:16:42 | 16 | I know that my cousin did call them on the 26th.  That was the |
| 10:16:47 | 17 | first contact. |
| 10:16:50 | 18 | Q.   Do you still have Defendant's Exhibit 7 in front of you? |
| 10:16:57 | 19 | A.   Okay, which page? |
| 10:17:05 | 20 | Q.   I will get to the page in a minute. |
| 10:17:11 | 21 |       THE COURT:  You have to come up with a different |
| 10:17:14 | 22 | numbering system when we do the joint books so that it makes it |
| 10:17:20 | 23 | easier in the future.  If counsel, as officers of the Court, |
| 10:17:23 | 24 | have any suggestions when this case is over with how to make it |
| 10:17:29 | 25 | clearer, I would welcome your suggestions. |

| | | |
|---|---|---|
| 10:17:32 | 1 | Which exhibit do you want the witness to look at? |
| 10:17:37 | 2 | MR. GREEN:  It's Defendant's Exhibit 7, Your Honor. |
| 10:17:42 | 3 | THE COURT:  Okay. |
| 10:17:56 | 4 | THE WITNESS:  So this would be three days after the |
| 10:17:59 | 5 | one that we spoke about?  It says 3/26/2012. |
| 10:18:11 | 6 | MR. GREEN:  That's the date it was transcribed, not |
| 10:18:14 | 7 | the date that it was actually made. |
| 10:18:17 | 8 | THE WITNESS:  Oh, of course. |
| 10:19:11 | 9 | MR. GREEN:  Page 23, starting at line 9 and through |
| 10:19:16 | 10 | line 13. |
| 10:19:20 | 11 | THE WITNESS:  Do we know a date of this conversation, |
| 10:19:24 | 12 | whether it was before or after? |
| 10:19:26 | 13 | MR. GREEN:  That's what we're going to get to, |
| 10:19:31 | 14 | Mr. Gamez. |
| 10:19:34 | 15 | BY MR. GREEN: |
| 10:19:34 | 16 | Q.  Based upon what you just read there, the lines that we just |
| 10:19:39 | 17 | pointed out, isn't it true that Petty Officer Smith advised you |
| 10:19:43 | 18 | that she was looking for or trying to get information on |
| 10:19:48 | 19 | Mr. Hassun, or get information regarding this vessel? |
| 10:19:52 | 20 | A.  Yes. |
| 10:19:52 | 21 | Q.  She also advised you that Mr. Hassun had called in to |
| 10:19:59 | 22 | report the vessel as missing, right? |
| 10:20:02 | 23 | A.  Yes. |
| 10:20:05 | 24 | Q.  By way of follow-up, she advised you that it was reported |
| 10:20:16 | 25 | by Mr. Hassun that the vessel was overdue, correct? |

| | | |
|---|---|---|
| 10:20:20 | 1 | A.  Yes. |
| 10:20:21 | 2 | Q.  Based upon this communication that was transcribed in |
| 10:20:26 | 3 | Defendant's Exhibit 7, isn't it clear that the conversation |
| 10:20:30 | 4 | with Mr. Hassun happened before the conversation happened with |
| 10:20:36 | 5 | you? |
| 10:20:40 | 6 | A.  It doesn't really state when it was.  I'm sorry, but it |
| 10:20:46 | 7 | does state that he called on the 26th to report it. |
| 10:20:49 | 8 | Q.  Now, in reporting that, I think you testified in your |
| 10:20:53 | 9 | direct examination that you advised your cousin to report it |
| 10:20:57 | 10 | missing on the 24th, correct? |
| 10:20:59 | 11 | A.  Yes. |
| 10:20:59 | 12 | Q.  Also, in your direct examination, you admitted or |
| 10:21:02 | 13 | acknowledged that the report by Mr. Hassun wasn't made until |
| 10:21:05 | 14 | the 26th, correct? |
| 10:21:07 | 15 | A.  Yes. |
| 10:21:07 | 16 | Q.  But you didn't know why Mr. Hassun had waited those two |
| 10:21:12 | 17 | days? |
| 10:21:12 | 18 | A.  No, I'm not sure why he waited or if he called before then. |
| 10:21:21 | 19 | Q.  Did you ever advise the Coast Guard that your |
| 10:21:24 | 20 | representation that the boat left on that Wednesday or Thursday |
| 10:21:26 | 21 | was incorrect? |
| 10:21:28 | 22 | MR. LAURATO:  Objection, relevance, Your Honor. |
| 10:21:31 | 23 | THE COURT:  Overruled. |
| 10:21:31 | 24 | THE WITNESS:  I don't recall. |
| 10:21:35 | 25 | BY MR. GREEN: |

| | | |
|---|---|---|
| 10:21:35 | 1 | Q.  In this conversation, the Coast Guard also represented to |
| 10:21:43 | 2 | you that there was another phone call made from Mr. Suarez's |
| 10:21:50 | 3 | phone to your phone, correct? |
| 10:21:53 | 4 | MR. LAURATO:  Objection, hearsay. |
| 10:21:55 | 5 | THE COURT:  Members of the jury, I'm going to sustain |
| 10:22:01 | 6 | the objection because we know that the Coast Guard made the |
| 10:22:07 | 7 | statement.  We don't know whether or not, because we don't have |
| 10:22:12 | 8 | the witness here that is subject to cross-examination and for |
| 10:22:16 | 9 | you to see, whether or not what he said in the statement, the |
| 10:22:22 | 10 | facts that are said in the statement, are true and accurate. |
| 10:22:26 | 11 | So I let you listen to it so that you can hear the |
| 10:22:31 | 12 | context of Mr. Gamez's response to those questions, but we |
| 10:22:37 | 13 | cannot assume for certain that all of the facts that are stated |
| 10:22:42 | 14 | in the out-of-court statement are true and accurate. |
| 10:22:48 | 15 | It's a subtle distinction, but I guess an analogy |
| 10:23:07 | 16 | would be -- well, I can't think of a good analogy off the top |
| 10:23:11 | 17 | of my head, but I sustained the objection. |
| 10:23:14 | 18 | BY MR. GREEN: |
| 10:23:14 | 19 | Q.  Mr. Gamez, you made phone calls to Mr. Suarez's cell phone, |
| | 20 | didn't you? |
| | 21 | A.  Yes. |
| 10:23:16 | 22 | Q.  How many phone calls did you make to Mr. Suarez's phone? |
| 10:23:20 | 23 | A.  I don't recall. |
| 10:23:20 | 24 | Q.  How did you get Mr. Suarez's phone number? |
| 10:23:24 | 25 | A.  From my cousin. |

GAMEZ - Cross

| | | |
|---|---|---|
| 10:23:25 | 1 | Q.  Did you ever speak to anyone when you called Mr. Suarez? |
| 10:23:29 | 2 | A.  I spoke to someone that I thought was him, but it ended up |
| 10:23:34 | 3 | to be a friend of his. |
| 10:23:36 | 4 | Q.  Did anyone ever call you back from that phone? |
| 10:23:41 | 5 | A.  I don't recall. |
| 10:23:59 | 6 | Q.  Do you know of any reason why the Coast Guard would |
| 10:24:02 | 7 | represent to you that they had records that a phone call was |
| 10:24:05 | 8 | made from Mr. Suarez's phone to your phone? |
| 10:24:09 | 9 | MR. LAURATO:  Objection, Your Honor.  Lack of personal |
| 10:24:12 | 10 | knowledge.  Calls for speculation. |
| 10:24:15 | 11 | THE COURT:  Sustained. |
| 10:24:16 | 12 | He doesn't know what the Coast Guard is thinking, so |
| 10:24:20 | 13 | he can't testify to that. |
| 10:24:29 | 14 | BY MR. GREEN: |
| 10:24:29 | 15 | Q.  Did you ever take any other steps besides calling |
| 10:24:34 | 16 | Mr. Suarez to locate Mr. Suarez? |
| 10:24:37 | 17 | A.  I called the Coast Guard to search. |
| 10:24:38 | 18 | Q.  Other than calling Mr. Suarez and calling the Coast Guard |
| 10:24:38 | 19 | to search, did you take any other steps to locate Mr. Suarez? |
| 10:24:40 | 20 | A.  I called the police to make a missing persons report. |
| | 21 | Q.  You made a missing persons report to the police? |
| 10:24:48 | 22 | A.  I meant actually the stolen -- as per Detective Walker's |
| | 23 | recommendation. |
| 10:24:54 | 24 | Q.  There's nothing in that particular transcription or |
| 10:24:57 | 25 | recording that Sergeant Walker told you to file a police |

| 10:25:01 | 1 | report, is there? |
| 10:25:02 | 2 | A.   Again, these recordings don't seem to be complete or |
| 10:25:09 | 3 | chronologically correct. |
| 10:25:10 | 4 | Q.   What date did Sergeant Walker tell you to file a police |
| | 5 | report? |
| 10:25:16 | 6 | A.   I don't recall the date. |
| 10:25:16 | 7 | Q.   Were you ever advised by any other Coast Guard personnel to |
| 10:25:19 | 8 | file a police report? |
| 10:25:21 | 9 | A.   Only Detective Walker, who was conducting the |
| 10:25:25 | 10 | investigation. |
| 10:25:25 | 11 | Q.   You spoke to Special Agent Woods, correct? |
| 10:25:28 | 12 | A.   This was in 2008.  I spoke to Special Agent Woods at my |
| 10:25:33 | 13 | office. |
| 10:25:34 | 14 | Q.   When you spoke to Special Agent Woods, he was asking you |
| 10:25:35 | 15 | about this particular vessel, wasn't he? |
| 10:25:39 | 16 | A.   No, actually, he was referring to a newspaper article |
| 10:25:41 | 17 | regarding a Wellcraft. |
| 10:25:46 | 18 | Q.   If Special Agent Woods's testimony is different than that, |
| 10:25:54 | 19 | what would your position be? |
| 10:25:56 | 20 |        MR. LAURATO:  Objection, relevance. |
| 10:25:58 | 21 |        THE COURT:  Overruled. |
| 10:25:59 | 22 |        THE WITNESS:  I can't speak for Detective Woods. |
| 10:26:02 | 23 | BY MR. GREEN: |
| 10:26:02 | 24 | Q.   With regard to Special Agent Woods, did Special Agent Woods |
| 10:26:06 | 25 | tell you it was okay to file a police report? |

| | | |
|---|---|---|
| 10:26:12 | 1 | MR LAURATO:  Objection, relevance. |
| 10:26:15 | 2 | THE COURT:  Overruled. |
| 10:26:15 | 3 | THE WITNESS:  I don't recall. |
| 10:26:17 | 4 | BY MR. GREEN: |
| | 5 | Q.  You don't recall? |
| | 6 | A.  No. |
| 10:26:17 | 7 | Q.  Didn't, in fact, Special Agent Woods tell you not to file a |
| 10:26:21 | 8 | police report? |
| 10:26:22 | 9 | MR. LAURATO:  Objection, hearsay, Your Honor.  It's |
| 10:26:24 | 10 | outside the regulations as well. |
| 10:26:26 | 11 | THE COURT:  Overruled. |
| 10:26:26 | 12 | THE WITNESS:  I don't recall. |
| 10:26:28 | 13 | BY MR. GREEN: |
| 10:26:28 | 14 | Q.  You don't recall whether Special Agent Woods told you not |
| 10:26:35 | 15 | to file a police report? |
| 10:26:39 | 16 | MR. LAURATO:  Objection, asked and answered. |
| 10:26:40 | 17 | THE COURT:  Overruled. |
| 10:26:41 | 18 | THE WITNESS:  I don't recall. |
| 10:26:43 | 19 | BY MR. GREEN: |
| 10:26:43 | 20 | Q.  Can you speak up a little bit, please. |
| 10:26:47 | 21 | A.  I don't recall. |
| 10:26:47 | 22 | Q.  Thank you. |
| 10:26:47 | 23 | You spoke to Special Agent Woods on a few occasions, |
| 10:26:51 | 24 | correct? |
| 10:26:51 | 25 | A.  I believe it was only once, as best as I can remember. |

| | | |
|---|---|---|
| 10:26:56 | 1 | Q.  Special Agent Woods came to your office, correct? |
| 10:26:58 | 2 | A.  He did. |
| 10:26:59 | 3 | Q.  Did Special Agent Woods come along with anybody else? |
| 10:27:03 | 4 | A.  There was someone with him. |
| 10:27:04 | 5 | Q.  In the conversation with Special Agent Woods, did he tell |
| 10:27:09 | 6 | you that he was speaking to you because he believed that your |
| 10:27:12 | 7 | boat was being used for human smuggling? |
| 10:27:16 | 8 | MR. LAURATO:  Objection, hearsay, relevance, 403. |
| 10:27:21 | 9 | THE COURT:  Overruled. |
| 10:27:24 | 10 | THE WITNESS:  Again, Special Agent Woods, he was |
| 10:27:28 | 11 | referencing a newspaper article which, again, had the wrong |
| 10:27:31 | 12 | boat, wrong dates, and he was using that as his basis. |
| | 13 | BY MR. GREEN: |
| 10:27:36 | 14 | Q.  How do you know what he was using as his basis? |
| 10:27:41 | 15 | A.  Because he had the newspaper with him. |
| 10:27:43 | 16 | Q.  Do you think that -- did Special Agent Woods indicate to |
| 10:27:46 | 17 | you that he was doing his own investigation? |
| 10:27:48 | 18 | MR. LAURATO:  Objection, relevance. |
| 10:27:53 | 19 | THE COURT:  I'm going to allow this question, but |
| 10:27:56 | 20 | where are we going with this? |
| 10:27:59 | 21 | MR. GREEN:  Your Honor, as you know -- |
| 10:28:02 | 22 | THE COURT:  I'm going to allow this, but I'm giving |
| 10:28:06 | 23 | you a warning that I need to see where we're going with this in |
| 10:28:11 | 24 | the next question after this one. |
| 10:28:13 | 25 | Repeat the question.  He can answer the question. |

| | | |
|---|---|---|
| 10:28:20 | 1 | BY MR. GREEN: |
| 10:28:20 | 2 | Q.  With regard to your conversation with Special Agent Woods, |
| 10:28:23 | 3 | did he ever indicate to you that he was doing his own |
| 10:28:26 | 4 | independent investigation? |
| 10:28:27 | 5 | A.  No, I believe this was the same investigation that was |
| 10:28:31 | 6 | started in 2007.  There was no actual findings, no facts, no |
| 10:28:39 | 7 | proof if it was stolen, no proof if it was lost. |
| 10:28:44 | 8 | Q.  Do you recall when you spoke to Special Agent Woods? |
| 10:28:47 | 9 | A.  2008, early 2008. |
| 10:28:49 | 10 | Q.  Would it be January of 2008? |
| 10:28:53 | 11 | A.  I don't recall. |
| 10:28:57 | 12 | Q.  Special Agent Woods, did he advise you, when he spoke to |
| 10:29:00 | 13 | you, that he was following up related to the initial Coast |
| 10:29:04 | 14 | Guard reports that were made by you and Mr. Hassun? |
| 10:29:10 | 15 | MR. LAURATO:  Objection, relevance. |
| 10:29:12 | 16 | THE COURT:  Overruled. |
| 10:29:12 | 17 | THE WITNESS:  I don't recall.  This was, again, about |
| 10:29:16 | 18 | six years ago. |
| 10:29:17 | 19 | BY MR. GREEN: |
| 10:29:17 | 20 | Q.  Fair enough. |
| 10:29:19 | 21 | Other than Special Agent Woods, did you speak to |
| 10:29:25 | 22 | anyone else with the Coast Guard regarding your boat? |
| 10:29:27 | 23 | A.  The only names I remember is Detective Walker and Woods and |
| 10:29:32 | 24 | Officer Smith.  I don't recall anyone else or if I did or not. |
| 10:29:37 | 25 | Q.  Now, you made a police report regarding this boat, correct? |

| Time | Line | Text |
|---|---|---|
| 10:29:41 | 1 | A.   Yes. |
| 10:29:42 | 2 | Q.   Did you ever turn that police report over to ACE? |
| 10:29:48 | 3 | A.   Yes, it was turned over. |
| 10:29:50 | 4 | Q.   In what form was it turned over to ACE? |
| 10:29:54 | 5 | A.   I think I gave them the police report number. |
| 10:29:57 | 6 | Q.   Did you ever give them the actual report? |
| 10:29:59 | 7 | A.   I never had the actual report. |
| 10:30:02 | 8 | Q.   When you gave the report, did you speak directly to the |
| 10:30:05 | 9 | police officer? |
| 10:30:06 | 10 | A.   When I gave the report, yes, I had called the police |
| 10:30:10 | 11 | officer, and I met them at my cousin's house, yes. |
| 10:30:14 | 12 | Q.   Did your cousin speak to the police? |
| 10:30:17 | 13 | A.   I don't remember if he did or not. |
| 10:30:19 | 14 | Q.   What did you tell the police with regard to what happened |
| 10:30:23 | 15 | with the boat? |
| 10:30:23 | 16 | A.   I told them that my cousin lent the boat to his friend. |
| 10:30:30 | 17 |      I'm sorry, are you talking about the first? |
| 10:30:33 | 18 | Q.   I'm talking about the Miami-Dade Police Department report. |
| 10:30:36 | 19 | A.   The first time they came out or the second time? |
| 10:30:37 | 20 | Q.   I'm talking about the day that you actually made the |
| 10:30:40 | 21 | report, whatever date that was. |
| 10:30:42 | 22 | A.   The actual report, that was in January of 2008. |
| 10:30:46 | 23 | Q.   What did you tell the police with regard to what happened |
| 10:30:50 | 24 | with the boat? |
| 10:30:50 | 25 | A.   The same thing that I told the Coast Guard, that it had |

| | | |
|---|---|---|
| 10:30:54 | 1 | gone out.  My cousin lent it to a friend of his.  He was |
| 10:30:58 | 2 | supposed to return the same night.  He did not.  We told them |
| 10:31:03 | 3 | about the Coast Guard report and that the detective had told me |
| 10:31:08 | 4 | to report it stolen. |
| 10:31:10 | 5 | Q.  Did you ever tell the Miami-Dade Police Department officer |
| 10:31:13 | 6 | that took the report that someone came and entered the rear, |
| 10:31:17 | 7 | your cousin's backyard, and stole the boat? |
| 10:31:21 | 8 | MR. LAURATO:  Objection, hearsay. |
| 10:31:23 | 9 | THE COURT:  Overruled. |
| 10:31:24 | 10 | THE WITNESS:  No, I didn't. |
| 10:31:26 | 11 | BY MR. GREEN: |
| 10:31:26 | 12 | Q.  You didn't tell them that? |
| 10:31:29 | 13 | A.  No. |
| 10:31:29 | 14 | MR. GREEN:  Just for clarity, I think the objection |
| 10:31:32 | 15 | came in the middle of the question. |
| 10:31:36 | 16 | THE COURT:  You may repeat the question. |
| 10:31:38 | 17 | BY MR. GREEN: |
| 10:31:38 | 18 | Q.  Mr. Gamez, did you ever tell the Miami-Dade Police |
| 10:31:41 | 19 | Department that someone entered the backyard of your cousin's |
| 10:31:47 | 20 | home, unknown persons, took the boat and went off in an unknown |
| 10:31:54 | 21 | direction? |
| 10:31:54 | 22 | A.  Actually, I think the police officer was mistaken because |
| 10:31:58 | 23 | he actually listed a Tritan vessel.  That's a different boat as |
| 10:32:02 | 24 | well, so I think he might have gotten confused with the |
| 10:32:06 | 25 | reports. |

| | | |
|---|---|---|
| 10:32:06 | 1 | Q.  You haven't spoken to the police officer about the report |
| | 2 | that he took? |
| 10:32:10 | 3 | A.  No, I haven't. |
| 10:32:11 | 4 | Q.  With regard to the 32-foot Glasstream vessel, did it have a |
| 10:32:16 | 5 | particular style name?  That may be a poorly worded question. |
| 10:32:23 | 6 | If it was a Chevy vehicle, did it have like a Chevy |
| 10:32:30 | 7 | Tahoe, or was it a certain type of -- |
| 10:32:31 | 8 | A.  Yes, Glasstream I believe SCX. |
| 10:32:35 | 9 | Q.  Did it have any special class name or style? |
| 10:32:40 | 10 | A.  Cuddy Cabin. |
| 10:32:43 | 11 | Q.  But you don't recognize whether it was -- did it have the |
| 10:32:48 | 12 | name Tritan as the style of the boat? |
| 10:32:49 | 13 | A.  No, Tritan is another manufacturer of boats. |
| 10:32:55 | 14 | Q.  So you're saying that Glasstream does not have a style of |
| 10:32:58 | 15 | boat named Tritan? |
| 10:32:58 | 16 | A.  Correct. |
| 10:32:59 | 17 | Q.  Do you know whether the police report that you filed with |
| 10:33:05 | 18 | the Miami-Dade Police Department -- |
| 10:33:07 | 19 | MR. LAURATO:  Objection, hearsay as to what the report |
| | 20 | references. |
| 10:33:09 | 21 | THE COURT:  Just rephrase the question. |
| 10:33:11 | 22 | BY MR. GREEN: |
| 10:33:11 | 23 | Q.  Did you identify the boat as a Glasstream boat vessel to |
| 10:33:17 | 24 | the police department? |
| 10:33:18 | 25 | A.  Yes, I provided the registration and title and all the |

| | | |
|---|---|---|
| 10:33:22 | 1 | ownership documents to the police officer.  So he wrote down |
| 10:33:26 | 2 | the boat number and all of that. |
| 10:33:28 | 3 | Q.  With regard to the ownership documents, you indicated |
| 10:33:31 | 4 | earlier to the Court that you maintained ownership documents |
| 10:33:36 | 5 | with you on the boat because you didn't have the vehicle |
| 10:33:39 | 6 | registration. |
| 10:33:40 | 7 | Do you remember that? |
| 10:33:40 | 8 | A.  The documents were on the boat.  The registration arrived |
| 10:33:45 | 9 | January 11th, 2008. |
| 10:33:47 | 10 | Q.  With regard to the ownership papers, where were they |
| 10:33:50 | 11 | maintained? |
| 10:33:51 | 12 | A.  On the boat always. |
| 10:33:53 | 13 | Q.  At the time that you initially called the police department |
| 10:33:56 | 14 | to file your report, you didn't have the ownership papers |
| 10:34:00 | 15 | anymore? |
| 10:34:00 | 16 | A.  The ownership papers were gone on the boat.  The first time |
| 10:34:05 | 17 | that I called Miami-Dade Police Department, they came out and |
| 10:34:08 | 18 | told me that they could not file a police report.  This was in |
| 10:34:12 | 19 | November 2007. |
| 10:34:14 | 20 | The police officer from Dade County told me there's no |
| 10:34:15 | 21 | way he can file the report without a registration or a tag, |
| 10:34:19 | 22 | which I did not receive until the following year, January 11th. |
| 10:34:23 | 23 | Q.  Do you know what date the vehicle registration and tag were |
| 10:34:27 | 24 | issued? |
| 10:34:29 | 25 | A.  I believe the state issued it in December, but it did not |

| | | |
|---|---|---|
| 10:34:34 | 1 | arrive until January 11th, and I have the documentation there. |
| 10:34:38 | 2 | The same date it arrived, January 11th, is the same date that I |
| 10:34:42 | 3 | called the police and made a report. |
| 10:34:49 | 4 | MR. GREEN:  Would you pull up the Joint Exhibit 21, |
| 10:34:53 | 5 | please. |
| 10:34:55 | 6 | BY MR. GREEN: |
| 10:34:55 | 7 | Q.  While we wait for that, where was the vehicle registration |
| 10:35:09 | 8 | mailed, if you recall? |
| 10:35:12 | 9 | A.  It should have been mailed to my home. |
| 10:35:16 | 10 | Q.  It was mailed to your home? |
| 10:35:18 | 11 | A.  Yes. |
| 10:35:53 | 12 | THE COURT:  We all have it in our books. |
| 10:35:56 | 13 | MR. GREEN:  It's Joint Exhibit 21. |
| 10:36:00 | 14 | THE COURT:  This is an example of if it can go wrong |
| 10:36:05 | 15 | with technology, it will go wrong. |
| 10:36:08 | 16 | BY MR. GREEN: |
| 10:36:08 | 17 | Q.  Mr. Gamez, do you have that document in front of you? |
| 10:36:13 | 18 | A.  Yes. |
| 10:36:13 | 19 | Q.  Can you see the date that the -- this registration was |
| 10:36:19 | 20 | issued? |
| 10:36:20 | 21 | A.  Yes, it says December 10th, 2007. |
| 10:36:24 | 22 | Q.  But you indicated that you didn't receive this document |
| 10:36:30 | 23 | until January 11th, 2008; is that right? |
| 10:36:33 | 24 | A.  Correct.  If you show the tag and trailer registration, it |
| 10:36:39 | 25 | will show the date 1/11 on the registration. |

GAMEZ - Cross

| | | |
|---|---|---|
| 10:36:44 | 1 | Q.  You're saying that you didn't have this registration at all |
| 10:36:48 | 2 | before the January 11th, 2008 date? |
| 10:36:50 | 3 | A.  Yes, and I still have the original in my possession. |
| 10:36:53 | 4 | Q.  Are you representing to the Court that it took over a month |
| 10:36:58 | 5 | for you to get this document after it was issued? |
| 10:37:01 | 6 | A.  Yes.  If you pull up the trailer registration and tag, it |
| 10:37:07 | 7 | will prove that. |
| 10:37:12 | 8 | Q.  Once you received this document, you said you made a police |
| 10:37:17 | 9 | report, correct? |
| 10:37:19 | 10 | A.  Correct. |
| 10:37:20 | 11 | If you would, I would like you to see the trailer |
| 10:37:24 | 12 | registration.  That way it indicates January 11th as the same |
| 10:37:30 | 13 | date I made the police report. |
| 10:37:30 | 14 | THE COURT:  Mr. Laurato can show you that when he does |
| 10:37:34 | 15 | his redirect. |
| 10:37:37 | 16 | THE WITNESS:  Great.  Thank you. |
| 10:37:47 | 17 | BY MR. GREEN: |
| 10:37:47 | 18 | Q.  Do you remember the officer's name that took the police |
| 10:37:53 | 19 | report? |
| 10:37:54 | 20 | A.  No, I don't. |
| 10:37:55 | 21 | Q.  Did you ever obtain a copy of the police report? |
| 10:37:59 | 22 | A.  I saw it, I think, on the first examination under oath |
| 10:38:03 | 23 | possibly I saw it, yes. |
| 10:38:06 | 24 | Q.  That police report was again provided to ACE, correct? |
| 10:38:11 | 25 | A.  Yes, and it was incorrect. |

November 12, 2013

| | | |
|---|---|---|
| 10:38:13 | 1 | Q.  Did you ever advise ACE that the police report was |
| 10:38:18 | 2 | incorrect? |
| 10:38:18 | 3 | A.  Yes, I advised and I pointed out the facts on the police |
| 10:38:23 | 4 | report stating where the incorrect portions were. |
| 10:38:27 | 5 | Q.  When did you do that? |
| 10:38:29 | 6 | A.  When I sat through the examination, I believe. |
| 10:38:32 | 7 | Q.  That was your deposition? |
| 10:38:34 | 8 | A.  No, the other attorneys that did the investigation for ACE |
| 10:38:37 | 9 | before they hired you. |
| 10:38:40 | 10 | Q.  So you indicated that you pointed that out to ACE during |
| 10:38:45 | 11 | your examination under oath, which was taken on March 3rd, |
| 10:38:48 | 12 | 2008? |
| 10:38:49 | 13 | A.  Yes, I pointed it out, and it's on the transcripts. |
| 10:39:13 | 14 | MR. GREEN:  Would you pull up the sworn proof of loss, |
| 10:39:17 | 15 | please.  It will be Joint Exhibit 8. |
| 10:39:25 | 16 | BY MR. GREEN: |
| 10:39:25 | 17 | Q.  What document are you referring to when you indicate that |
| 10:40:02 | 18 | you did not receive it until January 11th of 2008? |
| 10:40:06 | 19 | A.  The trailer tag and registration. |
| | 20 | Q.  Do you know whether that trailer tag and registration were |
| | 21 | ever provided to ACE? |
| 10:40:12 | 22 | A.  I believe so.  There should be a copy of it on file. |
| 10:40:15 | 23 | Q.  On whose files? |
| 10:40:17 | 24 | A.  An ACE's files. |
| 10:40:19 | 25 | Q.  When did you provide that information to ACE? |

| | | |
|---|---|---|
| 10:40:24 | 1 | A.  I don't remember the date.  Again, as I've stated, as soon |
| 10:40:28 | 2 | as I received it, which is date January 11th, which you will be |
| 10:40:32 | 3 | shown, it's the same date as the second police report.  Well, |
| 10:40:39 | 4 | they never made a report in December of '07. |
| 10:40:42 | 5 | As soon as I received it in the mail, I went over to |
| 10:40:46 | 6 | Alfredo's house and called the police again and made the report |
| 10:40:51 | 7 | that day.  That's the information that the police based their |
| 10:40:55 | 8 | report on. |
| 10:40:56 | 9 | Q.  Subsequent to that date, January 11th, 2008, you didn't |
| 10:41:02 | 10 | notify ACE until January 29th, 2008, right? |
| 10:41:03 | 11 | A.  That's not correct.  I notified them a week after it was |
| 10:41:07 | 12 | missing after the Coast Guard report was made. |
| 10:41:10 | 13 | Q.  Do you have any records to support your representation that |
| | 14 | you made a report the week after Coast Guard said the boat was |
| | 15 | missing? |
| 10:41:12 | 16 | A.  I called the 1-800 number on the policy.  The lady told me |
| 10:41:18 | 17 | that she would not be able to open a case number without the |
| 10:41:23 | 18 | police report. |
| 10:41:23 | 19 | Q.  Do you have any phone records to support that? |
| 10:41:28 | 20 | A.  No, I don't have any phone records. |
| 10:41:29 | 21 | Q.  What phone did you call from? |
| 10:41:32 | 22 | A.  I don't remember.  It could have been my business phone or |
| 10:41:35 | 23 | cell phone. |
| 10:41:36 | 24 | Q.  Did you ever attempt to look at any phone records to |
| 10:41:39 | 25 | indicate whether you called ACE's 1-800 number? |

10:41:39  1          MR. LAURATO:  Objection, relevance.

10:41:41  2          THE COURT:  Overruled.

10:41:41  3          THE WITNESS:  I know you have to pull the court

10:41:45  4  records -- phone records.  I tried to look through them.  I

10:41:48  5  didn't see anything on those, but they were incomplete.

10:41:52  6  BY MR. GREEN:

10:41:52  7  Q.  The records that you looked at were incomplete?

10:41:56  8  A.  Yeah, they were mixed up with other people's phone numbers.

10:42:00  9  Q.  In your review of those records, did you see any indication

10:42:03  10 of a 1-800 number where you called ACE to report your claim?

10:42:09  11         MR. LAURATO:  Objection, calls for hearsay.

10:42:10  12         THE COURT:  Overruled.

10:42:12  13         THE WITNESS:  I'm sure I called ACE the week after it

10:42:14  14 was missing after we reported it to the Coast Guard.

10:42:17  15 BY MR. GREEN:

10:42:17  16 Q.  Assuming that you did call ACE the week after the boat was

10:42:21  17 missing, why did you wait between January 11th, 2008 and

10:42:27  18 January 29th, 2008 to report the vessel stolen to ACE?

10:42:30  19         MR. LAURATO:  Objection, improper hypothetical to a

10:42:34  20 lay witness.

10:42:35  21         THE COURT:  Overruled.

10:42:35  22         THE WITNESS:  The police report, if you look at it,

10:42:39  23 you will notice that it was done on January 11th.  If you look

10:42:44  24 at the second page of the report, the officer didn't sign off

10:42:47  25 until January 16th.  He waited five days before he completed

| | | |
|---|---|---|
| 10:42:53 | 1 | it.  The 11th, I believe, fell on a Friday, so you have the |
| 10:42:58 | 2 | weekend. |
| 10:43:02 | 3 | MR. LAURATO:  Objection, Your Honor, I move to strike |
| 10:43:05 | 4 | the question and strike the testimony.  It's hearsay and |
| 10:43:09 | 5 | speculative. |
| 10:43:10 | 6 | THE COURT:  Overruled. |
| 10:43:12 | 7 | I do agree that it is speculative, so perhaps -- |
| 10:43:16 | 8 | MR. GREEN:  I will address that. |
| 10:43:19 | 9 | THE COURT:  Disregard the question and the answer.  It |
| 10:43:21 | 10 | is speculation. |
| 10:43:23 | 11 | BY MR. GREEN: |
| 10:43:23 | 12 | Q.  So you don't know what happened once you submitted the |
| 10:43:30 | 13 | police report or you made the police report? |
| 10:43:33 | 14 | A.  The police gave me a report number, a small card.  I don't |
| 10:43:38 | 15 | know if anyone has ever filed a police report.  They give you a |
| 10:43:44 | 16 | card.  You need to call to see when the report is ready.  The |
| 10:43:51 | 17 | report wasn't finished by the officer until the 16th of |
| 10:43:54 | 18 | January. |
| 10:43:54 | 19 | Q.  You don't know that.  That's all speculation on your part, |
| 10:43:59 | 20 | correct? |
| 10:43:59 | 21 | A.  No, the date is on the police report.  It's a fact.  It's |
| 10:44:03 | 22 | on the police report. |
| 10:44:04 | 23 | Q.  You don't know the officer who completed the police report, |
| 10:44:08 | 24 | do you? |
| 10:44:08 | 25 | A.  I don't know him personally, no. |

GAMEZ - Cross

| | | |
|---|---|---|
| 10:44:12 | 1 | Q.  Okay. |
| 10:44:21 | 2 | Now, do you have Joint Exhibit 8 in front of you? |
| 10:44:27 | 3 | A.  Joint? |
| 10:44:28 | 4 | Q.  Yes, sir, which is a sworn proof of loss. |
| 10:44:33 | 5 | A.  Yes. |
| 10:44:33 | 6 | Q.  Yesterday, you testified in your direct examination that |
| 10:44:34 | 7 | you did not complete this except for the signature; is that |
| 10:44:39 | 8 | right? |
| 10:44:40 | 9 | A.  I had my cousin complete it for more accurateness since he |
| 10:44:46 | 10 | was the one that loaned the boat out and knew the timeline. |
| 10:44:49 | 11 | Q.  So your cousin filled this sworn proof of loss out with |
| 10:45:02 | 12 | your full authority? |
| 10:45:02 | 13 | A.  Yes, I went ahead and signed it and had it notarized. |
| 10:45:05 | 14 | Q.  Since this is written by your cousin, he was writing in |
| | 15 | third person, correct? |
| | 16 | A.  This was written in September 2008. |
| 10:45:06 | 17 | Q.  I didn't ask you about the date. |
| 10:45:08 | 18 | I asked you whether he was ghostwriting for you. |
| 10:45:10 | 19 | A.  I don't know what ghostwriting is. |
| 10:45:14 | 20 | Q.  Did Mr. Hassun write this for you? |
| 10:45:17 | 21 | A.  He wrote the facts of what had happened, yes. |
| 10:45:21 | 22 | Q.  Are you familiar with Mr. Hassun's handwriting? |
| 10:45:24 | 23 | A.  Yes, I am. |
| 10:45:25 | 24 | Q.  Does this look like Mr. Hassun's handwriting? |
| 10:45:29 | 25 | A.  Yes, it is. |

GAMEZ - Cross

40

| | | |
|---|---|---|
| 10:45:30 | 1 | Q.  Mr. Hassun was the person with the most knowledge as to the |
| 10:45:33 | 2 | events surrounding the missing boat, correct? |
| 10:45:36 | 3 | A.  Yes, he was the one that loaned it to his friend, and he |
| 10:45:40 | 4 | had the most knowledge. |
| 10:45:42 | 5 | Q.  Now, I want to point you to a section of the sworn proof of |
| 10:45:49 | 6 | loss.  In particular, I want to point you to the right side of |
| 10:45:57 | 7 | the sworn proof of loss. |
| 10:46:25 | 8 | You read the sworn proof of loss before it was |
| 10:46:29 | 9 | submitted to ACE, correct? |
| 10:46:31 | 10 | A.  Yes, I did. |
| 10:46:33 | 11 | Q.  You had this thing notarized, correct? |
| 10:46:36 | 12 | A.  Yes, it is. |
| 10:46:37 | 13 | Q.  It was required for you to have this notarized, correct? |
| 10:46:41 | 14 | A.  Yes, it's a notarized sworn statement. |
| 10:46:46 | 15 | Q.  I believe your counsel went over the narrative portion of |
| 10:46:50 | 16 | it, but I think one portion was not addressed. |
| 10:46:54 | 17 | Can you read the entire narrative section that has |
| 10:46:58 | 18 | been highlighted for me, please. |
| 10:47:04 | 19 | A.  "November, the boat and trailer were loaned to Alexis |
| 10:47:09 | 20 | Suarez to fish only.  I never saw the boat or trailer again. |
| 10:47:13 | 21 | The U.S. Coast Guard was notified on 11/26/2007.  Within a |
| 10:47:18 | 22 | couple of weeks, the Coast Guard said it was stolen.  Later, |
| 10:47:21 | 23 | the U.S. Coast Guard told me they suspected that the boat was |
| 10:47:26 | 24 | used to transfer refugees and was lost at sea." |
| 10:47:36 | 25 | Sorry, I can't see what it says there. |

| | | |
|---|---|---|
| 10:47:44 | 1 | MR. LAURATO:  Your Honor, just a point of |
| 10:47:47 | 2 | clarification as to any questions on this exhibit, I believe |
| 10:47:51 | 3 | the part that we're focusing on may answer the next question |
| 10:47:58 | 4 | down, so that may clarify. |
| 10:48:01 | 5 | THE COURT:  I think you may be right. |
| 10:48:33 | 6 | BY MR. GREEN: |
| 10:48:33 | 7 | Q.  On this document, Mr. Gamez, do you see where it's been |
| 10:48:38 | 8 | referenced that your cousin, Mr. Hassun, had use of the boat? |
| 10:48:44 | 9 | A.  Yes. |
| 10:48:44 | 10 | Q.  Do you see where it says that Mr. Hassun made payments on |
| 10:48:48 | 11 | the boat? |
| 10:48:54 | 12 | THE COURT:  If you're trying to highlight it, your |
| 10:49:00 | 13 | paralegal needs to focus in on what you're talking about. |
| 10:49:04 | 14 | MR. LAURATO:  Your Honor, I would like to invoke the |
| 10:49:07 | 15 | Rule of Completeness and ask that that entire question -- |
| 10:49:12 | 16 | THE COURT:  He's going to do it.  They're practicing. |
| 10:49:18 | 17 | By the end of the case, there should be a perfect ballet. |
| 10:49:23 | 18 | MR. LAURATO:  Your Honor, there is another part of |
| 10:49:26 | 19 | that question. |
| 10:49:27 | 20 | THE COURT:  You can cover it in redirect if Mr. Green |
| 10:49:31 | 21 | does not get it all. |
| 10:49:37 | 22 | BY MR. GREEN: |
| 10:49:37 | 23 | Q.  Mr. Gamez, on the next line in that particular inquiry, it |
| 10:49:45 | 24 | asks for certain information, correct? |
| 10:49:48 | 25 | A.  Which question are you referring to? |

| | | |
|---|---|---|
| 10:49:52 | 1 | Q.  I'm referring to the highlighted section on the document. |
| 10:49:57 | 2 | THE COURT:  Point to where you want him to look on the |
| 10:50:02 | 3 | screen.  The little green spot is where he wants you to look. |
| 10:50:13 | 4 | THE WITNESS:  Okay. |
| 10:50:14 | 5 | BY MR. GREEN: |
| 10:50:14 | 6 | Q.  What does that state? |
| 10:50:16 | 7 | A.  "My cousin Alfredo Hassun had use of the boat." |
| 10:50:21 | 8 | Q.  Doesn't it also state that your cousin made the majority of |
| 10:50:27 | 9 | the monthly payments? |
| 10:50:29 | 10 | A.  On the side it says that. |
| 10:50:32 | 11 | To clarify, remember that the ownership of this boat |
| 10:50:35 | 12 | was only about three weeks.  During that time, he did |
| 10:50:39 | 13 | contribute.  However, as it was shown previously in exhibits, |
| 10:50:43 | 14 | every single payment was made by me out of my bank account with |
| 10:50:47 | 15 | my money. |
| 10:50:48 | 16 | Q.  This sworn proof of loss was dated September 9th, 2008, |
| 10:50:56 | 17 | right? |
| 10:50:57 | 18 | A.  Yes. |
| 10:50:58 | 19 | Q.  At that time, the boat was gone at least ten months, |
| 10:51:03 | 20 | correct? |
| 10:51:04 | 21 | A.  Right, this is just the sworn proof of loss as a statement |
| 10:51:07 | 22 | made during the time of ownership of the boat, not after it |
| 10:51:11 | 23 | went missing. |
| 10:51:14 | 24 | Q.  Who said it was only related to the time that you had |
| 10:51:18 | 25 | ownership of the boat? |

10:51:19   1   A.  Because you're asking for sworn proof of loss, and this is

10:51:28   2   what happens during the time that I owned the boat prior to it

           3   going missing.

10:51:31   4   Q.  Why did you represent on this sworn proof of loss that

10:51:36   5   Mr. Hassun made the monthly payments on the boats?

10:51:40   6   A.  Contributions could be deemed as payments.  However, all of

10:51:45   7   my bank statements confirm that I made all the payments.

10:51:48   8   Q.  Mr. Gamez, it doesn't say he contributed to the payments.

10:51:52   9   It says that he made the monthly payments on the sworn proof of

          10   loss, doesn't it?

10:51:56  11   A.  It does not say he made monthly payments.

10:52:02  12   Q.  What does it say?

10:52:04  13   A.  It says he made the majority of a payment.

10:52:09  14        THE COURT:  It says the majority of the monthly

10:52:13  15   payments.

10:52:13  16        THE WITNESS:  I'm sorry.

10:52:17  17   BY MR. GREEN:

10:52:17  18   Q.  Mr. Gamez, would you like to restate your testimony on that

10:52:21  19   issue?

10:52:21  20   A.  No, we only owned the boat for that one month and did not

10:52:23  21   have use of the boat after November.

10:52:27  22   Q.  Didn't you represent, under oath, that your cousin made the

10:52:31  23   majority of the monthly payments on this boat?

10:52:34  24   A.  That's what it seems to say there.

10:52:36  25   Q.  Does it say that or not?

| 10:52:38 | 1 | A.  It says that, but that's not the facts. |
| 10:52:41 | 2 | Q.  Does it say that? |
| 10:52:43 | 3 | A.  It says that. |
| 10:52:43 | 4 | Q.  You're under oath, correct? |
| 10:52:45 | 5 | A.  Yes, I am. |
| 10:52:47 | 6 | Q.  And you were under oath and you had the responsibility to |
| 10:52:50 | 7 | tell the truth in this sworn proof of loss, didn't you? |
| 10:52:54 | 8 | A.  Yes. |
| 10:52:54 | 9 | Q.  So you were the telling the truth at the time when you said |
| 10:52:58 | 10 | that your cousin made the majority of the monthly payments on |
| 10:53:01 | 11 | this boat, weren't you? |
| | 12 | A.  Right.  There was only one monthly payment while we had the |
| | 13 | boat, which was that one.  I made the subsequent payments, |
| | 14 | every single one. |
| 10:53:04 | 15 | Q.  It doesn't say your cousin made the monthly payment, does |
| 10:53:10 | 16 | it? |
| 10:53:10 | 17 | A.  No. |
| 10:53:11 | 18 | Q.  It says that your cousin made the majority of the monthly |
| 10:53:16 | 19 | payments, correct, payments being plural? |
| 10:53:21 | 20 | A.  It says that. |
| 10:53:32 | 21 | Q.  You understood that you had an obligation to tell the truth |
| 10:53:35 | 22 | when you signed this sworn statement and sworn proof of loss, |
| 10:53:40 | 23 | correct? |
| 10:53:50 | 24 | A.  Yes. |
| 10:54:00 | 25 | Q.  With regard to the sworn proof of loss, you said you sent |

| | | |
|---|---|---|
| 10:54:05 | 1 | it to ACE, correct? |
| 10:54:07 | 2 | A.  Yes, this was sent to ACE. |
| 10:54:09 | 3 | Q.  This is what you were representing to ACE as to what |
| 10:54:12 | 4 | happened with the boat, correct? |
| 10:54:15 | 5 | A.  Yes. |
| 10:54:15 | 6 | Q.  In this sworn proof of loss, you indicated that the Coast |
| 10:54:18 | 7 | Guard advised you that it was their belief that this boat was |
| 10:54:23 | 8 | being used in human smuggling, correct? |
| 10:54:29 | 9 | A.  It was written in the sworn proof of loss the two theories |
| 10:54:33 | 10 | that they had. |
| 10:54:34 | 11 | The first theory was that it was stolen by Alexis |
| 10:54:39 | 12 | Suarez. |
| 10:54:39 | 13 | The second theory was based upon, I guess, that |
| 10:54:45 | 14 | article that the special agent was referring to, which was not |
| 10:54:49 | 15 | from this boat.  So I made sure I completed everything that |
| 10:54:54 | 16 | that they told me. |
| 10:54:55 | 17 | Q.  Do you understand that, under your policy, there is an |
| 10:54:59 | 18 | exclusion if your vessel is used in any illegal activity? |
| 10:55:03 | 19 | MR. LAURATO:  Objection, Your Honor, improper.  Legal |
| | 20 | conclusion. |
| 10:55:07 | 21 | THE COURT:  Overruled.  He's spoken about how he |
| 10:55:11 | 22 | viewed his interpretation of the contract.  It's his |
| 10:55:14 | 23 | interpretation.  The contract speaks for itself. |
| 10:55:17 | 24 | THE WITNESS:  No one ever knew what happened to the |
| 10:55:20 | 25 | boat, whether it was stolen or lost at sea.  No one knows what |

| | | |
|---|---|---|
| 10:55:25 | 1 | happened to the boat.  Not the Coast Guard, not the Miami-Dade |
| 10:55:29 | 2 | Police Department, not me.  We haven't been able to locate the |
| 10:55:35 | 3 | boat.  It's been about six or seven years now, and no one knows |
| 10:55:37 | 4 | where it is. |
| | 5 | BY MR. GREEN: |
| 10:55:39 | 6 | Q.   In this sworn proof of loss that you submitted to ACE, do |
| 10:55:39 | 7 | you or do you not represent that the Coast Guard told you that |
| 10:55:43 | 8 | the boat was used in illegal activity? |
| 10:55:46 | 9 | A.   The Coast Guard is assuming that it was used.  They don't |
| 10:55:54 | 10 | have the facts.  They did not disclose that in their report. |
| 10:55:55 | 11 | Q.   You don't know the details of the Coast Guard |
| 10:55:57 | 12 | investigation, do you? |
| 10:55:58 | 13 | A.   The Coast Guard told me to assume it was stolen and to |
| 10:56:01 | 14 | report it stolen.  After the fact, Detective Woods said that it |
| 10:56:08 | 15 | was possibly used in some type of trafficking. |
| 10:56:11 | 16 | Again, I don't know the report.  I don't know if they |
| 10:56:16 | 17 | found the boat, but I would think that if they did, they would |
| 10:56:21 | 18 | report it to ACE or turn it over. |
| 10:56:25 | 19 | Q.   You don't have any means to believe that the |
| 10:56:27 | 20 | representations made to you by Special Agent Woods were |
| 10:56:35 | 21 | incorrect? |
| 10:56:36 | 22 | A.   I can't speak for Agent Woods. |
| | 23 | Q.   On this particular subject, you acknowledge in the sworn |
| | 24 | proof of loss that the Coast Guard advised you that the boat |
| | 25 | was used in illegal activity, correct? |

| 10:56:44 | 1 | A.  They also advised me that it was stolen.  There are two |
| 10:56:44 | 2 | representations by the Coast Guard.  I included both of them to |
| 10:56:48 | 3 | make sure that everything was covered. |
| 10:56:50 | 4 | Q.  Respectfully, Mr. Gamez, I'm going to ask that you answer |
| 10:56:53 | 5 | my question, and then you may expound if you like. |
| 10:56:56 | 6 | A.  Sure. |
| 10:56:56 | 7 | Q.  In your sworn proof of loss, do you or do you not represent |
| 10:57:00 | 8 | that the Coast Guard told you that this vessel was used in |
| 10:57:03 | 9 | illegal activity? |
| 10:57:04 | 10 | A.  Yes, it says that. |
| 10:57:06 | 11 |      It also says that the Coast Guard told me it was |
| 10:57:11 | 12 | stolen. |
| 10:57:11 | 13 | Q.  Where does it say that the boat was stolen? |
| 10:57:15 | 14 | A.  You would have to look -- |
| 10:57:17 | 15 | Q.  You can look higher -- |
| 10:57:20 | 16 | A.  Looking at the top where it says time and origin of loss |
| 10:57:25 | 17 | caused, the full particulars of which are as follows:  "The |
| 10:57:30 | 18 | boat and trailer were loaned to Alexis Suarez to fish only.  I |
| 10:57:35 | 19 | never saw the boat or trailer again.  The U.S. Coast Guard was |
| 10:57:38 | 20 | notified on November 26th, 27th.  Within a couple of weeks, the |
| 10:57:43 | 21 | Coast Guard decided it was stolen.  Later, the U.S. Coast Guard |
| 10:57:46 | 22 | told me they suspected the boat was used to transport refugees |
| 10:57:52 | 23 | and lost at sea." |
| 10:57:54 | 24 | Q.  Was the boat given to Mr. Suarez with full permission? |
| 10:57:58 | 25 | A.  It was loaned to him by my cousin.  Yes, full permission. |

GAMEZ - Cross

| | | |
|---|---|---|
| 10:58:02 | 1 | Q.  Can you say that again? |
| 10:58:07 | 2 | A.  Yeah, it was loaned with full permission. |
| 10:58:09 | 3 | Q.  It was loaned by your cousin to Mr. Suarez with full |
| | 4 | permission, correct? |
| 10:58:16 | 5 | A.  That's correct. |
| 10:58:18 | 6 | Q.  Yesterday, you indicated it was your belief that this boat |
| 10:58:20 | 7 | could be loaned to anybody, correct? |
| 10:58:22 | 8 | A.  That was my belief. |
| 10:58:23 | 9 | Q.  That was your belief based upon your review of the policy, |
| 10:58:25 | 10 | correct? |
| 10:58:31 | 11 | A.  Yes. |
| 10:58:32 | 12 | Q.  I think you indicated that you read your entire policy, |
| | 13 | correct? |
| 10:58:38 | 14 | A.  I believe I did. |
| 10:58:39 | 15 | Q.  Yesterday, you testified that you read your entire policy; |
| | 16 | isn't that right? |
| 10:58:43 | 17 | A.  Yes, I believe I did. |
| 10:58:45 | 18 | Q.  Is that an "I believe so" or you read it? |
| 10:58:50 | 19 | A.  Yes. |
| 10:58:51 | 20 | Q.  Can you go to Joint Exhibit 1, please.  I'll ask the jury |
| 10:59:13 | 21 | -- just so the jury knows, this will be page 20 of Joint |
| 10:59:19 | 22 | Exhibit 1. |
| 10:59:41 | 23 |          Can you highlight the section that says "dishonest, |
| 10:59:46 | 24 | illegal." |
| 10:59:47 | 25 |          Mr. Gamez, have you arrived at the page? |

| | | |
|---|---|---|
| 10:59:51 | 1 | A.   Yes. |
| 10:59:51 | 2 | Q.   And you have it on your screen as well? |
| 10:59:54 | 3 | A.   Yes. |
| 10:59:55 | 4 | Q.   Can you read for the jury the section that begins |
| 10:59:58 | 5 | "dishonest, illegal, or intentional acts." |
| 11:00:02 | 6 | A.   "Dishonest, illegal, or intentional acts:  We do not pay |
| 11:00:08 | 7 | for loss or damage caused by the dishonest, illegal, or |
| 11:00:12 | 8 | intentional acts of any covered person or any person to whom |
| 11:00:17 | 9 | your insured property is entrusted, regardless of whether or |
| 11:00:21 | 10 | not such person is convicted of such an act by a criminal |
| 11:00:28 | 11 | Court." |
| 11:00:29 | 12 | Q.   What is your interpretation of that clause? |
| 11:00:32 | 13 | A.   That if there's a dishonest, illegal, or intentional act, |
| 11:00:33 | 14 | the policy will not cover a loss. |
| 11:00:35 | 15 | Q.   That's based upon your review of the document? |
| 11:00:37 | 16 | A.   I'm not an insurance expert.  Like I said yesterday, I |
| 11:00:42 | 17 | don't work for ACE.  I'm not an underwriter.  That's my |
| | 18 | interpretation. |
| 11:00:45 | 19 | Q.   That's your interpretation, and we've established that |
| 11:00:48 | 20 | you're not an insurance expert, but you also have given |
| 11:00:52 | 21 | testimony in this case based on your review of this particular |
| 11:00:55 | 22 | document, haven't you? |
| 11:00:56 | 23 | A.   Yes, I have. |
| 11:00:56 | 24 | Q.   And you've given your interpretation of the fairness |
| | 25 | provision in this contract based upon your interpretation of |

|  |  |  |
|---|---|---|
| | 1 | the same, correct? |
| 11:01:03 | 2 | A.  Yes, my own interpretation. |
| 11:01:06 | 3 | Q.  Yesterday, you didn't capitulate at all with regard to your |
| 11:01:10 | 4 | understanding of the policy, yet you do so today.  Can you tell |
| 11:01:15 | 5 | me why? |
| 11:01:16 | 6 | A.  I don't understand the question. |
| 11:01:18 | 7 | Q.  I can reask it. |
| 11:01:19 | 8 | Yesterday, you seemed very certain as to your |
| 11:01:23 | 9 | understanding of the fairness provision that your counsel asked |
| 11:01:24 | 10 | you to review. |
| 11:01:26 | 11 | I'm asking why you're expressing doubt as to what this |
| 11:01:31 | 12 | particular provision is today? |
| 11:01:32 | 13 | A.  I didn't express doubt. |
| 11:01:35 | 14 | Q.  You understand that this provision would exclude coverage |
| 11:01:42 | 15 | in the event that this vessel was used in a dishonest, illegal, |
| 11:01:42 | 16 | or intentional act by a covered person? |
| 11:01:45 | 17 | A.  Yes.  To clarify, it was not used in any illegal, |
| 11:01:50 | 18 | dishonest, or intentional act. |
| 11:01:54 | 19 | Q.  You don't know that, do you? |
| 11:01:55 | 20 | A.  No one does. |
| 11:01:57 | 21 | Q.  No one does? |
| | 22 | A.  Correct. |
| | 23 | Q.  The last piece of information that the Coast Guard told you |
| 11:01:57 | 24 | as to the various, as you call it, theories -- |
| 11:01:59 | 25 | MR. LAURATO:  Objection, hearsay. |

| | | |
|---|---|---|
| 11:02:01 | 1 | THE COURT:  Sustained. |
| 11:02:02 | 2 | BY MR. GREEN: |
| 11:02:02 | 3 | Q.  In the sworn proof of loss, you indicated that the Coast |
| 11:02:03 | 4 | Guard advised you that this boat was used in illegal activity, |
| 11:02:07 | 5 | correct? |
| 11:02:08 | 6 | MR. LAURATO:  Objection, hearsay. |
| 11:02:10 | 7 | THE COURT:  Sustained. |
| 11:02:11 | 8 | BY MR. GREEN: |
| 11:02:11 | 9 | Q.  In your sworn proof of loss, didn't you state that the |
| 11:02:15 | 10 | Coast Guard advised you that it was their belief that this boat |
| 11:02:18 | 11 | was used in illegal activity? |
| 11:02:20 | 12 | MR. LAURATO:  Objection, hearsay. |
| 11:02:23 | 13 | THE COURT:  We've gone over that fact that that's what |
| 11:02:25 | 14 | he put in the report. |
| 11:02:28 | 15 | BY MR. GREEN: |
| 11:02:28 | 16 | Q.  Mr. Gamez, will you read the section starting with |
| 11:02:34 | 17 | "concealment, misrepresentation, or fraud" for me, please. |
| 11:02:37 | 18 | A.  "Concealment, misrepresentation, or fraud:  All coverage |
| 11:02:41 | 19 | provided by us will be voided from the beginning of the policy |
| 11:02:45 | 20 | period if you intentionally conceal or misrepresent any |
| 11:02:50 | 21 | material fact or circumstance relating to this contract of |
| 11:02:54 | 22 | insurance or the application for such insurance whether before |
| 11:02:59 | 23 | or after a loss." |
| 11:03:01 | 24 | Q.  When you reviewed the policy, did you review this |
| 11:03:04 | 25 | particular section of the policy? |

November 12, 2013

11:03:06    1    A.   Yes, I read the whole policy.

11:03:08    2    Q.   Based upon your reading of the policy, what's your

11:03:11    3    interpretation of this particular language that you just read

11:03:14    4    to the jury?

11:03:15    5    A.   This means that the insurance company will void the policy

11:03:19    6    if a person intentionally conceals or intentionally

11:03:24    7    misrepresents material facts or circumstances related to the

11:03:29    8    contract of insurance or application before or after the loss.

11:03:34    9    Q.   With regard to that, this particular provision also relates

11:03:38   10    to the application of insurance, correct?

11:03:40   11    A.   Yes, it does.  I never intentionally misrepresented

11:03:44   12    anything.

11:03:45   13    Q.   You didn't fill out the application though, did you?

11:03:48   14    A.   No, I did not.

11:03:50   15    Q.   You didn't actually review it before you signed it, did

11:03:53   16    you?

11:03:53   17    A.   I reviewed it before it was sent.

11:03:56   18    Q.   Did you review it before you signed it?

11:03:59   19         MR. LAURATO:  Objection, this is cumulative, Your

11:04:02   20    Honor.

11:04:02   21         THE COURT:  I'm going to let him ask this question,

11:04:05   22    and then he's going to move to a new area.

           23         THE WITNESS:  Can you repeat the question.

           24    BY MR. GREEN:

           25    Q.   Did you review this before you signed it?

| | | |
|---|---|---|
| 11:04:08 | 1 | A.  Not before I signed it.  I reviewed it before it was sent |
| 11:04:24 | 2 | out. |
| 11:04:42 | 3 | MR. GREEN:  Your Honor, this is all the questions that |
| 11:04:45 | 4 | I have of Mr. Gamez. |
| 11:04:56 | 5 | THE COURT:  Let's take our morning break.  Please do |
| 11:04:59 | 6 | not talk about the case, and don't let anybody talk to you |
| 11:05:04 | 7 | about the case.  Please keep an open mind.  We'll see you back |
| 11:05:09 | 8 | at 11:20. |
| | 9 | [The jury leaves the courtroom at 11:05 a.m.] |
| 11:05:31 | 10 | THE COURT:  Mr. Gamez, my earlier instruction, you |
| 11:05:35 | 11 | can't talk to anyone about your testimony or let anyone talk to |
| 11:05:38 | 12 | you about your testimony until you're finished, okay? |
| 11:05:42 | 13 | THE WITNESS:  Yes. |
| 11:05:44 | 14 | THE COURT:  Thank you. |
| 11:05:45 | 15 | If you will all be back here at 19 after, then we can |
| 11:05:50 | 16 | start promptly with the jury at 20 after. |
| 11:06:15 | 17 | Mr. Laurato, one of the jurors has asked if she can |
| 11:06:20 | 18 | have a calendar of the year 2007. |
| 11:06:22 | 19 | MR. LAURATO:  I don't have any objection, Your Honor. |
| 11:06:26 | 20 | MR. GREEN:  No objection, Your Honor. |
| 11:06:28 | 21 | THE COURT:  We'll see if we can find one on the |
| 11:06:32 | 22 | Internet.  We will show it to you and make copies for every |
| 11:06:38 | 23 | juror. |
| 11:06:38 | 24 | MR. LAURATO:  Maybe we can stipulate to it as another |
| 11:06:43 | 25 | exhibit. |

| | | |
|---|---|---|
| 11:06:43 | 1 | THE COURT:  Sounds like a plan. |
| | 2 | [There was a short recess]. |
| 11:20:55 | 3 | THE COURT:  We're going to make this calendar an |
| 11:20:59 | 4 | exhibit or a demonstrative aid? |
| 11:21:03 | 5 | MR. LAURATO:  Judge, if the jury is going to take it |
| 11:21:06 | 6 | back with them, we have to make it an exhibit.  So we'll make |
| 11:21:12 | 7 | it a joint exhibit, Your Honor. |
| 11:21:16 | 8 | THE COURT:  Okay.  Let's bring in the jury. |
| 11:21:38 | 9 | Mr. Gamez, you may go ahead and take a seat since you |
| 11:21:52 | 10 | are on redirect. |
| | 11 | [The jury returns to the courtroom at 11:24 a.m.] |
| 11:22:40 | 12 | THE COURT:  Welcome back, members of the jury.  Please |
| 11:22:43 | 13 | have a seat. |
| 11:22:44 | 14 | The parties have an additional joint exhibit, Joint |
| 11:22:48 | 15 | Exhibit 24, which is a calendar for the years 2007 and 2008. |
| 11:23:03 | 16 | Our Court Security Officer is handing out those two pages, |
| 11:23:08 | 17 | which is Joint Exhibit 24.  There is a little pocket in your |
| 11:23:15 | 18 | notebooks where you can stick it since we don't have a tab for |
| 11:23:20 | 19 | it. |
| 11:23:21 | 20 | At this time, Mr. Laurato is going to do redirect |
| 11:23:34 | 21 | examination. |
| 11:23:35 | 22 | MR. LAURATO:  Your Honor, I don't have any redirect, |
| 11:23:40 | 23 | pending any questions from the jury. |
| 11:23:47 | 24 | THE COURT:  Mr. Gamez, you may step down.  Thank you |
| 11:23:50 | 25 | very much. |

| | | |
|---|---|---|
| 11:23:51 | 1 | Remember the procedure that I outlined yesterday, if |
| 11:23:55 | 2 | you have any questions that you would like to direct to -- can |
| 11:24:00 | 3 | you please give your cell phone to the Court Security Officer. |
| 11:24:06 | 4 | A JUROR:  I'm so sorry.  I turned it on during the |
| 11:24:13 | 5 | break, and I forgot to turn it off. |
| 11:24:24 | 6 | THE COURT:  If anyone has a question, if you would |
| 11:24:24 | 7 | please write it out.  If I had known that there was going to be |
| 11:24:26 | 8 | no redirect, I would have asked you to think about it over our |
| 11:24:32 | 9 | break, but we will take a couple minutes now. |
| 11:24:37 | 10 | If there are any questions that you would like to |
| 11:24:40 | 11 | direct to the witness, please fill it out and give it to our |
| 11:24:46 | 12 | Court Security Officer, and counsel will come up so we can take |
| 11:24:54 | 13 | a look at the questions.  You don't have to ask a question if |
| 11:25:39 | 14 | you don't want to. |
| 11:26:36 | 15 | Is anyone else going to write a question? |
| 11:26:44 | 16 | A JUROR:  Yes. |
| 11:26:46 | 17 | THE COURT:  While Mr. Naya is finishing his question, |
| 11:26:50 | 18 | why don't you come up with the question side-bar. |
| | 19 | [Proceedings at sidebar follow]: |
| 11:27:08 | 20 | THE COURT:  "As the owner of the boat, did you give |
| 11:27:12 | 21 | permission to Mr. Suarez to use the boat?" |
| 11:27:23 | 22 | MR. GREEN:  No objection. |
| 11:27:26 | 23 | MR. LAURATO:  No objection.  That's an excellent |
| 11:28:54 | 24 | question. |
| 11:28:54 | 25 | THE COURT:  "How familiar is Mr. Suarez to Mr. Alfredo |

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | Hassun?"                                                     |
| 11:29:04 | 2  | MR. LAURATO:  I don't have any objection to the           |
| 11:29:08 | 3  | question, if he knows.                                     |
| 11:29:13 | 4  | THE COURT:  There's one more question.  "Joint Exhibit    |
| 11:29:25 | 5  | 2, whose account number paid for insurance coverage?"     |
| 11:29:29 | 6  | MR. LAURATO:  No objection to that.                        |
| 11:29:32 | 7  | MR. GREEN:  No objection.                                  |
| 11:29:45 | 8  | THE COURT:  I think you may want to come back.  I can      |
| 11:29:49 | 9  | tell there is another question pending.                    |
|        | 10 | [Proceedings in open court follow]:                        |
| 11:29:52 | 11 | THE COURT:  While Mr. Naya is writing out his             |
| 11:29:57 | 12 | question, what I just showed counsel is a little squeeze doll |
| 11:30:05 | 13 | that my sister, who is a PhD, gives to her graduate students |
| 11:30:13 | 14 | that are getting ready to do their dissertation.           |
| 11:30:24 | 15 | As you can imagine, in 15 years of being on the bench,    |
| 11:30:30 | 16 | I have had the experience of counsel coming up at side-bar, and |
| 11:30:35 | 17 | they are so intense that sometimes it's very helpful to break |
| 11:30:39 | 18 | the tension and help them laugh.  I just showed it to counsel |
| 11:30:44 | 19 | because they wondered what it was.                         |
|        | 20 | [Proceedings at sidebar follow]:                           |
| 11:30:59 | 21 | MR. LAURATO:  After the jurors' questions have been       |
| 11:30:59 | 22 | asked and answered, will we have an opportunity to ask     |
| 11:31:01 | 23 | follow-up questions?                                        |
| 11:31:03 | 24 | THE COURT:  Yes, both of you will.                         |
| 11:31:08 | 25 | "Mr. Gamez, you stated, I lent to Mr. Alex Suarez,        |

| | | |
|---|---|---|
| 11:31:16 | 1 | refer to audio number 7, line 25.  Can you clarify?" |
| 11:31:23 | 2 | MR. LAURATO:  I don't have any objection. |
| 11:31:31 | 3 | THE COURT:  "You stated that the boat had super |
| 11:31:35 | 4 | charged engines with fast acceleration, dollar sign 38,000, for |
| 11:31:42 | 5 | fishing within 12 miles.  Is this a necessary expense?" |
| 11:31:48 | 6 | "Do boats have a location device like ships and |
| 11:31:53 | 7 | planes?" |
| 11:31:54 | 8 | "Miles per gallon, the boat, how far can you go with |
| 11:32:04 | 9 | 250-gallon tank?  Should tanks be kept full or "closed?" |
| 11:32:10 | 10 | "Do you have a picture of the boat?" |
| 11:32:14 | 11 | "The loan document showed $100,000 loan and $18,000. |
| 11:32:28 | 12 | Is this connected normal?" |
| 11:32:29 | 13 | MR. GREEN:  The loan documents indicate that he had an |
| 11:32:32 | 14 | income of $18,000, yet still he's buying a $100,000 boat. |
| 11:32:58 | 15 | MR. LAURATO:  I think maybe we ought to have the juror |
| 11:33:03 | 16 | clarify that particular question.  As it's stated, I don't see |
| 11:33:09 | 17 | how it can be answered or understood. |
| 11:33:18 | 18 | THE COURT:  Which document? |
| 11:33:20 | 19 | MR. GREEN:  It's the Essex Credit document, Your |
| 11:33:26 | 20 | Honor. |
| 11:33:42 | 21 | MR. GREEN:  I think it's Plaintiff Exhibit 2. |
| 11:33:46 | 22 | MR. LAURATO:  What was the question? |
| 11:33:50 | 23 | THE COURT:  The loan document showed -- so it's |
| 11:33:55 | 24 | Plaintiff's Exhibit 1. |
| 11:34:36 | 25 | MR. LAURATO:  What is the question, Your Honor?  What |

| | | |
|---|---|---|
| 11:34:40 | 1 | is the question? |
| 11:34:42 | 2 | THE COURT:  "Loan document showed $100,000 for loan |
| 11:34:47 | 3 | and $18,000.  Is this connected normal?" |
| 11:34:56 | 4 | MR. LAURATO:  I don't know if the question is even |
| 11:34:58 | 5 | referring to that because the boat was purchased, I want to |
| 11:35:02 | 6 | say, for $118,000 and change, plus sales tax.  He put down |
| 11:35:16 | 7 | $11,000. |
| 11:35:28 | 8 | I don't think that's the question.  I would object to |
| 11:35:32 | 9 | that question and ask the juror if they can restate it. |
| 11:35:37 | 10 | THE COURT:  Let me ask the other questions first and |
| 11:35:40 | 11 | leave that one for last. |
| | 12 | [Proceedings in open court follow]: |
| 11:36:00 | 13 | BY THE COURT: |
| 11:36:00 | 14 | Q.  Mr. Gamez, how familiar is Mr. Suarez with Mr. Alfredo |
| 11:36:08 | 15 | Hassun?  How did they know each other? |
| 11:36:11 | 16 | A.  He used to do some type of handy work for him, from what he |
| 11:36:16 | 17 | told me.  I'm not sure exactly the nature of the work.  I know |
| 11:36:20 | 18 | that he would assist with the waxing of the boat as well.  I'm |
| 11:36:26 | 19 | not sure of the details of the handy work that he would assist |
| 11:36:31 | 20 | him with. |
| 11:36:32 | 21 | Q.  How long did they know each other? |
| 11:36:34 | 22 | A.  I'm not sure. |
| 11:36:37 | 23 | Q.  Did you ever ask? |
| 11:36:39 | 24 | A.  I believe I did.  I have no personal knowledge of how long |
| 11:36:43 | 25 | they knew each other. |

| | | |
|---|---|---|
| 11:36:44 | 1 | Q.  What did Mr. Hassun tell you? |
| 11:36:48 | 2 | A.  I believe he told me a few months, but I don't remember |
| 11:36:52 | 3 | exactly. |
| 11:36:53 | 4 | Q.  As the owner of the boat, did you give permission to |
| 11:36:58 | 5 | Mr. Suarez to use the boat? |
| 11:36:59 | 6 | A.  No, I gave permission to my cousin to use the boat.  He was |
| 11:37:04 | 7 | supposed to go out on the boat that day with Mr. Suarez. |
| 11:37:11 | 8 | Q.  You said that you don't know Mr. Suarez, but you state, "I |
| 11:37:17 | 9 | lent to Mr. Alex Suarez," on line 25 of the audio that is |
| 11:37:27 | 10 | Exhibit 15 and the audio transcript 7, line 25. |
| 11:37:35 | 11 | Can you clarify? |
| 11:37:38 | 12 | A.  Where is it exactly so I can take a quick look? |
| 11:37:43 | 13 | Q.  Defendant's Exhibit 7. |
| 11:37:58 | 14 | A.  Which page number? |
| 11:38:02 | 15 | Q.  I'm not quite sure of the page number.  Defendant's Exhibit |
| 11:38:04 | 16 | 7, line 25. |
| 11:38:07 | 17 | Can counsel help which page. |
| 11:38:40 | 18 | A.  I'm sorry, I don't see it. |
| 11:38:42 | 19 | THE COURT:  The juror who asked the question, can they |
| 11:38:46 | 20 | help us out, which page? |
| 11:38:49 | 21 | A JUROR:  24. |
| 11:38:56 | 22 | THE COURT:  24, line 25. |
| 11:38:58 | 23 | THE WITNESS:  So I would backtrack to line 23 where it |
| 11:39:12 | 24 | states, "Mr. Walker, well, who is this friend?  Nobody can tell |
| 11:39:16 | 25 | us who this friend is." |

GAMEZ - Cross

60

| | | |
|---|---|---|
| 11:39:19 | 1 | I was answering who the friend was.  Alexis Suarez is |
| 11:39:23 | 2 | the person that it says that I lent the boat to.  It may have |
| 11:39:28 | 3 | been mistranscribed who the person that the boat was lent to. |
| 11:39:44 | 4 | I'm not sure if the audio says I lent -- I didn't |
| 11:39:49 | 5 | really catch that on there, but as far as the transcript is |
| 11:39:53 | 6 | concerned, he's asking me who is the friend, and I'm answering |
| 11:39:58 | 7 | that Alexis Suarez is -- |
| 11:40:01 | 8 | THE COURT:  Would you like us to play that portion |
| 11:40:04 | 9 | again so we can see whether or not you said -- |
| 11:40:08 | 10 | MS. LO PRESTI:  Yes, Your Honor, just give us one |
| 11:40:12 | 11 | second. |
| 11:40:14 | 12 | THE COURT:  Line it up on page 24 and start it about |
| 11:40:22 | 13 | line 16, but we need to play the audio as well. |
| 11:40:47 | 14 | Javier, are you looking for it? |
| 11:41:00 | 15 | JAVIER:  Yes, yes. |
| 11:41:59 | 16 | [Recording was played]. |
| 11:42:19 | 17 | THE COURT:  Javier, where are you starting?  Javier, I |
| 11:42:24 | 18 | asked you to go to page 24.  That would correlate with the |
| 11:42:28 | 19 | whole recording. |
| 11:42:31 | 20 | JAVIER:  I was on page 24.  If you look at the time -- |
| 11:42:41 | 21 | A JUROR:  I think you're on the wrong exhibit. |
| 11:42:44 | 22 | THE COURT:  Are you on Exhibit 7? |
| 11:42:47 | 23 | JAVIER:  Yes, I am. |
| 11:42:49 | 24 | MR. LAURATO:  I think it's Exhibit 8. |
| 11:42:53 | 25 | THE COURT:  I'm looking at Number 7, page 24, line 25, |

| | | |
|---|---|---|
| 11:42:58 | 1 | and that matches up with the juror's question. |
| 11:43:04 | 2 | MS. LO PRESTI:  We should be starting at line 16. |
| 11:43:10 | 3 | THE COURT:  Yes.  Do you want to start at line 8, but |
| 11:43:29 | 4 | that's Mr. Walker talking, and we're not interested with |
| 11:43:34 | 5 | Mr. Walker. |
| 11:44:08 | 6 | MR. LAURATO:  It's page 24 down at the end.  So go to |
| 11:44:17 | 7 | line 17 maybe. |
| 11:44:38 | 8 | THE COURT:  I think you all may be on the wrong |
| 11:44:42 | 9 | exhibit. |
| 11:44:43 | 10 | THE WITNESS:  No, they're on the right exhibit. |
| 11:44:48 | 11 | They're just on page 23.  They need to go to 25. |
| 11:45:21 | 12 | THE COURT:  Okay, here's where we start. |
| 11:45:29 | 13 | [Recording was played.] |
| 11:46:03 | 14 | THE COURT:  Do the jurors want us to play that portion |
| 11:46:06 | 15 | again? |
| 11:46:11 | 16 | THE WITNESS:  Yes, it sounds like I said that.  I was |
| 11:46:15 | 17 | trying to give the Coast Guard the name of the person, which is |
| 11:46:19 | 18 | what the question was.  However, I lent it to my cousin, and I |
| 11:46:25 | 19 | gave him permission to use the full use of the boat.  If I |
| 11:46:31 | 20 | wanted to have lent it Alexis Suarez, it would have been |
| 11:46:41 | 21 | covered. |
| 11:46:42 | 22 | THE COURT:  So you're saying that you said that to the |
| 11:46:45 | 23 | Coast Guard? |
| 11:46:46 | 24 | THE WITNESS:  It sounds like my voice, yeah. |
| 11:46:53 | 25 | THE COURT:  I have one other question that I need to |

| | | |
|---|---|---|
| 11:46:56 | 1 | show counsel. |
| | 2 | [Proceedings at sidebar follow]: |
| 11:47:14 | 3 | THE COURT:  "Would Mr. Suarez be considered an |
| 11:47:24 | 4 | employee?" |
| 11:47:25 | 5 | MR. LAURATO:  No problem. |
| | 6 | [Proceedings in open court follow]: |
| 11:47:32 | 7 | BY THE COURT: |
| 11:47:32 | 8 | Q.  Mr. Gamez, Mr. Suarez, since you said that he was hired to |
| 11:47:37 | 9 | do the cleaning of the boat, would Mr. Suarez be considered an |
| 11:47:43 | 10 | employee? |
| 11:47:50 | 11 | A.  I'm not sure if he was an actual employee.  He was on |
| 11:47:54 | 12 | payroll, but he did do work for him.  If it was translated as |
| 11:48:06 | 13 | an employee of a boat yard or a marina, no, he's not an |
| 11:48:12 | 14 | employee of a boat yard or a marina, which is excluded under |
| 11:48:16 | 15 | the policy. |
| 11:48:18 | 16 | Q.  On Joint Exhibit 2, if you look at Joint Exhibit Number 2 |
| 11:48:24 | 17 | in the book, whose account number paid for the insurance |
| 11:48:33 | 18 | coverage? |
| 11:48:48 | 19 | A.  Yes, my cousin made the payment from his account.  I |
| 11:48:53 | 20 | believe he made also a check payment to the insurance company |
| 11:48:57 | 21 | as well. |
| 11:49:07 | 22 | Q.  You stated that the boat had super charged engines with |
| 11:49:14 | 23 | fast acceleration for which you paid $38,000 for fishing within |
| 11:49:22 | 24 | the 12-mile limit.  Is this a necessary expense? |
| 11:49:27 | 25 | A.  Boat engines cost approximately between 20 to $40,000 each. |

| | | |
|---|---|---|
| 11:49:34 | 1 | That is an average price.  A 275 horsepower engine would be in |
| 11:49:41 | 2 | the mid range.  Engines go up to 450 horsepower each, so it's |
| | 3 | about half of what the maximum outboard power could have been, |
| 11:49:52 | 4 | if you go over 1,000, 2,000 horse power. |
| 11:49:58 | 5 | Q.  Do boats have a location device like ships and planes? |
| 11:50:04 | 6 | A.  Yes, it would ordinarily have a GPS.  Unfortunately, I had |
| 11:50:11 | 7 | commented earlier that we were looking for the 2008 model, so |
| 11:50:16 | 8 | we were waiting for it to come out, for the dealer to install |
| 11:50:20 | 9 | it.  We were just waiting for that.  It wasn't on the boat, |
| 11:50:24 | 10 | unfortunately, when it was out.  We would have been able to |
| 11:50:30 | 11 | locate it instantly, basically. |
| 11:50:32 | 12 | Q.  The miles per gallon of your boat, how far can you go on a |
| 11:50:39 | 13 | 250-gallon tank? |
| 11:50:40 | 14 | A.  In boating terms, we don't use miles per gallon.  We use |
| 11:50:45 | 15 | gallons per hour.  If you want to convert to miles per gallon, |
| 11:50:52 | 16 | we're talking about roughly, per engine, one mile per gallon. |
| 11:51:03 | 17 | So you're talking close to a 250-mile range. |
| 11:51:10 | 18 | Q.  Do you have a picture of the boat? |
| 11:51:12 | 19 | A.  I wish I did. |
| 11:51:17 | 20 | Your Honor, if you would let them see it on the |
| 11:51:20 | 21 | Internet -- |
| 11:51:22 | 22 | Q.  You don't have a picture of the boat? |
| 11:51:24 | 23 | A.  I don't have a picture of the boat, I'm sorry. |
| 11:51:28 | 24 | Q.  The loan documents, which are Plaintiff's Exhibit 1, and I |
| 11:51:39 | 25 | may need to have some assistance, Mr. Naya, as to this last |

| 11:51:46 | 1 | question. |
| 11:51:46 | 2 | It says, "Loan documents showed $100,000 loan and |
| 11:51:55 | 3 | $18,000." So if Mr. Gamez would turn to Plaintiff's Exhibit 1. |
| 11:52:08 | 4 | A JUROR: Page 4. Plaintiff's Exhibit 1, page 4. It |
| 11:52:42 | 5 | says Plaintiff's Exhibit 1, page 3 of 4, it says at the top. |
| 11:52:51 | 6 | THE COURT: And there it has income source, salary, |
| 11:52:56 | 7 | income amount $18,000. |
| 11:53:03 | 8 | THE WITNESS: May I approach, Your Honor? I can't |
| 11:53:05 | 9 | find it. |
| 11:53:07 | 10 | THE COURT: Okay, let me give it to you. |
| 11:53:13 | 11 | MR. LAURATO: Your Honor, I believe it's page 3. He |
| 11:53:18 | 12 | may not have those exhibits in his book. He doesn't have the |
| 11:53:25 | 13 | plaintiff's exhibits, so I will give him my book. |
| 11:53:49 | 14 | MS. LO PRESTI: I had three complete binders that I |
| 11:53:53 | 15 | gave Linda. I don't know what happened to the third one. |
| 11:53:57 | 16 | THE COURT: Okay. |
| 11:53:59 | 17 | THE WITNESS: What was the question? |
| 11:54:02 | 18 | BY THE COURT: |
| 11:54:02 | 19 | Q. The loan documents show that it's a $100,000 loan, yet if |
| 11:54:07 | 20 | you look at the salary line there, the source of income, it |
| 11:54:12 | 21 | says $18,000. |
| 11:54:16 | 22 | A. That seems to be a typo. It should be $180,000. I don't |
| 11:54:24 | 23 | think I would ever get approved for that loan with that type of |
| 11:54:29 | 24 | an income. |
| 11:54:31 | 25 | Q. Was that your salary? |

| 11:54:34 | 1 | A. That year, possibly, yes. |

11:54:34    1    A.  That year, possibly, yes.

11:54:40    2    Q.  So your salary working for the V.A. is $180,000?

11:54:46    3    A.  No, no, that was from one of my real estate corporations.

11:54:56    4            MR. LAURATO:  Your Honor, I have no follow-up.

11:55:00    5            THE COURT:  Any follow up questions, Mr. Green?

11:55:03    6            MR. GREEN:  Yes, Your Honor, actually I do.  I'm not

11:55:38    7    going to question him about the documents that he just

11:55:41    8    reviewed.  I have follow-up questions related to one of the

11:55:46    9    questions that was asked by the jury.

11:55:49   10            THE COURT:  Certainly.

11:55:50   11    BY MR. GREEN:

11:55:50   12    Q.  Mr. Gamez, you attended Mr. Hassun's deposition in this

11:55:55   13    case, correct?

11:55:56   14    A.  I wasn't present, but I was in the office.

11:55:59   15    Q.  Were you in the room?

11:56:01   16    A.  I don't recall if I was in the room when you were asking

11:56:05   17    the questions, no.

11:56:08   18    Q.  Give me a moment.

11:56:09   19            MR. LAURATO:  I would object to the relevance of this,

11:56:12   20    and also, it seems to not be connected to any of the questions

11:56:17   21    that the jury asked.

11:56:19   22            MR. GREEN:  It is.  The question was asked by the jury

11:56:24   23    as to how long Mr. Hassun knew Mr. Suarez.  Am I correct on

11:56:33   24    that?

11:56:35   25            THE COURT:  That was one of my follow-ups to the

| | | |
|---|---|---|
| 11:56:40 | 1 | juror's question about how familiar Mr. Suarez is to |
| 11:56:46 | 2 | Mr. Alfredo Hassun. |
| 11:56:46 | 3 | MR. GREEN:  I believe Mr. Gamez attended the |
| 11:56:49 | 4 | deposition where Mr. Hassun references how long he knew him. |
| 11:56:52 | 5 | THE COURT:  Let's see on the cover sheet whether or |
| 11:56:55 | 6 | not it will reflect who was present during the course of the |
| 11:56:59 | 7 | deposition.  If he was not there, the question is irrelevant. |
| 11:57:05 | 8 | Show Mr. Laurato. |
| 11:57:07 | 9 | MR. LAURATO:  Judge, I would still object to him |
| 11:57:10 | 10 | asking what Mr. Hassun said during his deposition.  I don't |
| 11:57:15 | 11 | understand how that is relevant.  He has answered the question. |
| 11:57:18 | 12 | If they have contrary evidence -- |
| 11:57:21 | 13 | THE COURT:  I'm going to let him ask this question as |
| 11:57:24 | 14 | to whether or not it refreshes his recollection as to whether |
| 11:57:28 | 15 | or not he was present during the deposition of Mr. Hassun. |
| 11:57:33 | 16 | MR. GREEN:  Do you mind if I approach, Your Honor? |
| 11:57:36 | 17 | THE COURT:  Did you show that to Mr. Laurato? |
| 11:57:40 | 18 | MR. GREEN:  I sure did. |
| 11:57:47 | 19 | THE COURT:  Do you want to show him the cover page of |
| 11:57:51 | 20 | the deposition so he can see that? |
| 11:57:53 | 21 | MR. GREEN:  Sure. |
| 11:58:01 | 22 | THE COURT:  When was that deposition taken? |
| 11:58:03 | 23 | MR. GREEN:  August 2nd, 2012. |
| 11:58:08 | 24 | THE COURT:  August 2nd of 2012? |
| 11:58:13 | 25 | MR. GREEN:  Yes, Your Honor. |

| | | |
|---|---|---|
| 11:58:15 | 1 | BY MR. GREEN: |
| 11:58:15 | 2 | Q.   The document that I just showed you, does it refresh your |
| 11:58:19 | 3 | recollection as to whether you were at Mr. Hassun's deposition |
| 11:58:22 | 4 | on August 2nd, 2012? |
| 11:58:24 | 5 | A.   Yes, I recall I was in your office.  I don't recall if I |
| 11:58:28 | 6 | was actually in the deposition. |
| 11:58:29 | 7 | Q.   Do you recall any testimony Mr. Hassun may have given us |
| 11:58:32 | 8 | regarding how long he knew Mr. Suarez before he loaned the |
| 11:58:37 | 9 | boat? |
| 11:58:37 | 10 | MR. LAURATO:  Judge, objection, relevance. |
| 11:58:40 | 11 | THE COURT:  He can answer if he recalls. |
| 11:58:49 | 12 | THE WITNESS:  I don't recall. |
| | 13 | THE COURT:  You may step down, Mr. Gamez. |
| | 14 | Your next witness? |
| 11:58:52 | 15 | A JUROR:  Your Honor, I'm sorry, I did have one more |
| 11:58:55 | 16 | question that I didn't think of. |
| 11:58:58 | 17 | THE COURT:  Okay.  Give it to the Court Security |
| 11:59:00 | 18 | Officer, and counsel will step up.  I appreciate it. |
| | 19 | [Proceedings at sidebar follow]: |
| 11:59:25 | 20 | THE COURT:  "Plaintiff's Exhibit 4, page 10.  Bank |
| 11:59:48 | 21 | statements."  Thank you for putting the numbers at the bottom, |
| 11:59:52 | 22 | counsel.  I appreciate that. |
| 12:00:02 | 23 | "On bank statements, sometimes there were two payments |
| 12:00:12 | 24 | combined.  The amount is $1,626.39 on page 10.  $1,665 on page |
| 12:00:26 | 25 | 11.  $1,626 on page 12; $1,1626 on page 17, but seven times 93 |

GAMEZ - Cross

| | | |
|---|---|---|
| 12:00:41 | 1 | -- two times seven equals 1,586.  So subtracting $1,586 from |
| 12:00:55 | 2 | $1,626 is $40.  Why the extra $40? |
| 12:01:01 | 3 | MR. LAURATO:  I don't have an objection. |
| 12:01:05 | 4 | THE COURT:  "What does the account number refer to on |
| 12:01:07 | 5 | the bank statement associated with the payments?  What account |
| 12:01:13 | 6 | -- with whom is the account number 59112014492 associated |
| | 7 | with?" |
| 12:01:24 | 8 | MR. LAURATO:  No objection. |
| 12:01:25 | 9 | MR. GREEN:  No objection. |
| | 10 | [Proceedings in open court follow]: |
| 12:01:41 | 11 | BY THE COURT: |
| 12:01:41 | 12 | Q.  Mr. Gamez, hopefully you now have the plaintiff's exhibits |
| 12:01:45 | 13 | in your exhibit book. |
| 12:01:46 | 14 | A.  Yes, I do. |
| 12:01:47 | 15 | Q.  Please turn to Plaintiff's Exhibit 4 and go to page 10. |
| 12:02:20 | 16 | There is an item of 12/05 that is circled in the amount of |
| 12:02:28 | 17 | $1,626.39.  I believe your testimony was -- or on the bank |
| 12:02:40 | 18 | statement sometimes there were two payments combined, and the |
| 12:02:43 | 19 | amount is $1,626.39. |
| 12:02:48 | 20 | If you turn to page 11, the next page, you'll see the |
| 12:02:54 | 21 | circled amount for the date 2/25 is $1,665.42.  Excuse me. |
| 12:03:13 | 22 | Wait, wait, wait, wait. |
| 12:03:16 | 23 | Then, on page 12, the amount that is circled for May |
| 12:03:23 | 24 | '06 is $1,626.39. |
| 12:03:28 | 25 | Then, on page 17, there is a circled amount that is |

| | | |
|---|---|---|
| 12:03:40 | 1 | 10/22, and that amount is $1,626.39. |
| 12:03:50 | 2 | If you multiply the monthly payments of $793 times |
| 12:03:56 | 3 | two, the amount is $1,586.  If you subtract the $1,586 from the |
| 12:04:08 | 4 | $1,626, there's a $40 difference. |
| 12:04:14 | 5 | Why was the payment for a greater amount than double |
| 12:04:19 | 6 | the amount of the payment due? |
| 12:04:23 | 7 | A.  I'm thinking, because I'm looking at the dates, December |
| 12:04:27 | 8 | has 31 days.  February has -- |
| 12:04:31 | 9 | Q.  Don't speculate.  You can't speculate. |
| 12:04:35 | 10 | Why did you pay more? |
| 12:04:39 | 11 | A.  I'm not sure. |
| 12:04:43 | 12 | Q.  What does the account number refer to on the bank statement |
| 12:04:48 | 13 | associated with the payments, the account number that is |
| 12:04:52 | 14 | referred to in the circled area that has the 59112014492? |
| 12:05:08 | 15 | A.  Yes, that's the loan number to the boat, the Bank of |
| 12:05:13 | 16 | America loan number. |
| 12:05:17 | 17 | Q.  Is that on the loan document? |
| 12:05:21 | 18 | A.  I'm not sure because it was Essex Credit first, and then |
| 12:05:27 | 19 | they assigned it to Bank of America. |
| 12:06:01 | 20 | Q.  Are you sure that's the loan number? |
| 12:06:08 | 21 | A.  I see the account number is blank.  I guess it wasn't |
| 12:06:13 | 22 | assigned yet at that time.  I should have the statements that |
| 12:06:16 | 23 | have the account number on it. |
| 12:06:23 | 24 | Q.  So you don't know what that number refers to? |
| 12:06:27 | 25 | A.  I don't have the actual statement with me, but it's |

| | | |
|---|---|---|
| 12:06:32 | 1 | supposed to be an electronic transfer.  It should say EFT |
| 12:06:45 | 2 | Electronics Funds Transfer.  I see that.  As you see, it's the |
| 12:06:54 | 3 | same account over and over on a monthly basis. |
| 12:07:00 | 4 | THE COURT:  Okay, does that answer the question?  Any |
| 12:07:03 | 5 | other questions? |
| 12:07:04 | 6 | MR. LAURATO:  I have a follow-up. |
| 12:07:07 | 7 | THE COURT:  Okay. |
| 12:07:09 | 8 | BY MR. LAURATO: |
| 12:07:20 | 9 | Q.  Mr. Gamez, on Plaintiff's Exhibit 4, are you certain that |
| 12:07:23 | 10 | account number 59112014492 is the payment for this particular |
| 12:07:30 | 11 | Glasstream boat? |
| 12:07:31 | 12 | A.  Yes, no doubt about it. |
| 12:07:37 | 13 | BY THE COURT: |
| 12:07:37 | 14 | Q.  How do you know that so certain? |
| 12:07:40 | 15 | A.  Because the other Glasstream was close to $1,300 a month. |
| 12:07:47 | 16 | That boat was $150, $160,000 boat. |
| 12:07:58 | 17 | THE COURT:  Okay.  Any other questions? |
| 12:08:02 | 18 | Mr. Gamez, you may step down. |
| | 19 | THE WITNESS:  Thank you. |
| | 20 | [Witness was excused]. |
| | 21 | ********** |
| 14:00:53 | 22 | THE COURT:  Members of the jury, our next witness we |
| 14:00:57 | 23 | are taking out of turn because he is a police officer on a |
| 14:01:00 | 24 | schedule, and he is out there right now. |
| 14:01:06 | 25 | Ms. Lo Presti, did you give me the paperwork that I |

| | | |
|---|---|---|
| 14:01:08 | 1 | need to sign off on? |
| 14:01:13 | 2 | MS. LO PRESTI:  I did give it to Linda.  I don't know |
| 14:01:16 | 3 | if Linda passed it on to Your Honor. |
| 14:01:24 | 4 | COURTROOM DEPUTY:  It's right there, Judge. |
| 14:01:43 | 5 | THE COURT:  There is all different paperwork I need to |
| 14:01:47 | 6 | give the police department as to when he showed up and how long |
| 14:01:52 | 7 | he was there. |
| 14:01:53 | 8 | Since it's a defense witness, the plaintiff has |
| 14:01:56 | 9 | graciously agreed to permit the calling of this witness out of |
| 14:02:00 | 10 | turn since he's here, he's a live witness, and we need to keep |
| 14:02:04 | 11 | on moving. |
| 14:02:06 | 12 | This is a witness that Mr. Green and the defendant are |
| 14:02:12 | 13 | putting on.  So Mr. Green will do the direct examination, and |
| 14:02:17 | 14 | Mr. Laurato will do the cross-examination because it is a |
| 14:02:22 | 15 | defense witness that we are taking out of turn. |
| 14:02:25 | 16 | Yes, bring him in.  There is nothing unusual about |
| 14:02:33 | 17 | this.  This happens all the time because we're trying to work |
| 14:02:37 | 18 | with other people's schedules, but still keep the case moving. |
| 14:03:15 | 19 | COURTROOM DEPUTY:  Sir, could you stand and be sworn. |
| | 20 | Do you solemnly swear to tell the truth, the whole truth and |
| | 21 | nothing but the truth so help you God? |
| 14:03:17 | 22 | THE WITNESS:  I do. |
| 14:03:18 | 23 | THE COURT:  There's a pitcher of water there.  If you |
| 14:03:22 | 24 | would state your full name and slowly spell it for us. |
| 14:03:26 | 25 | THE WITNESS:  Edwin Perez, P-e-r-e-z. |

| | | |
|---|---|---|
| 14:03:34 | 1 | THE COURT:  Okay, you may proceed. |
| | 2 | EDWIN PEREZ, DEFENDANT'S WITNESS, SWORN |
| | 3 | DIRECT EXAMINATION |
| 14:03:38 | 4 | BY MR. GREEN: |
| 14:03:38 | 5 | Q.  Officer Perez, thank you for coming down today.  We |
| 14:03:42 | 6 | appreciate it. |
| 14:03:43 | 7 | What is your current position? |
| 14:03:45 | 8 | A.  Uniform patrol in the Kendall District. |
| 14:03:49 | 9 | Q.  Is that with the Miami-Dade Police Department? |
| 14:03:54 | 10 | A.  Correct. |
| 14:03:55 | 11 | THE COURT:  Remember, you're on direct, not cross. |
| 14:03:59 | 12 | Who, what, where, when, why, how. |
| 14:04:03 | 13 | MR. GREEN:  Yes, Your Honor. |
| 14:04:04 | 14 | BY MR. GREEN: |
| 14:04:04 | 15 | Q.  How long have you been with the Miami-Dade Police |
| 14:04:08 | 16 | Department? |
| 14:04:09 | 17 | A.  Six years. |
| 14:04:10 | 18 | Q.  When was your start date? |
| 14:04:12 | 19 | A.  May of 2007. |
| 14:04:13 | 20 | Q.  During your time with the Miami-Dade Police Department, |
| 14:04:16 | 21 | have you had occasion to take incident reports related to |
| 14:04:25 | 22 | boats? |
| 14:04:25 | 23 | A.  Yes. |
| 14:04:26 | 24 | Q.  Tell the jury what the standard procedure is once you |
| 14:04:31 | 25 | receive a call related to the theft of a boat. |

| | | |
|---|---|---|
| 14:04:34 | 1 | A.  Generally, with theft of any kinds, as an investigative |
| 14:04:39 | 2 | preliminary investigation, we try to find out if there's any |
| 14:04:43 | 3 | subject information because our report, when it goes upstairs |
| 14:04:48 | 4 | to a detective, they have to determine whether it's a case that |
| 14:04:51 | 5 | could possibly be filed or investigated or not. |
| 14:04:54 | 6 | We're the ones that do a preliminary investigation, |
| 14:04:59 | 7 | determine if there's any subject information, if there's any |
| 14:05:01 | 8 | crime scenes, things like that. |
| 14:05:03 | 9 | THE COURT:  Officer Perez, would you do me a favor and |
| 14:05:06 | 10 | slow down just a nanosecond.  My Court Reporter is very fast, |
| | 11 | but if you would slow down just a bit. |
| 14:05:10 | 12 | THE WITNESS:  Sorry, sorry. |
| 14:05:13 | 13 | BY MR. GREEN: |
| 14:05:13 | 14 | Q.  As part of your role in the investigative process, what |
| 14:05:14 | 15 | individuals would you speak to? |
| 14:05:16 | 16 | A.  Anybody who calls 911 who wants a report. |
| 14:05:20 | 17 | Q.  With regard to a standard boat theft case, is there any |
| 14:05:28 | 18 | particular information that you require before you can take a |
| 14:05:31 | 19 | report? |
| 14:05:31 | 20 | A.  Whenever we do any theft of anything that has a VIN or a |
| 14:05:35 | 21 | hull number, any title -- |
| 14:05:40 | 22 | THE COURT:  VIN means? |
| 14:05:42 | 23 | THE WITNESS:  Vehicle identification number, and the |
| 14:05:44 | 24 | hull number is the same thing, but with a vessel.  It's the |
| 14:05:50 | 25 | vessel identification number. |

PEREZ - Direct

| | | |
|---|---|---|
| 14:05:51 | 1 | THE COURT:  Just remember, Officer, not all of us do |
| 14:05:54 | 2 | this on a daily basis, so you need to explain rather than just |
| 14:06:00 | 3 | using acronyms. |
| 14:06:01 | 4 | THE WITNESS:  Okay, I'm sorry.  I will try. |
| 14:06:05 | 5 | What we require from the complainant is the title that |
| 14:06:12 | 6 | shows proof that in the State of Florida they are the owners of |
| 14:06:15 | 7 | the car or the registration from the State of Florida of the |
| 14:06:19 | 8 | vehicle or vessel. |
| 14:06:22 | 9 | BY MR. GREEN: |
| 14:06:22 | 10 | Q.  So would a title of loan suffice to be the basis of which |
| 14:06:31 | 11 | you can do a police report? |
| 14:06:32 | 12 | MR. LAURATO:  Objection, leading question. |
| 14:06:35 | 13 | THE COURT:  Overruled. |
| 14:06:40 | 14 | THE WITNESS:  Yes. |
| 14:06:42 | 15 | BY MR. GREEN: |
| 14:06:42 | 16 | Q.  So do you need a vehicle registration to do a police |
| 14:06:49 | 17 | report? |
| 14:06:52 | 18 | A.  No. |
| 14:06:53 | 19 | Q.  I want to show you a document to refresh your recollection. |
| 14:06:58 | 20 | THE COURT:  You've got to have a question that he |
| 14:07:01 | 21 | needs to have his recollection refreshed first. |
| 14:07:04 | 22 | MR. GREEN:  Pardon me, Your Honor.  My apologies. |
| 14:07:09 | 23 | BY MR. GREEN: |
| 14:07:09 | 24 | Q.  Officer Perez, did you have occasion to take an incident |
| 14:07:13 | 25 | report involving Mr. Eurys Gamez and an alleged stolen boat on |

PEREZ - Direct

| | | |
|---|---|---|
| 14:07:21 | 1 | or about January 1st, 2008? |
| 14:07:26 | 2 | A.  Yes. |
| 14:07:26 | 3 | Q.  Your recollection of that -- |
| 14:07:29 | 4 | THE COURT:  Who, what, when, where, why questions.  No |
| 14:07:34 | 5 | leading. |
| 14:07:35 | 6 | BY MR. GREEN: |
| 14:07:35 | 7 | Q.  What do you recall about that particular incident report? |
| 14:07:40 | 8 | MR. LAURATO:  I would object to the question that it |
| 14:07:43 | 9 | asks what he recalls about the incident report. |
| 14:07:48 | 10 | THE COURT:  Tell us what you recall about that call to |
| 14:07:52 | 11 | you and your gathering information as a result of that call. |
| 14:07:57 | 12 | THE WITNESS:  I saw the report.  I don't have |
| 14:08:01 | 13 | specifics.  I read a lot of reports, so I don't specifically |
| 14:08:06 | 14 | recall something, you know -- I don't, you know, I don't |
| 14:08:14 | 15 | actually understand that question. |
| 14:08:15 | 16 | THE COURT:  Okay, try again. |
| 14:08:18 | 17 | BY MR. GREEN: |
| 14:08:18 | 18 | Q.  Officer Perez, you reviewed your report, right? |
| 14:08:26 | 19 | A.  Yes. |
| 14:08:26 | 20 | Q.  In doing so, did you note whether it was signed by you? |
| 14:08:31 | 21 | A.  Yes, I wrote that report. |
| 14:08:34 | 22 | Q.  Okay. |
| 14:08:36 | 23 | Did the incident report that you reviewed provide you |
| 14:08:41 | 24 | with an opportunity to assess the information that was -- |
| 14:08:50 | 25 | THE COURT:  How did it first come to your attention? |

| 14:08:54 | 1 | Were you on the phone and you received a call from Mr. Gamez, |

14:08:54   1   Were you on the phone and you received a call from Mr. Gamez,

14:08:58   2   or did someone direct you to go out and talk to Mr. Gamez?

14:09:02   3   Tell us what you did.

14:09:04   4       THE WITNESS:  I'm going to say, based on all my other

14:09:07   5   calls, every time I respond to calls, it's through our 911 call

14:09:12   6   center, and they dispatch the call to us over the dispatch.

14:09:18   7       MR. LAURATO:  Objection, Your Honor, move to strike,

14:09:20   8   lack of personal knowledge.

14:09:22   9       THE COURT:  Overruled.

14:09:23   10  BY MR. GREEN:

14:09:23   11  Q.  When you arrived to take the incident report by Mr. Gamez

14:09:27   12  in this case, do you recall what Mr. Gamez told you?

14:09:32   13  A.  Everything that is important and pertinent in the

14:09:38   14  information, I put on the report.  Whatever I put on that

14:09:41   15  report is what information he provided me.

14:09:45   16  Q.  Outside of the information that's on the report, you don't

14:09:48   17  have any independent recollection of what was told to you by

14:09:53   18  Mr. Gamez?

14:09:59   19  A.  No.

14:09:59   20  Q.  Previously, I ask you about the information that you would

14:10:03   21  be required to have in order to file a police report, and you

14:10:06   22  indicated that you thought the title would suffice, correct?

14:10:14   23  A.  Correct.

14:10:14   24  Q.  If there is no title to the vehicle or registration to the

14:10:20   25  vessel or the vehicle, is there any other information that

PEREZ - Direct

| | | |
|---|---|---|
| 14:10:23 | 1 | could be used to file a police report? |
| 14:10:26 | 2 | A.  For that moment, no, it would have to have proof of |
| 14:10:31 | 3 | ownership. |
| 14:10:32 | 4 | MR. GREEN:  That's all the questions I have of you. |
| 14:10:37 | 5 | Thank you, Mr. Perez. |
| 14:10:39 | 6 | MR. LAURATO:  I have no questions, Your Honor. |
| 14:10:42 | 7 | THE COURT:  Do I need to sign this paper here? |
| 14:10:47 | 8 | MS. LO PRESTI:  Yes, Your Honor, if you could just put |
| 14:10:51 | 9 | the time that Officer Perez is leaving the courtroom. |
| 14:10:55 | 10 | THE COURT:  Would you say it's 2:11? |
| 14:11:00 | 11 | MS. LO PRESTI:  Correct. |
| 14:11:03 | 12 | THE COURT:  Okay, Officer Perez.  Thank you very much. |
| 14:11:43 | 13 | [Witness was excused.] |
| | 14 | ********** |
| 14:44:13 | 15 | MR. GREEN:  First defense witness will be Cheryl |
| 14:44:17 | 16 | Johnson. |
| 14:44:18 | 17 | THE COURT:  We are now in the defendant's case. |
| 14:44:53 | 18 | Please be careful.  There is a ramp right there.  If |
| 14:44:58 | 19 | you would please remain standing until you are sworn. |
| 14:45:05 | 20 | COURTROOM DEPUTY:  Sir, could you stand and be sworn. |
| | 21 | Do you solemnly swear to tell the truth, the whole truth and |
| | 22 | nothing but the truth so help you God? |
| 14:45:08 | 23 | THE WITNESS:  Yes. |
| 14:45:11 | 24 | COURTROOM DEPUTY:  Thank you, please be seated. |
| 14:45:14 | 25 | THE COURT:  There's water in that pitcher there. |

14:45:16   1   There are cups.  Make yourself comfortable.  If you could keep

14:45:21   2   about three inches away from the microphone so that everybody

14:45:26   3   can hear you.

14:45:27   4        Test it out by saying your full name and slowly

14:45:30   5   spelling it.

14:45:31   6        THE WITNESS:  Cheryl Lee Johnson.  C-h-e-r-y-l L-e-e

         7   J-o-h-n-s-o-n.

         8        CHERYL LEE JOHNSON, DEFENDANT'S WITNESS, SWORN

         9            DIRECT EXAMINATION

14:45:46  10   BY MR. GREEN:

14:45:46  11   Q.  Ms. Johnson, how are you?

14:45:49  12   A.  Good.

14:45:50  13   Q.  Ms. Johnson, tell the jury what you do.

14:45:56  14   A.  I work for ACE Insurance Company, and I'm an underwriting

14:46:01  15   manager.

14:46:01  16   Q.  How long have you been in that position?

14:46:04  17   A.  I have been there nine years.

14:46:06  18   Q.  Where is your office currently located?

14:46:09  19   A.  Tampa.

14:46:12  20   Q.  How long have you been in that office?

14:46:13  21   A.  Nine years.

14:46:15  22   Q.  Have you held any other positions at ACE during the time

        23   you've been there?

        24   A.  No.

14:46:15  25   Q.  So the entire time you've been at ACE you've been in the

JOHNSON - Direct

| | | |
|---|---|---|
| 14:46:21 | 1 | Underwriting Department? |
| 14:46:23 | 2 | A.  Correct. |
| 14:46:24 | 3 | Q.  What was your title on or about October of 2007? |
| 14:46:30 | 4 | A.  Underwriting manager. |
| 14:46:32 | 5 | Q.  Is that the same title you have today? |
| 14:46:34 | 6 | A.  Correct. |
| 14:46:36 | 7 | Q.  Ms. Johnson, have you had occasion to review the |
| 14:46:42 | 8 | underwriting file? |
| 14:46:43 | 9 | A.  Yes, I have. |
| 14:46:44 | 10 | Q.  The underwriting file regarding Eurys Gamez? |
| 14:46:49 | 11 | A.  Yes. |
| 14:46:50 | 12 | Q.  Can you tell us what was in that file. |
| 14:46:53 | 13 |         MR. LAURATO:  Objection, hearsay. |
| 14:47:22 | 14 |         THE COURT:  She can describe what she's seen in the |
| 14:47:26 | 15 | file.  Overruled.  Don't recount what's written in the file, |
| 14:47:33 | 16 | but you can tell us -- |
| 14:47:35 | 17 |         THE WITNESS:  What the items are, okay. |
| 14:47:38 | 18 | BY MR. GREEN: |
| 14:47:38 | 19 | Q.  Ms. Johnson, what items did you see in the underwriting |
| 14:47:42 | 20 | file? |
| 14:47:43 | 21 | A.  I did review the application for insurance. |
| 14:47:46 | 22 | Q.  Can you tell us how the application for insurance was |
| 14:47:50 | 23 | received by ACE. |
| 14:47:51 | 24 |         MR. LAURATO:  Objection, Your Honor, lack of personal |
| 14:47:54 | 25 | knowledge. |

| 14:47:55 | 1 | THE COURT:  Just lay the foundation as to how she -- |

14:47:55   1         THE COURT:  Just lay the foundation as to how she --

14:48:00   2         MR. GREEN:  Yes, Your Honor.

14:48:03   3  BY MR. GREEN:

14:48:03   4  Q.  With regard to your underwriting experience, are you aware

14:48:09   5  of how applications generally come into the base office?

14:48:10   6         MR. LAURATO:  Objection, this witness is not an expert

14:48:14   7  and was not listed as an expert.

14:48:17   8         THE COURT:  It doesn't require expert testimony.

           9  Overruled.  She can describe what is the standard procedure of

          10  coming into the office.

14:48:27  11         MR. LAURATO:  Your Honor, I would object on the basis

14:48:31  12  of relevance.

14:48:32  13         THE COURT:  Overruled.

14:48:33  14  BY THE COURT:

14:48:33  15  Q.  Ms. Johnson, are you familiar with the procedures for

14:48:35  16  receipt of insurance applications for ACE?

14:48:39  17  A.  Yes, they're either e-mailed, faxed.  You don't see things

14:48:45  18  come in the mail too often anymore.  E-mail or fax usually.

14:48:50  19  Q.  Do the applications come to ACE via online?

14:48:56  20         MR. LAURATO:  Objection, leading question.

14:48:59  21         THE COURT:  Overruled.

14:49:00  22         Step up here just a minute, please.

          23         [Proceedings at sidebar follow]:

14:49:11  24         THE COURT:  Mr. Laurato, when you're making

14:49:17  25  objections, pick the ones that hurt you.  This one doesn't hurt

| 14:49:22 | 1 | you.  Your client filed the application online.  Why are you |
| 14:49:27 | 2 | objecting to that? |
| 14:49:28 | 3 | MR. LAURATO:  Judge, that's not the facts of this |
| 14:49:31 | 4 | case.  The signee couldn't have signed it online.  It was a |
| 14:49:36 | 5 | personal signature. |
| 14:49:37 | 6 | THE COURT:  Counsel, you all have put in this book |
| 14:49:41 | 7 | something that's online. |
| 14:49:43 | 8 | MR. LAURATO:  Right, Judge.  The application was |
| 14:49:47 | 9 | filled out online, but then it was printed out and signed.  The |
| 14:49:52 | 10 | documents we just showed, it was then e-mailed after the |
| 14:49:57 | 11 | underwriter received it. |
| 14:49:59 | 12 | This witness has no personal knowledge about this |
| 14:50:02 | 13 | particular application or receipt of it.  It's improper for her |
| 14:50:06 | 14 | to give any opinions about how it was received because she |
| 14:50:11 | 15 | doesn't know. |
| 14:50:13 | 16 | THE COURT:  That's true.  Who received it?  I mean, a |
| 14:50:18 | 17 | large corporation doesn't always have -- is she sort of like a |
| 14:50:23 | 18 | records custodian? |
| 14:50:23 | 19 | MR. GREEN:  More than anything else, she can verify |
| 14:50:28 | 20 | this file.  If he wants to sit here and say that we never |
| 14:50:32 | 21 | received it, I'm fine with that too. |
| 14:50:34 | 22 | MR. LAURATO:  She had no personal knowledge about how |
| 14:50:39 | 23 | this was received, about when it was received, about anything. |
| 14:50:44 | 24 | THE COURT:  Does she have the original file with her? |
| 14:50:49 | 25 | MR. GREEN:  I'm not sure, Your Honor.  I really don't |

JOHNSON - Direct

82

| | | |
|---|---|---|
| 14:50:56 | 1 | know. |
| | 2 | [Proceedings in open court follow]: |
| 14:50:57 | 3 | THE COURT:  Ms. Johnson, do you have the original of |
| 14:51:00 | 4 | the file with you today? |
| 14:51:01 | 5 | THE WITNESS:  I do not. |
| 14:51:03 | 6 | THE COURT:  Do you know where it is? |
| 14:51:04 | 7 | THE WITNESS:  Where the original file would be, the |
| 14:51:09 | 8 | underwriting file?  I would imagine somewhere in my office. |
| 14:51:14 | 9 | THE COURT:  When was the last time you saw it? |
| 14:51:18 | 10 | THE WITNESS:  I reviewed the application today, but |
| 14:51:21 | 11 | the entire file, no.  I would say I've just reviewed it off and |
| 14:51:27 | 12 | on when I became aware of this case. |
| 14:51:31 | 13 | THE COURT:  What are your present responsibilities? |
| 14:51:34 | 14 | THE WITNESS:  My present responsibilities are to |
| 14:51:43 | 15 | underwrite myself.  I'm an underwriter.  I review a risk or an |
| 14:51:48 | 16 | application and decide whether to accept the risk, and I also |
| 14:51:53 | 17 | manage the underwriting staff. |
| 14:51:56 | 18 | THE COURT:  How many are in your staff? |
| 14:51:58 | 19 | THE WITNESS:  As of today, four. |
| 14:52:01 | 20 | THE COURT:  What do you look at in doing your job as |
| 14:52:05 | 21 | the underwriter? |
| 14:52:06 | 22 | THE WITNESS:  As an underwriter, you look at the facts |
| 14:52:09 | 23 | that are presented to you to decide whether or not you want to |
| 14:52:12 | 24 | accept the risk or not based on the facts that are presented to |
| 14:52:18 | 25 | you. |

| | | |
|---|---|---|
| 14:52:19 | 1 | THE COURT:  Who was the underwriter on this file? |
| 14:52:21 | 2 | THE WITNESS:  The underwriter at the time on this file |
| 14:52:26 | 3 | -- you know what, I don't know.  I can guess who I think the |
| 14:52:30 | 4 | underwriter would have been at that time. |
| 14:52:35 | 5 | THE COURT:  Is there something that she can use to |
| 14:52:38 | 6 | refresh her recollection since she did look at the file? |
| 14:52:44 | 7 | MR. GREEN:  Perhaps she can look at the application to |
| 14:52:51 | 8 | refresh her recollection. |
| 14:52:52 | 9 | THE COURT:  Who was the underwriter on this file? |
| | 10 | [Proceedings at sidebar follow]: |
| 14:53:00 | 11 | MR. LAURATO:  Judge, another basis of my objection is |
| 14:53:08 | 12 | that this would be undisclosed expert testimony.  If she is |
| 14:53:19 | 13 | going to draw an opinion about what would have been done or |
| 14:53:22 | 14 | should have been done, she needed to be disclosed.  She cannot |
| 14:53:28 | 15 | rely on some other underwriter. |
| 14:53:30 | 16 | THE COURT:  She can testify as to what are the |
| 14:53:33 | 17 | standard operating procedures in the office.  Corporations only |
| 14:53:40 | 18 | can function pursuant to their employees. |
| 14:53:43 | 19 | MR. LAURATO:  She has no personal knowledge about this |
| 14:53:47 | 20 | particular application. |
| 14:53:48 | 21 | THE COURT:  What is the purpose of calling her? |
| 14:53:52 | 22 | MR. GREEN:  ACE has standards, and with regard to |
| 14:53:55 | 23 | making the decision to rescind, she can testify to what |
| 14:54:00 | 24 | information has been represented; i.e. what we presented in |
| 14:54:05 | 25 | opposition is the following: |

14:54:07   1        If the ownership has been misrepresented, if the
14:54:10   2   address has been misrepresented, if the primary operator, all
14:54:15   3   of those things are in the ACE policy.  Those are things that
14:54:20   4   she can testify about because that's the issue here.
14:54:23   5        MR. LAURATO:  That is improper.
14:54:30   6        THE COURT:  Having just dealt with this in a criminal
14:54:33   7   case, as long as she is testifying as to what is the standard
14:54:38   8   operating procedure in the corporation, she can testify to
14:54:44   9   that.
14:54:45  10        We can tell the jury that she has no personal
14:54:49  11   knowledge about this particular file.  She's only testifying as
14:54:53  12   to what ACE's procedures are.
          13        [Proceedings in open court follow]:
14:55:11  14   BY MR. GREEN:
14:55:11  15   Q.  Ms. Johnson, you were not the underwriter for this
14:55:15  16   particular policy, correct?
14:55:16  17        MR. LAURATO:  Objection, leading question, Your Honor.
14:55:19  18        THE COURT:  Overruled.
14:55:20  19        THE WITNESS:  Correct, I was not the underwriter at
14:55:23  20   the time for this agency.
14:55:27  21        THE COURT:  Were you with the agency back in 2008?
14:55:30  22        THE WITNESS:  Yes, I was with the insurance company.
14:55:34  23        THE COURT:  With ACE?
14:55:37  24        THE WITNESS:  Correct.
14:55:38  25        THE COURT:  How long had you been with ACE at that

| | | |
|---|---|---|
| 14:55:42 | 1 | time? |
| 14:55:42 | 2 | THE WITNESS:  Nine years. |
| 14:55:44 | 3 | THE COURT:  In 2007 and 2008, how long were you there? |
| 14:55:48 | 4 | THE WITNESS:  I started there in 2004.  We switch |
| 14:55:55 | 5 | underwriters.  We closed two offices, so my staff has changed a |
| 14:56:02 | 6 | little bit, and you do switch things around. |
| 14:56:06 | 7 | THE COURT:  Members of the jury, Ms. Johnson was not |
| 14:56:10 | 8 | personally involved in the underwriting decisions on this file. |
| 14:56:16 | 9 | I am permitting her to testify as to the standard operating |
| 14:56:21 | 10 | procedures at ACE Insurance as to the handling of either the |
| 14:56:28 | 11 | underwriting or the decision to accept the risk or to reject |
| 14:56:34 | 12 | the risk and to deny a claim. |
| 14:56:41 | 13 | MR. GREEN:  To rescind the policy, since she's not a |
| 14:56:44 | 14 | part of the Claims Department. |
| 14:56:46 | 15 | THE COURT:  She can't testify as to that. |
| 14:56:52 | 16 | BY MR. GREEN: |
| 14:56:52 | 17 | Q.  Ms. Johnson, in your position as an underwriting manager, |
| 14:56:58 | 18 | do you have any knowledge related to the standard operating |
| 14:57:02 | 19 | procedures employed by ACE in order to rescind a policy? |
| 14:57:08 | 20 | A.  Yes. |
| 14:57:08 | 21 | THE COURT:  To rescind a policy?  What do you mean by |
| 14:57:13 | 22 | rescind a policy? |
| 14:57:17 | 23 | THE WITNESS:  With regard to an underwriting decision, |
| 14:57:22 | 24 | you get a risk presented to you, and then you find out that |
| 14:57:28 | 25 | maybe the facts were not factual, there was misrepresentations, |

| 14:57:33 | 1 | so yes, you can rescind the policy. |

14:57:33  1  so yes, you can rescind the policy.

14:57:36  2          THE COURT:  But you're not involved in making those

14:57:38  3  decisions?

14:57:42  4          THE WITNESS:  No, I recommend it to our Chief

14:57:47  5  Operating Officer.

14:57:53  6          THE COURT:  You are involved in the process in making

14:57:56  7  a decision as to whether or not to rescind a policy?

14:57:59  8          THE WITNESS:  On my level, I would be involved in

14:58:03  9  recognizing a decision.

14:58:05  10          THE COURT:  What do you mean recognizing a decision?

14:58:08  11          THE WITNESS:  If I see a risk that you review the

14:58:12  12  underwriting application and see things that you can say look,

14:58:22  13  this is not a good risk.  The underwriter would present it to

14:58:27  14  me, and then I would present it to my manager.

14:58:33  15  BY MR. GREEN:

14:58:33  16  Q.  Subsequent to presenting that information to your manager,

14:58:36  17  what happens next?

14:58:37  18  A.  Then they would review it.  Then they would come back and

14:58:42  19  either agree with your decision or ask you for more

14:58:46  20  information.

14:58:47  21  Q.  If the decision is agreed upon, do you have any further

14:58:50  22  involvement yourself?

14:58:57  23  A.  No.

14:58:58  24  Q.  Are you aware of the type of information that is used to

14:59:07  25  base your decision to rescind a policy upon?

| | | |
|---|---|---|
| 14:59:11 | 1 | A.  Yes, it's the questions on the application that are |
| 14:59:14 | 2 | material to the risk. |
| 14:59:15 | 3 | Q.  What questions would those be? |
| 14:59:18 | 4 | A.  You would look at -- you see this stuff every day and then |
| 14:59:23 | 5 | you don't have it in front of you.  But I would look at the |
| 14:59:27 | 6 | owner of the vessel.  I would look at the operator of a vessel. |
| 14:59:33 | 7 | I would look at the ownership history of a vessel. |
| 14:59:36 | 8 | I would look at how it's going to be used.  I would |
| 14:59:41 | 9 | look at the mooring or storage location.  I would look at any |
| 14:59:49 | 10 | additional operators. |
| 14:59:52 | 11 | Q.  Now, of the things that you just pointed out to us, are |
| 14:59:57 | 12 | those things assessed independently as the basis for a |
| 15:00:02 | 13 | potential decision to rescind? |
| 15:00:04 | 14 | A.  I would say independently and collectively. |
| 15:00:08 | 15 | THE COURT:  Why do you look at those particular |
| 15:00:10 | 16 | things? |
| 15:00:11 | 17 | THE WITNESS:  The first one is ownership.  You want to |
| 15:00:14 | 18 | make sure you're insuring -- you look and see who the owner of |
| 15:00:22 | 19 | the vessel is. |
| 15:00:23 | 20 | THE COURT:  Why is that important? |
| 15:00:25 | 21 | THE WITNESS:  You want to know that they're the actual |
| 15:00:29 | 22 | owner.  You're relying on the information that is written.  You |
| 15:00:34 | 23 | want to make sure they're the lawful owner of the vessel, that |
| 15:00:38 | 24 | it's truly their vessel. |
| 15:00:44 | 25 | BY MR. GREEN: |

15:00:44  1  Q.  You mentioned the operator of the vessel.

15:00:48  2          Why is that important?

15:00:49  3  A.  Correct.  If you insure a vessel for somebody and you think

15:00:54  4  you're insuring the vessel for that person, you want to know if

15:00:57  5  there are any additional operators.  We list a section for

15:01:02  6  other operators.

15:01:06  7          You may have youthful operators.  You want to make

15:01:12  8  sure if they're 14, 15 years old, and believe it or not, they

        9  do let them use their boat, that you underwrite them.

15:01:20  10          You want to make sure if there's partners on the boat

15:01:20  11  or additional operators that you also underwrite those

15:01:25  12  additional operators to look at their history.

15:01:27  13          THE COURT:  When you say "look at their history," what

15:01:30  14  do you mean?

15:01:31  15          THE WITNESS:  Look at their loss history and their

15:01:36  16  ownership and experience.

15:01:37  17  BY MR. GREEN:

15:01:37  18  Q.  You mentioned a vessel mooring location.

15:01:41  19  A.  Correct that is important to us, as an insurance company,

15:01:48  20  because we look at exactly where the boat is moored.  It's very

        21  important when we assess a premium.

15:01:56  22  Q.  Can you describe for the jury what you mean by where the

15:02:00  23  boat is moored.

15:02:02  24  A.  Where the boat is kept, where it's stored.  Especially when

15:02:07  25  you have cats [sic], catastrophes, hurricanes, locations.  It's

15:02:11  1  very important for us to know where the boat is, you know,

15:02:15  2  because they can move.  So where it's kept primarily, it's kind

15:02:20  3  of how we assess the risk.

15:02:26  4  Q.  With regard to the additional operators, I think you

15:02:32  5  mentioned operators of the boat.

15:02:34  6       Beyond what you just told us, are there any other

15:02:38  7  reasons as to why ACE would feel that's important?

15:02:41  8  A.  Really, you want to make sure that those additional

15:02:45  9  operators have the ownership to use the boat, the experience to

15:02:49  10  use the boat.  We sometimes go back, if it's not under the loss

15:02:54  11  history, we look at that almost as much as the owner.

15:02:59  12       A lot of people have partnerships, and a lot of times

15:03:04  13  it's husband and wife, and that's pretty obvious to us.  We'll

15:03:10  14  go back and ask for her loss, experience, and ownership history

15:03:14  15  because we want to make sure they're also qualified.

15:03:18  16  Q.  If any of those things that you just mentioned that are

15:03:22  17  material to ACE are incorrect or misrepresented on the

15:03:26  18  application, does that serve as a basis for rescinding the

15:03:31  19  policy?

15:03:31  20  A.  Yes, definitely.

15:03:35  21       MR. GREEN:  That's all the questions I have of you,

15:03:38  22  Ms. Johnson.

15:03:39  23       THE COURT:  Cross-examination of Ms. Johnson,

15:03:42  24  Mr. Laurato.

15:03:45  25       This is Mr. Laurato on behalf of Mr. Gamez.

|  |  |  |
|---|---|---|
|  | 1 | CROSS EXAMINATION |
| 15:03:52 | 2 | BY MR. LAURATO: |
| 15:03:52 | 3 | Q.  Hello, Ms. Johnson.  I represent Mr. Gamez. |
| 15:03:56 | 4 | Ms. Johnson, principally, you were not involved in |
| 15:03:59 | 5 | underwriting this particular insurance policy, correct? |
| 15:04:02 | 6 | A.  Correct. |
| 15:04:03 | 7 | Q.  You don't even know who underwrote this particular policy, |
|  | 8 | right? |
| 15:04:08 | 9 | A.  Right, I don't want to speculate.  I believe I know who it |
| 15:04:12 | 10 | is. |
| 15:04:13 | 11 | Q.  Isn't it true that this application was stamped received by |
| 15:04:17 | 12 | ACE on November 26th, 2007? |
| 15:04:21 | 13 | MR. GREEN:  I would suggest you show her the document, |
| 15:04:27 | 14 | Michael. |
| 15:04:28 | 15 | THE COURT:  Come up here. |
|  | 16 | [Proceedings at sidebar follow]: |
| 15:04:43 | 17 | THE COURT:  Do you want to go down this road?  You're |
| 15:04:46 | 18 | going to open the door. |
| 15:04:48 | 19 | MR. LAURATO:  I'll just move on, Your Honor. |
| 15:04:50 | 20 | THE COURT:  I'm concerned because all of your |
| 15:04:52 | 21 | objections were you didn't want her to testify as to the file. |
| 15:04:57 | 22 | MR. LAURATO:  She said she reviewed the application. |
| 15:05:00 | 23 | She said she did. |
| 15:05:03 | 24 | THE COURT:  He will use that as an opportunity to get |
| 15:05:06 | 25 | it in.  It's a place you don't want to go. |

|  |  |  |
|---|---|---|
|  | 1 | [Proceedings in open court follow]: |
| 15:05:15 | 2 | BY MR. LAURATO: |
| 15:05:16 | 3 | Q.  Ms. Johnson, the criteria which you just discussed, you |
| 15:05:21 | 4 | don't have any personal knowledge about whether that criteria |
| 15:05:26 | 5 | was used in this particular application, do you? |
| 15:05:29 | 6 | A.  Not particular knowledge, but it is our standard |
| 15:05:32 | 7 | underwriting guidelines. |
| 15:05:34 | 8 | Q.  In this case, for all you know, it could have been |
| 15:05:39 | 9 | overlooked, right? |
| 15:05:40 | 10 | A.  It's possible. |
| 15:05:41 | 11 | Q.  In this case, for all you know, the application of |
| 15:05:45 | 12 | insurance could have had a Bahamas navigation warranty, and the |
| 15:05:50 | 13 | policy could have been issued without that warranty, right? |
| 15:05:55 | 14 | A.  Right. |
| 15:05:56 | 15 | Q.  For all you know, this particular policy may have, in fact, |
| 15:05:59 | 16 | been issued without even the application being received, right? |
| 15:06:04 | 17 | A.  In any business, people can make mistakes, but we do have |
| 15:06:10 | 18 | procedures in place and audits. |
| 15:06:21 | 19 | MR. LAURATO:  I don't have any further questions, Your |
| 15:06:25 | 20 | Honor. |
| 15:06:25 | 21 | THE COURT:  Any redirect? |
| 15:06:27 | 22 | MR. GREEN:  No redirect, Your Honor. |
| 15:06:30 | 23 | THE COURT:  Ms. Johnson, you may step down.  Thank you |
| 15:06:33 | 24 | very much. |
|  | 25 | [Witness was excused]. |

|   |   |
|---|---|
|   | 1 |
|   | 2 |
| 16:16:25 | 3 |
| 16:16:35 | 4 |
| 16:16:41 | 5 |
| 16:16:43 | 6 |
| 16:16:44 | 7 |
| 16:16:49 | 8 |
| 16:16:52 | 9 |
| 16:16:58 | 10 |
| 16:17:00 | 11 |
| 16:17:05 | 12 |
| 16:17:11 | 13 |
| 16:17:12 | 14 |
| 16:17:15 | 15 |
| 16:17:18 | 16 |
| 16:17:24 | 17 |
| 16:17:25 | 18 |
| 16:17:29 | 19 |
| 16:17:35 | 20 |
| 16:17:37 | 21 |
| 16:17:39 | 22 |
| 16:17:40 | 23 |
| 16:18:00 | 24 |
| 16:18:07 | 25 |

1       **********

2       DIRECTED VERDICT MOTION

3       THE COURT:  Please have a seat, counsel.  I'll be glad

4  to hear any motions that I took under advisement.

5       Mr. Green, are you making a motion?

6       MR. GREEN:  Your Honor, I am making a motion.

7       I move for a directed verdict with regard to

8  plaintiff's breach of contract claim.  The evidence has not

9  shown that ACE did anything by way of breaching the contract.

10      In fact, with regards to the elements of the cause of

11 action, the evidence is clear in this case that Mr. Gamez's

12 application, on its face, contained numerous

13 misrepresentations.

14      Those misrepresentations, both in the actual

15 application and subsequent to the submission of the application

16 and the attachment of the policy, would preclude coverage in

17 this case.

18      Thus, plaintiff cannot make a straight-faced claim

19 that we breached a contract wherein Mr. Gamez's own action

20 ended up repudiating the contract on its face.

21      There is testimony in the case from Mr. Gamez himself

22 about --

23      THE COURT:  Slow down.  Mr. Green, if you would just

24 slow down.  When I look over to what my Court Reporter has told

25 me, it's telling me, "I don't hear what he said."

| 16:18:11 | 1 | MR. GREEN:  Understood.  If I may resume, Your Honor. |
| 16:18:15 | 2 | THE COURT:  Take it from the top. |
| 16:18:18 | 3 | MR. GREEN:  Take it from the top. |
| 16:18:20 | 4 | Your Honor, our motion is a motion for directed |
| 16:18:23 | 5 | verdict with regards to plaintiff's breach of contract claim |
| 16:18:27 | 6 | and also related to our rescission claim. |
| 16:18:31 | 7 | Here, we have a case wherein plaintiff has not |
| 16:18:34 | 8 | established the necessary elements, and the evidence cannot be |
| 16:18:39 | 9 | read to find that ACE breached a contract with the plaintiff |
| 16:18:42 | 10 | for a number of reasons. |
| 16:18:43 | 11 | One, plaintiff's own actions, by way of the |
| 16:18:49 | 12 | misrepresentations in the contract, would allow ACE to void the |
| 16:18:53 | 13 | policy and preclude coverage under the policy. |
| 16:18:56 | 14 | It's clear, based upon Mr. Gamez's own testimony, that |
| 16:19:01 | 15 | the contract, if you will, the application for insurance that |
| 16:19:04 | 16 | becomes the contract between the various parties, included |
| 16:19:08 | 17 | numerous misrepresentations related to the ownership of the |
| 16:19:10 | 18 | vessel, where the vessel is being stored, the primary operator |
| 16:19:16 | 19 | of the vessel, and the additional operator of the vessel. |
| 16:19:19 | 20 | Mr. Gamez has been impeached significantly with regard |
| 16:19:24 | 21 | to those issues throughout his testimony.  Mr. Gamez, at |
| 16:19:28 | 22 | various points, before he even arrived at trial, made |
| 16:19:35 | 23 | misrepresentations that were counter to what he testified to |
| 16:19:37 | 24 | here in court. |
| 16:19:38 | 25 | On the motion -- with regard to the elements on the |

| 16:19:39 | 1 | breach of contract claim, with regard to the element number |
| 16:19:43 | 2 | two, it requires Mr. Gamez to comply -- |
| 16:19:47 | 3 | THE COURT:  Walk through the evidence in the |
| 16:19:50 | 4 | plaintiff's case that shows that there is a material |
| 16:19:54 | 5 | misrepresentation as to ownership, storage, and primary |
| 16:20:00 | 6 | operators. |
| 16:20:00 | 7 | MR. GREEN:  Yes, Your Honor. |
| 16:20:01 | 8 | With regard to ownership of the vessel, Mr. Gamez, the |
| 16:20:05 | 9 | only indicia of ownership in this case is actually on the |
| 16:20:08 | 10 | papers.  Mr. Gamez, himself, testified during his -- I |
| 16:20:14 | 11 | apologize, Mr. Gamez himself represented, during Coast Guard |
| 16:20:18 | 12 | investigations, independent investigations with the Coast |
| 16:20:20 | 13 | Guard, in which he stated that the vessel was not owned by him. |
| 16:20:24 | 14 | It was owned by his cousin.  He said that.  Those were |
| 16:20:27 | 15 | Mr. Gamez's words.  Those would be admissions against interest |
| 16:20:32 | 16 | in this case. |
| 16:20:33 | 17 | Additionally, Mr. Gamez, speaking to Special Agent |
| 16:20:36 | 18 | Woods, made the same representations.  He was, essentially, |
| 16:20:39 | 19 | saying that, "The vessel doesn't belong to me.  I only allowed |
| 16:20:42 | 20 | him to use my credit."  The Court heard that.  The jury heard |
| 16:20:46 | 21 | that.  With regard to the ownership of the vessel, it's clear, |
| 16:20:48 | 22 | on its face, that Mr. Gamez was not the owner of the vessel. |
| 16:20:53 | 23 | These issues kind of bleed together, obviously. |
| 16:20:55 | 24 | With regard to the location of the vessel, the vessel |
| 16:20:58 | 25 | was always stored at Mr. Hassun's house.  The evidence is clear |

| | | |
|---|---|---|
| 16:21:02 | 1 | on that. |
| 16:21:03 | 2 | Most importantly, it was never stored at the address |
| 16:21:06 | 3 | identified on the application for insurance.  Never was stored |
| 16:21:10 | 4 | there. |
| 16:21:11 | 5 | THE COURT:  Tell me, what is the address on the |
| 16:21:15 | 6 | application for insurance? |
| 16:21:17 | 7 | MR. GREEN:  That would be in Joint Exhibit 2, Your |
| 16:21:21 | 8 | Honor.  The address is listed at the very top.  The address |
| 16:21:27 | 9 | listed is 3301 Northwest 16th Street, Miami, Florida, 33125. |
| 16:21:36 | 10 | Mr. Gamez, and we can see by way of eventual testimony in this |
| 16:21:41 | 11 | case, Mr. Gamez has knowledge that his vessel was never stored |
| 16:21:45 | 12 | at that address. |
| 16:21:47 | 13 | All the terms and conditions in this application |
| 16:21:49 | 14 | become a part of the policy once the policy is issued. |
| 16:21:53 | 15 | Mr. Gamez had an obligation to disclose that information in |
| 16:21:56 | 16 | order for ACE to properly assess the risk.  Ms. Johnson |
| 16:22:02 | 17 | testified as such earlier on the witness stand. |
| 16:22:07 | 18 | THE COURT:  But I can't consider Ms. Johnson's |
| 16:22:11 | 19 | testimony because I'm only looking at the evidence at the end |
| 16:22:14 | 20 | of the plaintiff's case. |
| 16:22:16 | 21 | MR. GREEN:  Understood, Your Honor, understood. |
| 16:22:19 | 22 | Even if you use the evidence in the plaintiff's case, |
| 16:22:22 | 23 | in the EUO testimony, he says that the vessel was not stored at |
| 16:22:28 | 24 | the 3301 Northwest 16th Street address. |
| 16:22:32 | 25 | If you go further and you look at his testimony here |

16:22:34   1   in court, he also makes the same representation.  In fact, he

16:22:41   2   said that the vessel could never be stored at the 3301

16:22:46   3   Northwest 16th Street address because it couldn't fit.  There

16:22:50   4   was not enough backyard or curtilage, if you will, to account

16:22:54   5   for the boat.

16:22:55   6        So that issue, with regard to the address of where the

16:22:58   7   boat was going to be located, it's clear that this application

16:23:03   8   is completely wrong, completely incorrect, and it's a complete

16:23:08   9   misrepresentation.

16:23:08  10        THE COURT:  What about the fact that on the vessel

16:23:10  11   location they put a zip code of 33010?

16:23:13  12        MR. GREEN:  Your Honor, with regard to 33010, that's

16:23:17  13   still not where the vessel was located.

16:23:20  14        THE COURT:  What's the evidence that says that's not

16:23:23  15   where the vessel was located?

16:23:26  16        MR. GREEN:  Your Honor, if you look at the 3301

16:23:29  17   address, I believe the testimony has been that that was where

16:23:34  18   Mr. Hassun resided.

16:23:37  19        However, if you look at the complete section, it needs

16:23:42  20   to be read in its totality.  It asks where the vessel location

16:23:47  21   is, and it says "residence."  It doesn't say the residence of

16:23:52  22   Mr. Hassun.  It says residence.

16:23:54  23        By reading this contract in its totality, you have to

16:23:57  24   assume that the address it's referring to is actually the

16:24:01  25   owner's address.

16:24:03  1          THE COURT:  But it's a different zip code than the

16:24:08  2    owner's zip code.  Doesn't that sort of raise an issue that

16:24:14  3    there might be a different location?

16:24:17  4          MR. GREEN:  Your Honor, with regard to the zip code,

16:24:20  5    actually, I think that is a function of the fact that you had

16:24:25  6    Mr. Hassun complete this application and not the plaintiff.

16:24:28  7          While that difference is noted, the bigger issue is

16:24:33  8    that 33010 is one thing that, when you look at the address in

16:24:38  9    its totality, the address in its totality is the address on

16:24:43  10   top.  When you ask for an address, the 33010 zip code doesn't

16:24:50  11   reflect any particular address.  All it reflects is a zip code.

16:24:54  12          Does it raise an issue as to whether the vessel is

16:24:57  13   going to be stored at the address listed above?  I think it

16:25:02  14   doesn't because you really focus on the fact that this is

16:25:05  15   supposed to be the residence, and the residence is the only

16:25:08  16   thing that really matters in this instance because it's at the

16:25:11  17   residence of the owner of the vessel, and Mr. Gamez has

16:25:15  18   represented he's the owner of the vessel, so you would expect

16:25:17  19   to see the address where he's actually residing, and this

16:25:20  20   address is not anywhere on this application.

16:25:22  21          THE COURT:  And the other points as to the primary

16:25:28  22   operator?

16:25:30  23          MR. GREEN:  The primary operator elements on this

16:25:35  24   application are interesting because the primary operator of

16:25:38  25   this boat, without question, has been Mr. Hassun.  Plaintiff's

16:25:41  1  EUO testimony reflects that.  Plaintiff's deposition testimony

16:25:45  2  reflects that.

16:25:45  3       He's been impeached on that subject-matter, and to the

16:25:49  4  extent that he said anything in court, he says, "Yeah, after I

16:25:52  5  reviewed the EUO, the deposition testimony, and sat through the

16:25:55  6  testimony of my cousin, I believe that I was the primary and/or

16:26:02  7  equal."  That's nothing more than a change of position.

16:26:08  8       He even said he was not the primary operator of the

16:26:08  9  vessel.  He even said so at the time that it was in March of

16:26:11  10  2003 and then again in his deposition in 2008.

16:26:14  11       To the extent that he's modifying or changing his

16:26:17  12  position in court today or in court yesterday in order to be

16:26:26  13  advantageous, I think the Court needs to look to what he said

16:26:30  14  under oath during those other points in time when it was clear

16:26:33  15  that he was not the primary operator at the time that ACE made

16:26:39  16  the decision to rescind the policy.

16:26:41  17       With regard to different operators, it's pretty clear

16:26:44  18  that this application, on its face, lists no additional

16:26:48  19  operators.  Yet, the testimony is that Mr. Gamez gave his

16:26:53  20  cousin, Mr. Hassun, free will and had full faith and credit or

16:26:57  21  permission to use this vessel.

16:27:00  22       In fact, not only to use it, to store it, to take it

16:27:05  23  out whenever he wanted to, and his EUO testimony is clear that

16:27:13  24  Mr. Hassun took the vessel out whenever he wanted without

25  limitation, without restriction.

16:27:17  1            In fact, when the vessel allegedly went missing, it

16:27:19  2    was in the possession of Mr. Hassun.  If you look at the

16:27:23  3    testimony, it's pretty interesting because Mr. Hassun was

16:27:27  4    assigned to go out on this fishing trip.  There was no mention

16:27:32  5    of Mr. Gamez ever going out on this fishing trip.

16:27:35  6            There was no indication, at any point in time, that

16:27:36  7    Mr. Gamez did not appreciate the additional operator

16:27:40  8    information that was required, and that the application

16:27:42  9    required him to disclose that information.  There was zero

16:27:46  10   disclosure here with regard to additional operators.

16:27:49  11           That goes to his obligation to fill this application

16:27:54  12   out correctly and to not misrepresent what was going on with

16:27:57  13   regard to additional operators.

16:28:00  14           Additionally, you cannot lose sight of the fact that

16:28:07  15   Mr. Hassun completed this application.  Mr. Hassun acted as

16:28:11  16   Mr. Gamez's agent for this application, all throughout the

16:28:15  17   claims process, even with the sworn proof of loss.

16:28:20  18           If you look at all the facts in their totality, you

16:28:24  19   look at that, at the time this application was filled out by

16:28:27  20   Mr. Hassun, it's clear he knew he was going to be an additional

16:28:31  21   operator of the boat.

16:28:34  22           If you remember, Mr. Gamez's testimony is that you

16:28:37  23   know, boating is, I'm paraphrasing, "Boating is a family

16:28:41  24   affair.  We go out, want to have an additional second boat

16:28:47  25   because we want to go out to the sand bars and the Bahamas,"

16:28:51  1    but he still didn't list anyone as an additional operator.

16:28:56  2         His testimony was clear that this was supposed to be a

16:28:59  3    family affair, everybody came on these vessels knowing that

16:29:04  4    they were going to be additional operators of it.

16:29:09  5         THE COURT:  Your response, Mr. Laurato?

16:29:11  6         MR. LAURATO:  Yes, Your Honor.  Are we handling all

16:29:13  7    the motions for directed verdict at this point?  What I heard

16:29:16  8    him talk about were defenses upon which he had the burden of

16:29:20  9    proof, not really my prima facie case.

16:29:22  10        The question of whether my client intentionally made

16:29:26  11   misrepresentations --

16:29:29  12        THE COURT:  His charge is that there is not a valid

16:29:32  13   contract of insurance at the time because the provision says --

16:29:40  14   I mean the contract provides that if you make any

16:29:45  15   misrepresentations in the application, that that is the basis

16:29:51  16   for rescission.

16:29:53  17        So that's his argument, that simply, as a matter of

16:29:57  18   law, based on the evidence here, that there is not a valid

16:30:07  19   policy.

16:30:07  20        MR. LAURATO:  Judge, I believe the Eleventh Circuit

16:30:10  21   has set out the burden of proofs in these matters, and the

16:30:13  22   plaintiff is required to prove an accidental direct loss.

16:30:19  23        Insofar as they are going to rely on an exclusion such

16:30:22  24   as the concealment, fraud, or misrepresentation exclusion, the

16:30:27  25   burden is on them.

| | | |
|---|---|---|
| 16:30:29 | 1 | I don't believe it's appropriate, at this point, Your |
| 16:30:32 | 2 | Honor, for me to address his motion for directed verdict on his |
| 16:30:38 | 3 | defense without having all the evidence in. |
| 16:30:41 | 4 | THE COURT:  It sounds to me like you've gotten all |
| 16:30:45 | 5 | sorts of evidence in.  Only one witness is missing. |
| 16:30:50 | 6 | MR. LAURATO:  I'm happy to make a motion for directed |
| 16:30:53 | 7 | verdict as to his affirmative defenses if you would like to |
| 16:30:57 | 8 | hear.  I don't believe it's appropriate at this point.  I can |
| 16:31:00 | 9 | give you a heads-up about what I think is coming. |
| 16:31:03 | 10 | My initial position, Your Honor, is that, under the |
| 16:31:07 | 11 | controlling Eleventh Circuit precedent, marine insurance |
| 16:31:11 | 12 | policies, an all-risk marine insurance policy, which the |
| 16:31:15 | 13 | evidence establishes that this unequivocally was, where there |
| 16:31:18 | 14 | is a coverage grant that says, "We provide covered losses for |
| 16:31:22 | 15 | all accidental, direct, physical damage or loss to your |
| 16:31:26 | 16 | vessel," that creates this all-risk marine insurance. |
| 16:31:29 | 17 | Under that type of policy, the law is well-settled. |
| 16:31:33 | 18 | In order to recover under the policy, the plaintiff only need |
| 16:31:38 | 19 | prove that there was a fortuitous or accidental loss.  Once |
| 16:31:43 | 20 | that happens, the burden shifts to the insured to prove a |
| 16:31:45 | 21 | specific exclusion or the specific breach of a policy |
| 16:31:48 | 22 | condition. |
| 16:31:49 | 23 | THE COURT:  What is the proof that you've put on that |
| 16:31:52 | 24 | it was an accidental loss? |
| 16:31:54 | 25 | MR. LAURATO:  Judge, the law on that is fairly clear |

JOHNSON - Cross

16:31:56    1    as well from the Eleventh Circuit and the former Fifth Circuit,

16:31:59    2    which is binding upon the Eleventh Circuit.  A fortuitous loss

16:32:03    3    is very easy to prove.  It is a loss which is unintended.  The

16:32:07    4    insured is not straddled with any burden to prove the cause of

16:32:11    5    loss.  That burden is on the insurance company to prove the

16:32:15    6    cause of loss.

16:32:16    7            THE COURT:  But what evidence is there to prove that

16:32:19    8    it is a fortuitous loss, because the evidence seems to suggest

16:32:24    9    that it may not be?

16:32:27   10            MR. LAURATO:  The insured and the case law

16:32:29   11    interpreting that simply requires the insured to show that it

16:32:32   12    was something unintended by the insured.  That the loss can be

16:32:38   13    anything as long as it was unintended.  It can be rocked.  It

16:32:42   14    can be anything.  The insured is not straddled with the burden

16:32:46   15    to prove the cause.  There's case law on that point.

16:32:48   16            THE COURT:  No, I'm not saying that he has to show

16:32:51   17    what the cause is, but he needs to eliminate any question that

16:32:55   18    he or his agent were involved in an intentional --

16:33:05   19            MR. LAURATO:  Again, that is --

16:33:06   20            THE COURT:  Misappropriation.

16:33:09   21            MR. LAURATO:  That is an exclusion under the policy.

16:33:11   22    There is a specific exclusion relating to that conduct, which

           23    has been waived in this case.

16:33:16   24            THE COURT:  Show me what is the evidence that it is

16:33:19   25    fortuitous that this has been lost, that I can say that you

16:33:24  1   have made your prima facie case.

16:33:27  2         MR. LAURATO:  Judge, the evidence before the jury is

16:33:29  3   that the boat was lent to his cousin.  His cousin then lent it

16:33:33  4   out.  The boat was missing.  It has not come back.  My client

16:33:39  5   never intended for that to happen.  That alone is fortuitous in

16:33:44  6   and of itself.

16:33:44  7         In fact, the cases interpreting fortuitous loss in a

16:33:46  8   marine insurance contract specifically state -- there's a case

16:33:49  9   from the Southern District that would say that even if my

16:33:53  10  client was negligent in lending out the boat, that in itself,

16:33:57  11  that negligence would constitute a fortuity, a fortuitous loss,

16:34:02  12  shifting the burden, at that point, to the insured to prove a

16:34:08  13  specific exclusion or a breach of a condition under the policy.

16:34:15  14        THE COURT:  Do me a favor and cite that case to me so

16:34:21  15  I can go read it.

16:34:23  16        MR. LAURATO:  It's the Axis Reinsurance Co. versus

16:34:27  17  Henley, H-e-n-l-e-y.  It's a 2009 West Law 3416248.  I'm sorry,

16:34:35  18  it's a Northern District of Florida case.

16:34:38  19        It says, "Loss due to negligence of the insured or its

16:34:42  20  agents has generally been held to be fortuitous, and absent an

16:34:46  21  express exclusion, is covered by an all-risk policy."

16:34:51  22        There's another case, and it's cited in your -- the

16:34:52  23  entire shifting burden of proof here is well-established.  It's

16:34:56  24  the cases that the Eleventh Circuit and the Fifth Circuit cases

16:35:00  25  --

16:35:02   1          THE COURT:  I agree with you that the defendant

16:35:06   2   insurance company has the burden to prove an exclusion or

16:35:11   3   exception.

16:35:11   4          MR. LAURATO:  Judge, there's another case that I

16:35:13   5   wanted to point out on the fortuitous loss and the burden on

16:35:19   6   the plaintiff.

16:35:20   7          THE COURT:  That is what is of interest to me because

16:35:25   8   I'm not familiar with what the plaintiff has to show as to a

16:35:29   9   fortuitous loss.

16:35:31   10          MR. LAURATO:  Essentially, in a marine policy, it's a

16:35:35   11   bit different.  Fortuitous events are accidents or casualties

16:35:39   12   of the sea, unforeseen or unexpected events.  That's,

16:35:43   13   essentially, what it is.  It's anything that's unintended.

16:35:49   14          Judge Cahn, I believe, has a good opinion in

16:35:51   15   discussing the fortuity of the loss.  What happened in that

16:35:56   16   particular case, Your Honor, was there was an issue about

16:35:58   17   whether the loss was fortuitous.

16:36:01   18          The insured, in that case, had claimed that a

16:36:04   19   manufacturer defect was fortuitous.  The insurance company in

16:36:09   20   that case said that can't be a fortuitous loss because the

16:36:12   21   manufacturer kind of made a defect.

16:36:15   22          He goes through a good analysis of what fortuity is

16:36:20   23   and shows that the burden on the plaintiff in those cases is

16:36:24   24   very, very minimal in these type of cases.

16:36:28   25          THE COURT:  Can you give me the cite?

16:36:30   1           MR. LAURATO:  Yes, I'm going to get that.  St. Paul

16:36:57   2   Fire and Marine Insurance Co. versus Lago Canyon, Inc.  That's

16:37:04   3   not a full cite because there was a third party involved in

16:37:05   4   that.  The cite is Southern District of Florida, 06-60889-JIC

16:37:19   5   at docket entry 229.

16:37:23   6           The controlling cases on this matter are --

16:37:30   7           THE COURT:  It's 066, so it was filed up in Fort

16:37:36   8   Lauderdale in 2006, and the case number is 0889?

16:37:42   9           MR. LAURATO:  60889.

16:37:46  10           THE COURT:  Okay.

16:37:48  11           MR. LAURATO:  There are probably two controlling

16:37:49  12   cases.  The case which controls, I believe, is the Morrison

16:37:54  13   Grain Co., Inc. versus Utica Mutual Insurance Company, and that

16:37:59  14   is at 632 F.2d 424.  That's the Fifth Circuit 1980, and Bonner

16:38:10  15   versus Prichard makes that binding precedent in the Eleventh

16:38:15  16   Circuit.

16:38:15  17           THE COURT:  Okay.

16:38:16  18           MR. LAURATO:  There's one final case which I think

16:38:19  19   discusses this fortuity.  It's a Middle District of Florida

16:38:24  20   case from 1996.  It's International Ship Repair and Marine

16:38:30  21   Services, Inc. versus St. Paul Fire and Marine Insurance Co.

16:38:34  22   It's 944 F.Supp 886, Middle District of Florida, 1996.

16:38:44  23           THE COURT:  What's the page number again?

16:38:49  24           MR. LAURATO:  886.

16:38:51  25           MR. GREEN:  886.

16:38:53  1          THE COURT:  886.

16:38:55  2          MR. LAURATO:  In the Eleventh Circuit we have

16:38:57  3  Banconacional de Nicaragua versus Argonaut Insurance Company.

16:39:10  4  That's 681 F.2d 1331, Eleventh Circuit, 1982.

16:39:17  5          Essentially, what those cases hold is that any

16:39:22  6  unintended loss, whatever it may be -- and I would point out to

16:39:28  7  the Court that there was significant evidence of seaworthiness

16:39:33  8  from my client.

16:39:35  9          The only person to testify to the boat prior to it

16:39:38  10  disappearing and missing was seaworthy, and then there is case

16:39:42  11  authority that says, "Upon evidence of seaworthiness in a

16:39:46  12  marine insurance policy, there is a presumption which arises

16:39:50  13  that the loss arose from a peril of the sea."

16:39:53  14          That presumption also applies in this particular case

16:39:56  15  because my client's testimony about the seaworthiness of the

16:40:00  16  new boat was not rebutted in any significant respect.

16:40:04  17          THE COURT:  How is there any showing that the boat

16:40:08  18  ever went into the water?  The evidence here is that the

16:40:15  19  trailer was never found or a vehicle with the trailer.

16:40:21  20  Ordinarily, if a vessel goes out, it doesn't take the trailer

16:40:25  21  with it.

16:40:27  22          MR. LAURATO:  Perhaps the boat was stolen by Suarez.

           23  It's not our burden to prove the cause.

16:40:32  24          THE COURT:  What I'm just saying is the whole

16:40:36  25  seaworthiness issue is probably not relevant to that if your

| | | |
|---|---|---|
| 16:40:41 | 1 | argument is going to be that Suarez -- if the theory is that |
| 16:40:45 | 2 | the boat was stolen by Suarez. |
| 16:40:48 | 3 | MR. LAURATO:  No theory here about cause.  It's not |
| 16:40:52 | 4 | required.  An insured is not required to prove cause under this |
| 16:40:58 | 5 | type of policy.  The case law is eminently clear on that point. |
| 16:41:10 | 6 | THE COURT:  Thank you very much. |
| 16:41:11 | 7 | Anything else? |
| 16:41:16 | 8 | MR. LAURATO:  No, Your Honor.  My arguments for |
| 16:41:18 | 9 | directed verdict are going to be -- and I don't want to |
| 16:41:21 | 10 | surprise the defendants here, but I guess I'll wait to hear |
| 16:41:28 | 11 | what their evidence is going to be. |
| 16:41:30 | 12 | THE COURT:  I think you heard all of their evidence |
| 16:41:33 | 13 | except for -- you can wait until tomorrow. |
| 16:41:37 | 14 | MR. LAURATO:  Judge, several important points that I'd |
| | 15 | like to bring to their attention and to this Court's attention. |
| 16:41:42 | 16 | Florida Statute 627.409 requires that, for a breach of any |
| 16:41:48 | 17 | warranty provision or clause of a wet marine insurance policy, |
| 16:41:54 | 18 | in order for that to be raised as a defense, in order for them |
| 16:41:57 | 19 | to raise that my client committed a fraud, in order for that to |
| 16:42:02 | 20 | be a defense, it's not simply enough to rely on the policy. |
| 16:42:06 | 21 | They have to prove that the fraud or misrepresentation |
| 16:42:09 | 22 | or the breach of the policy condition, in order for them to |
| 16:42:13 | 23 | rescind the policy, that it increased the hazard within the |
| 16:42:19 | 24 | means or control of the insured. |
| 16:42:21 | 25 | So they would have to show that any misrepresentation, |

16:42:25  1   assuming they can even get there, it's not enough to say under

16:42:30  2   a wet marine policy, under 627.409, it's not a defense to say

16:42:37  3   that we wouldn't have issued the policy had we known the truth.

16:42:42  4        They have to take a further step and they have to

16:42:46  5   prove that the fraud, misrepresentation, or the act increased

16:42:50  6   the hazard within the control of the insured.

16:42:52  7        The cases interpreting that -- and there's cases

16:42:54  8   involving airline pilots and cases very similar to this.

16:42:59  9   Essentially, what they say is it's simply not enough to say

16:43:03 10   that we would have issued a different premium.  They have to

16:43:07 11   show that the fraud or the misrepresentation or the concealment

16:43:10 12   increased the hazard within the control of Mr. Gamez, which

16:43:14 13   essentially requires them to prove that he was involved in this

16:43:18 14   stuff or this loss.

16:43:20 15        So that's going to be a hurdle which I don't know how

16:43:24 16   they're going to overcome.  I haven't heard any evidence of

16:43:27 17   that, but that's going to be a very big issue in this case

16:43:30 18   because that's the overriding statutory requirement before they

16:43:34 19   can even bring -- in order to sustain these type of defenses.

16:43:40 20   That's going to be part of our case.

16:43:43 21        I think you've foreseen some of the other defenses.  I

16:43:48 22   think we've demonstrated that this policy was issued on October

16:43:55 23   23rd, by their own records and by the face of the policy, yet

16:43:58 24   on October 26th, their own employees are requesting signed

16:44:03 25   completed copies of the application of insurance and driver's

JOHNSON - Cross

109

16:44:06  1   license, and that wasn't received until a later date.

16:44:11  2         So I'm unclear about how they're going to meet any

16:44:17  3   burden relative to that policy of insurance.  I don't know what

16:44:21  4   evidence they're going to put on.

16:44:26  5         MR. GREEN:  If the plaintiff's argument is that our

16:44:28  6   policy is void based on what he's representing, why are we

16:44:33  7   here?

16:44:33  8         THE COURT:  He's not representing that.

16:44:35  9         MR. GREEN:  Maybe I'm being a bit facetious, Your

16:44:39  10  Honor, but that's the direction that he's going.

16:44:41  11        THE COURT:  I don't think so.

16:44:43  12        MR. GREEN:  I don't think so either, but his client

16:44:47  13  had an obligation to operate within the bounds of the policy

16:44:52  14  regardless of when it attached.

16:44:54  15        MR. LAURATO:  I'm just speaking in regards to their

16:44:57  16  defense about misrepresentations in the application of

16:45:01  17  insurance.  If they issued the policy of insurance without the

16:45:06  18  benefit of the application, then it is not a basis and could

16:45:10  19  not have been a basis for --

16:45:12  20        THE COURT:  That they relied on the application?

16:45:15  21        MR. LAURATO:  Excuse me?

16:45:18  22        THE COURT:  That they relied on the application.

16:45:22  23        MR. LAURATO:  That is absolutely correct.  That's a

16:45:27  24  basic element of their proof, which is materiality.

16:45:29  25        THE COURT:  The bottom line is, what he's telling you

| 16:45:32 | 1 | is that you've got a lot of defenses, Mr. Green.  Maybe you |
| 16:45:36 | 2 | want to think about which ones are your strongest ones.  He's |
| 16:45:43 | 3 | planning on hoisting you on your own petard on the application |
| 16:45:49 | 4 | aspect. |
| 16:45:51 | 5 | Based on what I have heard as far as a directed |
| 16:46:00 | 6 | verdict at the end of the plaintiff's case, the points that you |
| 16:46:09 | 7 | are arguing are better addressed, at least under Eleventh |
| 16:46:19 | 8 | Circuit case law, with the affirmative defenses that attack |
| 16:46:24 | 9 | because there is no dispute that a policy was issued, and that |
| 16:46:30 | 10 | the policy was in existence, and that it was void. |
| 16:46:36 | 11 | There are two provisions in the contract, the grounds |
| 16:46:39 | 12 | for voiding, and those really come within the responsibilities |
| 16:46:43 | 13 | of the defendant to prove up on an affirmative defense. |
| 16:46:51 | 14 | So for the purposes of the motion for directed verdict |
| 16:47:00 | 15 | at the end of the plaintiff's case, I'm going to go look at the |
| 16:47:03 | 16 | case law to see if, in fact, it is sufficient.  I mean, what is |
| 16:47:07 | 17 | the standard to prove as to fortuitous.  I think that there's |
| 16:47:13 | 18 | enough of a disputed issue of fact, based on the evidence that |
| 16:47:17 | 19 | was presented, as to whether or not it was a fortuitous loss. |
| 16:47:22 | 20 | I will deny the motion for directed verdict as to all |
| 16:47:29 | 21 | of the elements of the plaintiff's -- it's not clear enough |
| 16:47:34 | 22 | that I can decide it as a matter of law, and therefore, it's |
| 16:47:40 | 23 | something that the plaintiff needs to put on evidence as far as |
| 16:47:45 | 24 | the affirmative defenses. |
| 16:47:45 | 25 | I will share with both sides that usually, once there |

16:47:50  1   are affirmative defenses and you put on that evidence, and

16:47:53  2   particularly when there's fraud involved or allegations of

16:47:56  3   fraud, those cases go to the jury.

16:48:01  4          You can make your motions for directed verdict.  You

16:48:05  5   should probably do that so you cover yourself in the event of

16:48:10  6   an appeal, but for the most part, I anticipate that this case

16:48:13  7   will go to the jury.

          8                        **********

16:48:14  9

         10                    C E R T I F I C A T E

         11      I hereby certify that the foregoing is an accurate

         12   transcription of proceedings in the above-entitled matter.

         13

         14

         15

         16                       /S/ ROBIN MARIE DISPENZIERI, RPR

         17   _____    _____
              DATE FILED          ROBIN MARIE DISPENZIERI, RPR-CP
                                   Official Federal Court Reporter
         18                        United States District Court
                                   400 N. Miami Avenue, Ste. 08S67
         19                        Miami, FL  33128 - 305/523-5659
                                   Email:  Rdispenzieri@gmail.com
         20

         21

         22

         23

         24

         25

## A

**able** 11:5,7 36:17 46:2 63:10
**about** 11:15 12:12,15,18 15:3 16:24 17:24 19:21 21:5 25:15 28:17 29:17 29:18,20 30:3 31:1 39:17 41:13 42:12 45:21 46:3 53:6,7,11,12 55:8 60:12 63:3,16 65:7 66:1 70:12 71:16 75:1,7,9,10 76:20 78:2 79:3 81:12,14,22,23,23 83:13,19 84:4,11 91:4 92:22 96:10 99:8 102:19 104:16 106:15 107:3 109:2,16 110:2
**above** 97:13
**above-entitled** 111:12
**absent** 103:20
**absolutely** 109:23
**acceleration** 57:4 62:23
**accept** 82:16,24 85:11
**accidental** 100:22 101:15,19,24
**accidentally** 5:12
**accidents** 104:11
**account** 42:14 56:5 62:17,19 68:4,5,6 69:12,13,21,23 70:3,10 96:4
**accurate** 23:10,14 111:11
**accurateness** 39:9
**ACE** 1:7 29:2,4 34:24 35:1,8,10,21,25 36:10 37:10,13,16,18 40:9 45:1,2,3 46:6,18 49:17 78:14,22,25 79:23 80:16,19 83:22 84:3,23,25 85:10,19 89:7,17 90:12 92:9 93:9,12 95:16 98:15
**ACE's** 35:24 36:25 84:12
**acknowledge** 46:23
**acknowledged** 22:13
**acronyms** 74:3
**act** 49:10,13 50:16,18 108:5
**acted** 99:15
**acting** 5:18
**action** 92:11,19
**actions** 93:11
**activity** 45:18 46:8,25 47:9 51:4,11
**acts** 49:5,6,8
**actual** 28:6 29:6,7,22 62:11 69:25 87:21 92:14
**actually** 19:2 21:7 24:22 25:16 29:20 30:22,23 52:15 65:6 67:6 75:15 94:9 96:24 97:5,19
**additional** 54:14 87:10 88:5,11,12 89:4,8 93:19 98:18 99:7,10,13,20 99:24 100:1,4
**Additionally** 11:22 94:17 99:14
**address** 38:8 84:2 95:2,5,8,8,12,24 96:3,6,17,24,25 97:8,9,9,10,11,13 97:19,20 101:2
**addressed** 40:16 110:7
**admissions** 94:15
**admitted** 12:24 22:12
**advantageous** 98:13
**advise** 9:23 20:5 22:19 28:12 35:1
**advised** 7:13,21 9:20 15:6 19:24 21:17 21:21,24 22:9 25:7 35:3 45:7 46:24 47:1 51:4,10
**advisement** 92:4
**affair** 99:24 100:3
**affirmative** 101:7 110:8,13,24 111:1
**Afghanistan** 17:18
**after** 7:13,21 8:6,16 9:16 21:4,12 27:24 34:5 36:11,12,14 37:13,14,16 42:22 43:21 46:14 51:23 52:8 53:15 53:16 56:21 81:10 98:4
**afterwards** 8:10
**again** 6:21 7:16 8:2,12,19 9:1 10:20 19:23 25:2 27:10,11 28:17 34:24 36:1,6 40:20 46:16 47:19 48:1 60:9 61:15 75:16 98:10 102:19 105:23
**against** 94:15
**agency** 84:20,21
**agent** 25:11,12,14,18,24,24 26:7,14,23 27:1,3,5,10,16 28:2,8,12,21 45:14 46:20,22 94:17 99:16 102:18
**agents** 103:20
**ago** 28:18
**agree** 8:15 38:7 86:19 104:1
**agreed** 71:9 86:21
**ahead** 39:13 54:9
**aid** 54:4
**airline** 108:8

**Alex** 56:25 59:9
**Alexis** 40:19 45:11 47:18 60:1,7 61:20
**Alfredo** 7:14,22 9:17 19:21 42:7 55:25 58:14 66:2
**Alfredo's** 36:6
**allegations** 111:2
**alleged** 74:25
**allegedly** 99:1
**allow** 14:11 27:19,22 93:12
**allowed** 12:23 94:19
**all-risk** 101:12,16 103:21
**almost** 5:17 89:11
**alone** 103:5
**along** 19:12 27:3
**always** 32:12 81:17 94:25
**America** 69:16,19
**AMERICAN** 1:7
**amount** 64:7 67:24 68:16,19,21,23,25 69:1,3,5,6
**analogy** 23:15,16
**analysis** 104:22
**and/or** 98:6
**another** 23:2 31:13 41:18 53:24 56:9 83:11 103:22 104:4
**answer** 16:12 27:25 38:9 41:3 47:4 67:11 70:4
**answered** 26:16 56:22 57:17 66:11
**answering** 60:1,6
**anticipate** 111:6
**anybody** 27:3 48:7 53:6 73:16
**anymore** 32:15 80:18
**anyone** 24:1,4 28:22,24 38:15 53:11 53:11 55:6,15 100:1
**anything** 7:17 9:9 37:5 52:12 73:20 81:19,23 92:9 98:4 102:13,14 104:13 107:7
**anywhere** 97:20
**apologies** 74:22
**apologize** 94:11
**appeal** 111:6
**appear** 6:9
**APPEARANCES** 1:13
**application** 51:22 52:8,10,13 79:21,22 81:1,8,13 82:10,16 83:7,20 86:12 87:1 89:18 90:11,22 91:5,11,16 92:12,15,15 93:15 95:5,6,13 96:7 97:6,20,24 98:18 99:8,11,15,16,19 100:15 108:25 109:16,18,20,22 110:3
**applications** 80:5,16,19
**applies** 106:14
**appreciate** 13:17 67:18,22 72:6 99:7
**approach** 64:8 66:16
**appropriate** 101:1,8
**approved** 64:23
**approximately** 62:25
**area** 52:22 69:14
**Argonaut** 106:3
**arguing** 110:7
**argument** 100:17 107:1 109:5
**argumentative** 19:13
**arguments** 107:8
**arises** 106:12
**arose** 106:13
**around** 5:18 85:6
**arrive** 33:1
**arrived** 32:8 33:2 48:25 76:11 93:22
**article** 25:16 27:11 45:14
**asked** 18:22 26:16 39:18 50:9 53:17 55:8 56:22 59:19 60:18 65:9,21,22 65:16 66:10
**asking** 13:19 25:14 43:1 50:11 60:6 65:16 66:10
**asks** 41:24 75:9 96:20
**aspect** 110:4
**assess** 75:24 88:21 89:3 95:16
**assessed** 87:12
**assigned** 69:19,22 99:4
**assist** 58:18,19
**assistance** 63:25
**associated** 68:5,6 69:13
**assume** 23:13 46:13 96:20
**assuming** 37:16 46:9 108:1
**attached** 109:14
**attachment** 92:16
**attack** 110:8
**attempt** 82:36:24
**attended** 65:12 66:3
**attention** 6:8,11 75:25 107:15,15

**attorneys** 35:8
**audio** 57:1 59:9,10 60:4,13
**audiotape** 12:17
**audits** 91:18
**August** 66:23,24 67:4
**Austin** 1:15
**authority** 39:12 106:11
**Ave** 1:19
**Avenue** 2:3 111:18
**average** 63:1
**aware** 10:4 80:4 82:12 86:24
**away** 5:17 89:11
**Axis** 103:16
**a.m** 1:7 5:2 53:9 54:11

## B

**back** 6:18 10:9 16:12 18:24 24:4 53:7 53:15 54:6,12 56:8 84:21 86:18 89:10,14 103:4
**backtrack** 59:23
**backyard** 30:7,19 96:4
**badge** 5:17
**Bahamas** 91:12 99:25
**ballet** 41:17
**Banconacional** 106:3
**bank** 42:14 43:7 67:20,23 68:5,17 69:12,15,19
**bars** 99:25
**base** 80:5 86:25
**based** 23:16,22 36:7 45:13 48:9 49:15,21,25 52:2 76:4 82:24 93:14 100:18 109:6 110:5,18
**basic** 109:24
**basically** 63:11
**basis** 12:14 70:3 74:2,10 80:11 83:11 87:12 89:18 100:15 109:18 109:19
**Beach** 1:19
**became** 82:12
**become** 95:14
**becomes** 93:16
**before** 1:11 5:6 8:10 17:17,18 19:1 20:11,14 21:12 22:4,18 34:2 35:9 37:25 40:8 51:22 52:8,15,17,18,25 53:1,1 67:8 73:18 93:22 103:2 108:18
**begin** 5:6
**beginning** 51:19
**begins** 3:18,20,22,24 4:3,5,7 49:4
**behalf** 89:25
**being** 27:7 44:19 45:8 56:15 91:16 93:18 109:9
**belief** 45:7 48:9 49:15
**believe** 11:3 12:13 14:3,16 18:2 26:25 28:5 31:8 32:25 35:6,22 38:1 40:15 41:2 46:19 48:14,17,18 58:24 59:2 62:20 64:11 66:3 68:17 88:8 90:9 96:17 98:6 100:20 101:1,8 104:14 105:12
**believed** 27:6
**belong** 94:19
**bench** 56:15
**benefit** 109:18
**besides** 24:5
**best** 26:25
**better** 10:9 110:7
**between** 13:10,22 37:17 62:25 93:16
**Beyond** 89:6
**big** 108:17
**bigger** 97:7
**binders** 64:14
**binding** 102:2 105:15
**bit** 10:8 18:7 26:20 73:11 85:6 104:11 109:9
**blank** 69:21
**bleed** 94:23
**boat** 7:6,7,8,9,15,21,23,24,25 8:6,7,14 8:16,17 9:16 12:8 18:19,23 19:17 19:21 20:4,6 22:20 27:7,12 28:22 28:25 29:15,16,24 30:7,20,23 31:12 31:15,23,23 32:12,5,8,12,16 36:14 37:16 39:10 40:2,19,20,23 41:8,11 42:7,11,19,22,25 43:2,20,21,23 44:11,13 45:4,7,15,25 46:1,3,8,17 46:24 47:13,18,19,22,24 48:6 51:4 51:10 55:20,21 57:3,8,10,14 58:5 58:18 59:4,5,6,7 60:2,3,61:19 62:9

62:13,14,22,25 63:9,12,18,22,23 67:9 69:15 70:11,16,16 72:25 73:17 74:25 88:9,10,20,23,24 89:11,5,9,10 96:5,7 97:25 99:21,24 103:3,4,10 106:9,16,17,22 107:2
**boating** 63:14 99:23,23
**boats** 31:13 43:5 57:6 63:5 72:22
**Bonner** 105:14
**book** 62:17 64:12,13 68:13 81:6
**books** 20:22 33:12
**both** 17:19 47:2 56:24 92:14 110:25
**bottom** 67:21 109:25
**Boulevard** 1:23
**bounds** 109:13
**breach** 92:8 93:5 94:1 101:21 103:13 107:16,22
**breached** 92:19 93:9
**breaching** 92:9
**break** 53:5 55:5,9 56:17
**Breck** 17:19
**bring** 6:7,10 54:8 71:16 107:15 108:19
**browbeat** 8:3
**Brown** 1:22
**burden** 100:8,21,25 101:20 102:4,5,14 103:12,23 104:2,5,23 106:23 109:3
**business** 36:22 91:17
**buying** 57:14

## C

**C** 111:10,10
**Cabin** 31:10
**Cahn** 104:14
**calendar** 53:18 54:3,15
**call** 16:15 18:10,12 19:25 20:16 23:2 24:4,7 36:21 37:16 38:16 50:24 72:25 75:10,11 76:1,5,6
**called** 16:11,12 20:13,14,14 21:21 22:7,18 24:1,17,20 29:10 32:13,17 33:3 36:6,16,25 37:10,13
**caller** 16:4
**calling** 16:9 24:15,18,18 71:9 83:21
**calls** 15:7,25 16:3,6,22,24 20:15 23:19 23:22 24:10 37:11 73:16 76:5,5 32:17 100:3
**camera** 6:13
**cameras** 6:8
**camper** 6:13
**Canyon** 105:2
**capitulate** 50:3
**car** 74:7
**card** 38:14,16
**careful** 77:18
**carefully** 14:10
**case** 1:3 20:24 36:17 41:17 49:21 53:6 53:7 65:13 71:18 73:4,17 76:12 77:17 81:4 82:12 84:7 91:8,11 92:11,17,21 93:7 94:4,9,16 95:11 95:20,22 100:9 102:10,15,23 103:1 103:8,14,18,22 104:4,16,18,20 105:8,12,18,20 106:10,14 107:5 108:17,20 110:6,8,15,16 111:6
**cases** 103:7,24,24 104:23,24 105:6,12 106:5 108:7,7,8 111:3
**Cass** 1:16
**casualties** 104:11
**catastrophes** 88:25
**catch** 60:5
**cats** 88:25
**cause** 92:10 102:4,6,15,17 106:23 107:3,4
**caused** 47:17 49:7
**cell** 16:25 23:19 36:23 55:3
**center** 76:6
**certain** 8:20 23:13 31:7 41:24 50:8 70:9,14
**Certainly** 6:24 11:11 65:10
**Certificate** 3:10
**certify** 111:11
**change** 58:6 98:7
**changed** 85:5
**changing** 98:11
**charge** 100:12
**charged** 57:4 62:22
**check** 62:20
**Cheryl** 3:7 77:15 78:6,8
**Chevy** 31:6,6

Chief 86:4
chronological 8:9,13 13:15,19 19:4,23 20:15
chronologically 25:3
circled 68:16,21,23,25 69:14
Circuit 100:20 101:11 102:1,12 103:24,24 105:14,16 106:2,4 110:8
circumstance 51:21
circumstances 52:7
cite 103:14 104:25 105:3,4
cited 103:22
claim 37:10 85:12 92:8,18 93:5,6 94:1
claimed 104:18
claims 85:14 99:17
clarification 41:2
clarified 19:1
clarify 8:19 13:12 41:4 42:11 50:17 57:1,16 59:11
clarity 30:14
class 31:9
clause 49:12 107:17
cleaning 62:9
clear 14:4 22:3 92:11 93:14 94:21,25 96:7 98:14,17,23 99:20 100:2 101:25 107:5 110:21
clearer 20:25
client 81:1 100:10 103:4,10 106:8 107:19 109:12
client's 106:15
close 63:17 70:15
closed 57:9 85:5
Co 103:16 105:2,13,21
Coast 6:5,18 7:5,13,22 8:5,7,15,16 9:15,16,20 10:14,17 11:1,5,8,16,19 12:4,7,11,18 13:22 14:5 15:4,6,17 15:17 16:2,17,21,23 18:9 19:3,9,16 19:24,25 20:10,13 22:19 23:1,6 24:6,12,17,18 25:7 28:13,22 29:25 30:3 36:12,14 37:14 40:21,22,23 45:6 46:1,7,9,11,13,24 47:2,8,11,19 47:21,21 50:23 51:3,10 61:17,23 94:11,12
code 96:11 97:1,2,4,10,11
collectively 87:14
combined 67:24 68:18
come 20:21 27:3 55:12,18 56:8 63:8 75:25 80:5,18,19 86:18 90:15 103:4 110:12
comfortable 78:1
coming 56:16 72:5 80:10 101:9
commented 63:7
committed 107:19
communication 22:2
communications 10:17,19,21
company 1:7 52:5 62:20 78:14 84:22 88:19 102:5 104:2,19 105:13 106:3
complainant 74:5
complete 25:2 39:7,9 64:14 96:8,19 97:6
completed 37:25 38:23 45:15 99:15 108:25
completely 96:8,8
Completeness 9:1 41:15
comply 94:2
conceal 51:20
concealment 51:17,18 100:24 108:11
conceals 52:6
concerned 60:6 90:20
conclusion 45:20
condition 101:22 103:13 107:22
conditions 95:13
conduct 102:22
conducting 25:9
Conference 3:15,18,20,22,24 4:1,3,5,7 77:9,20,24
confirm 43:7
confused 30:24
connected 57:12 58:3 65:20
consider 14:9 95:18
considered 62:3,9
constitute 103:11
contact 5:9 6:5 20:17
contained 92:12
CONTENTS 3:1
context 11:8 12:14 23:12
Continued 5:25
contract 45:22,23 49:25 51:21 52:8 92:8,9,19,20 93:5,12,15,16 94:1 96:23 100:13,14 103:8 110:11

contrary 66:12
contribute 42:13
contributed 43:8
Contributions 43:6
control 9:10 107:24 108:6,12
controlling 101:11 105:6,11
controls 105:12
Cont'd 3:4 4:1 5:24
conversation 6:18 7:4 9:19 10:1,14 11:4,10,16 12:3 13:4,4,10 14:4,5,8 15:4,19 16:23 17:25 19:3,9 20:5 21:11 22:3,4 23:1 27:5 28:2
conversations 10:23 11:1,8 12:11,14 12:17 15:1,21,22
convert 63:15
convicted 49:10
copies 12:23 53:22 108:25
copy 34:21 35:22
corporation 14:12 81:17 84:8
corporations 65:3 83:17
correct 7:15,23 8:8 12:5,9 17:2 19:7 20:1,8,13 21:25 22:10,14 23:3 25:3 25:11 26:24 27:1 28:25 31:16 33:24 34:9,10,24 36:11 38:20 39:15 40:7 40:9,11,13 41:24 42:20 44:4,19,23 45:1,4,8 46:25 48:4,5,7,10,13 50:1 50:22 51:5 52:10 65:13,23 72:10 76:22,23 77:11 79:2,6 84:16,19,24 88:3,19 90:5,6 109:23
correctly 99:12
correlate 60:18
cost 62:25
counsel 5:9 20:23 40:15 50:9 55:12 56:12,16,18 59:17 62:1 67:18,22 81:6 92:3
counter 93:23
County 32:20
couple 10:25 11:3 15:3 40:22 47:20 55:9
course 5:10 21:8 66:6
court 2:3 19:21,23,25 4:4,6,8 5:3 6:12,25 8:23 9:3,10,25 10:11,20 11:13,21,23 12:1,21 13:1,1,7,8,21 13:25 14:7 15:11,16 16:5 17:9,13 18:2,16 19:6,14 20:21,23 21:3 22:23 23:5 24:11 25:21 26:2,11,17 27:9,19,22 28:16 30:9,16 31:21 32:4 33:12,14 34:4,14 37:2,3,12,21 38:6,9 41:5,12,16,20 42:2 43:14 45:21 49:11 51:7,13 52:21 53:5 53:10,14,21 54:1,3,8,12,16,24 55:3 55:6,12,17,20,25 56:4,8,10,11,24 57:3,18,23 58:2,10,12,13 59:19,22 60:8,12,17,22,25 61:3,8,12,14,22,25 62:3,6,7 64:6,10,16,18 65:5,10,25 66:5,13,17,19,22,24 67:11,13,17,17 67:20 68:4,10,11 70:4,7,13,17,22 71:5,23 72:1,11 73:9,10,22 74:1,13 74:20 75:4,10,16,25 76:9 77:7,10 77:12,17,25 79:14 80:1,8,13,14,21 80:24 81:6,16,24 82:2,3,6,9,13,18 82:20 83:1,5,9,16,21 84:6,13,18,21 84:23,25 85:3,7,15,21 86:2,6,10 87:15,20 88:13 89:23 90:15,17,20 90:24 91:1,21,23 92:3,23,24 93:2 93:24 94:3,20 95:5,18 96:1,10,14 97:1,21 98:4,12,12,13 100:5,12 101:4,23 102:7,16,20,24 103:14 104:1,7,25 105:7,10,17,23 106:1,7 106:17,24 107:6,12 109:8,11,20,22 109:25 111:17,18
Courthouse 2:2
courtroom 5:2,19 53:9 54:11 71:4,19 77:9,20,24
Court's 6:8,10 107:15
cousin 7:14,22 8:7,17 12:8 19:20 20:10,16 22:9 23:25 29:12,16 30:1 39:9,11,14 41:8 42:7,8 43:22 44:10 44:15,18 47:25 48:3 59:6 61:18 62:19 94:14 98:6,20 103:3,3
cousin's 29:11 30:7,19
cover 41:20 49:14 66:5,19 111:5
coverage 50:14 51:18 56:5 62:18 92:16 93:13 101:14
covered 47:3 49:8 50:16 61:21 101:14 103:21
creates 101:16
credit 57:19 69:18 94:20 98:20

crime 73:8
criminal 49:10 84:6
criteria 91:3,4
cross 5:24 72:11 90:1
cross-examination 3:4,9 5:5 6:16 15:18 23:8 71:14 89:23
Cuddy 31:10
cumulative 52:19
cups 78:1
current 72:7
currently 78:18
curtilage 96:4
custodian 81:18
C-h-e-r-y-l 78:6

D

Dade 32:20
Dadeland 1:23
daily 74:2
damage 49:7 101:15
date 13:25 14:2 16:3 21:6,7,11 25:4,6 29:21 32:23 33:2,2,19,25 34:2,13 36:1,2,3,9 38:21 39:17 68:21 72:18 109:1 111:17
dated 42:16
dates 13:13 16:22 19:5 27:12 69:7
Datran 1:23
David 17:14
day 1:12 11:2 29:20 36:7 59:7 87:4
days 21:4 22:17 37:25 69:8
de 106:3
dealer 63:8
dealt 84:6
December 6:18 10:24 13:9,14 15:8 16:13 18:11 32:25 33:21 36:4 69:7
decide 82:16,23 110:22
decided 47:21
decision 83:23 85:11,23 86:7,9,10,19 86:21,25 87:13 98:16
decisions 85:8 86:3
deemed 43:6
defect 100:19
defendant 1:8,21 71:12 104:1 110:13
defendants 107:10
defendant's 8:24 9:4,7 12:22 14:19 17:8 20:18 21:2 22:3 59:13,15 72:2 77:17 78:8
defense 13:9 71:8,15 77:15 101:3 107:18,20 108:2 109:16 110:13
defenses 100:8 101:7 108:19,21 110:1 110:8,24 111:1
definitely 89:20
demonstrated 108:22
demonstrative 54:4
deny 85:12 110:20
department 29:18 30:5,19 31:18,24 32:13,17 46:2 71:6 72:9,16,20 79:1 85:14
depends 6:23
deposition 35:7 65:12 66:4,7,10,15,20 66:22 67:3,6 98:1,5,10
DEPUTY 71:4,19 77:20,24
describe 79:14 80:9 88:22
Description 3:14
Descriptions 3:16 4:2
details 46:11 58:19
detective 24:22 25:9,22 28:23 30:3 46:14 73:4
determine 91:4
device 57:6 63:5
difference 69:4 97:7
different 5:11 13:13 14:17 20:21 25:18 30:23 71:5 97:1,3 98:17 104:11 108:10
dire 5:7
direct 3:6,8 17:9 22:9,12 39:6 55:2,11 71:13 72:3,11 76:2 78:9 100:22 101:15
directed 92:2,7 93:4 100:7 101:2,6 107:9 110:5,14,20 111:4
direction 30:21 109:10
directly 29:8
disappearing 106:10
discern 11:7
disclose 46:10 95:15 99:9
disclosed 83:14
disclosure 99:10

discussed 91:3
discusses 105:19
discussing 6:5,17 104:15
dishonest 48:23 49:5,6,7,13 50:15,18
dispatch 76:6,6
DISPENZIERI 2:1 111:16,17
dispute 110:9
disputed 110:18
disregard 14:18 38:9
dissertation 56:14
distinction 23:15
District 1:1,1,11 72:8 103:9,18 105:4 105:19,22 111:18
DIVISION 1:2
docket 105:5
document 33:1 17,22 34:5,8 35:17 41:7 42:1 49:15,22 57:11,18,19,23 58:2 67:2 69:17 74:19 90:13
documents 33:1
documents 32:1,3,4,8 57:13 63:24 64:2,19 65:7 81:10
doing 27:17 28:3 75:20 82:20
doll 56:12
dollar 57:4
done 7:16 37:23 83:13,14
door 90:18
double 69:5
doubt 50:11,13 70:12
down 7:17 10:11 32:1 41:4 54:24 58:6 61:6 67:13 70:18 72:5 73:10,11 90:17 91:23 92:23,24
draw 83:13
driver's 108:25
due 69:6 103:19
DUNNAVANT 1:15
during 5:10 7:4 12:3 35:10 42:12,22 43:2 55:4 66:6,10,15 72:20 78:22 94:10,11 98:14

E

E 111:10,10
each 58:15,21,25 62:25 63:2
earlier 32:4 53:10 63:7 95:17
early 28:9
easier 20:23
easy 102:3
Edwin 3:5 71:25 72:2
EFT 70:1
either 80:17 85:10 86:19 109:12
electronic 70:1
Electronics 70:2
element 94:1 109:24
elements 92:10 93:8,25 97:23 110:21
elevator 5:13,13
Eleventh 100:20 101:11 102:1,2 103:24 105:15 106:2,4 110:7
eliminate 102:17
Email 1:17,20 2:4 111:19
Emails 1:24
eminently 107:5
employed 85:19
employee 62:4,10,11,13,14
employees 83:18 108:24
end 41:17 61:6 95:19 110:6,15
ended 24:2 92:20
engine 63:1,16
engines 57:4 62:22,25 63:2
enough 28:20 96:4 107:20 108:1,9 110:18,21
entered 30:6,19
entire 8:20 40:17 41:15 48:12,15 78:25 82:11 103:23
entrusted 49:9
entry 105:5
equal 98:7
equals 68:1
ERIN 1:15
Especially 88:24
ESQ 1:14,15,18,21,22
essentially 94:18 104:10,13 106:5 108:9,13
Essex 57:19 69:18
established 49:19 93:8
establishes 101:13
estate 65:3
EUO 95:23 98:1,5,23
Eurys 1:4 3:3 74:25 79:10

even 5:16 58:4 90:7 91:16 93:22 95:22
  98:8,9 99:17 103:9 108:1,19
evening 5:4
event 50:15 111:5
events 40:2 104:11,12
eventual 95:10
ever 22:19 24:1,4,15 25:7 28:3 29:2,6
  30:5,18 34:21 35:1,21 36:24 38:15
  45:24 58:23 64:23 99:5 106:18
every 42:14 44:14 53:22 76:5 87:4
everybody 78:2 100:3
everyone 5:4,4
everything 45:15 47:3 76:13
evidence 3:13 12:24 13:7 14:9,16
  66:12 92:8,11 93:8 94:3,25 95:19
  95:22 96:14 100:18 101:3,5,13
  102:7,8,24 103:2 106:7,11,18
  107:11,12 108:16 109:4 110:18,23
  111:1
exactly 10:16 58:17 59:3,12 88:20
examination 3:6,8 5:24 22:9,12 34:22
  35:6,11 39:6 54:21 71:13 72:3 78:9
  90:1
example 33:14
excellent 55:23
except 39:7 107:13
exception 104:3
EXCERPT 1:7,10
exclude 50:14
excluded 62:14
exclusion 45:18 100:23,24 101:21
  102:21,22 103:13,21 104:2
Excuse 13:12 68:21 109:21
excused 70:20 77:13 91:25
exhibit 8:23,24 9:4,7 12:21,22 13:5,6
  13:7,9,23 14:8,20 17:8 20:18 21:1,2
  22:3 33:4,13 35:15 39:2 41:2 48:20
  48:22 53:25 54:4,6,7,14,15,17 56:4
  57:21,24 59:10,13,15 60:21,22,24
  61:9,10 62:16,16 63:24 64:3,4,5
  67:20 68:13,15 70:9 95:7
exhibits 3:11,12 42:13 64:12,13 68:12
existence 110:10
expect 97:18
expedite 7:16
expense 57:5 62:24
experience 56:16 80:4 88:16 89:9,14
expert 49:16,20 80:6,7,8 83:12
explain 7:18 74:2
explanation 13:17
expound 47:5
express 50:13 103:21
expressing 50:11
extent 98:4,11
extra 68:2
eyes 10:10
E-mail 80:18
e-mailed 80:17 81:10

                    F

F 111:10
face 92:12,20 94:22 98:18 108:23
facetious 109:9
facie 109:13
fact 7:24 15:19,20,21 18:23 26:7 38:21
  46:14 51:13,21 91:15 92:10 96:1,10
  97:5,14 98:22 99:1,14 103:7 110:16
  110:18
facts 23:10,13 28:6 35:3 39:21 44:1
  46:10 52:7 81:3 82:22,24 85:25
  99:18
factual 85:25
failed 17:13
Fair 28:20
fairly 101:25
fairness 49:24 50:9
faith 98:20
familiar 32:22 55:25 58:14 66:1 80:15
  104:8
family 99:23 100:3
far 57:8 60:5 63:12 110:5,23
fast 57:4 62:23 73:10
favor 73:9 103:14
fax 80:18
faxed 80:17
February 69:8
Federal 2:2,2 111:17

feel 89:7
fell 38:1
Ferguson 2:2
few 26:23 59:2
Fifth 102:1 103:24 105:14
file 9:20,23 24:25 25:4,8,25 26:7,15
  32:14,18,21 35:22 76:21 77:1 79:8
  79:10,12,15,15,20 81:20,24 82:4,7,8
  82:11 83:1,2,6,9 84:11 85:8 90:21
filed 31:17 38:15 73:5 81:1 105:7
  111:17
files 35:23,24
fill 52:13 55:11 99:11
filled 39:11 81:9 99:19
final 105:18
find 53:21 64:9 73:2 85:24 93:9
findings 28:6
fine 81:21
finished 38:17 53:12
finishing 55:17
Fire 105:2,21
first 6:5 13:14 14:6 19:3 20:17 29:17
  29:19 32:16 34:22 45:11 58:10
  69:18 74:21 75:25 77:15 87:17
fish 40:20 47:18
fishing 57:5 62:23 99:4,5
fit 96:3
five 37:25
Fl. 1:16,19,24 2:3 111:19
flipping 17:13
floor 5:11,12
Florida 1:1,6 74:6,7 95:9 103:18
  105:4,19,22 107:16
focus 41:13 97:14
focusing 41:3
follow 55:19 56:10,20 58:12 62:2,6
  65:5 67:19 68:10 80:23 82:2 83:10
  84:13 90:16 91:1
following 5:21 28:13 32:22 83:25
follows 47:17
follow-up 21:24 56:23 65:4,8 70:16
follow-ups 65:25
foregoing 111:11
foreseen 108:21
forgot 57:5 55:5
form 29:4
former 102:1
Fort 105:7
fortuitous 19:19 102:2,8,25 103:5,7
  103:11,20 104:5,9,11,17,19,20
  110:17,19
fortuity 103:11 104:15,22 105:19
forward 10:8
found 46:17 106:19
foundation 80:1
four 82:19
fraud 51:17,18 100:24 107:19,21
  108:5,11 111:2,3
free 98:20
Friday 17:20 38:1
friend 16:9 24:3 29:16 30:1 40:3
  59:24,25 60:1,6
from 5:18,25 9:20 17:5 22:5 16:6,15,24
  18:10,13 23:2,25 24:4,8 32:20
  36:21 45:15 51:19 54:23 58:16
  62:19 65:3 68:1 69:3 74:5,7 76:1
  78:2 92:21 93:2,3 102:1 103:9
  105:20 106:8,13
front 17:22 20:18 33:17 39:2 87:5
full 39:12 47:17,24,25 48:2,3 57:9
  61:19 71:24 78:4 98:20 105:3
function 83:18 97:5
Funds 70:2
further 10:17 86:21 91:19 95:25 108:4
future 20:23
F.Supp 105:22
F.2d 105:14 106:4

                    G

gallon 57:8 63:12,14,15,16
gallons 63:15
Gamez 1:4 3:3 5:6 6:2,15 7:4,18 8:2
  9:14 12:3 13:10,22 14:5,24 15:24
  16:14 17:22 18:6 21:14 23:19 30:18
  33:17 41:7,23 43:8,18 47:4 48:25
  51:16 53:4,10 54:9,24 56:25 58:14
  62:8 64:3 65:12 66:3 67:13 68:12

70:9,18 74:25 76:1,2,11,12,18
  79:10 89:25 90:3 92:21 93:20,21
  94:2,8,10,11,17,22 95:10,11,15
  97:17 98:19 99:5,7 108:12
Gamez's 23:12 92:11,19 93:14 94:15
  99:16,22
gathering 75:11
gave 13:22 29:5,8,10 38:14 59:6 61:19
  64:15 98:19
general 11:21
generally 73:1 80:5 103:20
getting 56:14
ghostwriting 39:18,19
give 5:7 12:24 13:1 29:6 38:15 55:3,11
  55:20 59:4 60:10 61:17 64:10,13
  65:18 67:17 70:25 71:2,6 81:14
  101:9 104:25
given 47:24 49:20,24 67:7
gives 56:13
giving 27:22
glad 92:3
Glasstream 31:4,8,14,23 70:11,15
go 33:14,15 48:20 54:9 57:8 59:7
  60:18 61:6,11 63:2,4,12 68:15 76:2
  89:10,14 90:17,25 95:25 99:4,24,25
  103:15 110:15 111:3,7
God 71:21 77:22
goes 11:17 73:3 99:11 104:22 106:20
going 6:15 8:2 13:3,22 14:7,11 15:12
  17:19,22 19:12 21:13 23:5 27:19,20
  27:22,23 41:16 43:8 57:4 62:22,22
  54:3,5,20 55:7,15 65:7 66:13 76:4
  83:13 87:8 90:18 96:7 97:19 99:5
  99:12,20 100:4,23 105:1 107:1,9,11
  108:15,16,17,20 109:2,4,10 110:15
gone 16:11 30:1 32:16 42:19 51:13
good 5:3,16 6:2,3,3 23:16 78:12 86:13
  104:14,22
gotten 30:24 101:4
GPS 63:6
graciously 71:9
graduate 17:17 56:13
grant 101:14
Great 34:16
greater 69:5
green 1:21 3:4,6,8 5:6,23 6:1,14 7:2,3
  8:24 9:2,6,13 10:3,12,22 11:15,22
  11:25 12:2,22 13:16,24 14:3,23
  15:23 16:8 17:7,11,21 18:5,17
  19:15 21:2,6,9,13,15 22:25 23:18
  24:14 25:23 26:4,13,19 27:13,21
  28:1,19 30:11,14,17 31:22 33:4,6
  33:13,16 34:17 35:14,16 37:6,15
  38:8,11 41:6,20,22 42:3,5 43:17
  46:5 51:2,8,15 52:24 53:3,20 55:22
  56:7 57:13,19,21 65:5,6,11,22 66:3
  66:16,18,21,23,25 67:1 68:9 71:12
  71:13 72:4,13,14 73:13 74:9,15,22
  74:23 75:6,17 76:10 77:4,15 78:10
  79:18 80:2,3 81:19,25 83:7,22
  84:14 85:13,16 86:15 87:25 88:17
  89:21 90:13 91:22 92:5,6,23 93:1,3
  94:7 95:7,21 96:12,16 97:4,23
  105:25 109:5,9,12 110:1
grounds 110:11
Guard 6:5,18 7:5,14,22 8:5,7,15,16
  9:15,16,20 10:14,17 11:1,5,8,16,19
  12:4,7,11,18 13:22 14:5 15:5,6,17
  15:17 16:2,17,21,24 18:19 19:3,9,16
  19:24,25 20:10,13 22:19 23:1,6
  24:6,12,17,18 25:7 28:14,22 29:25
  30:3 36:12,14 37:14 40:21,22,23
  45:7 46:1,7,9,11,13,24 47:2,8,11,19
  47:21,21 50:23 51:4,10 61:17,23
  94:11,13
guess 23:15 45:13 69:21 83:3 107:10
guide 14:13
guidelines 91:7

                    H

half 63:3
handed 13:8
handing 54:16
handling 85:10 100:6
handwriting 39:22,24
handy 58:16,19

happen 103:5
happened 10:13 13:13 22:4,4 29:14
  29:23 38:12 39:21 45:4,24 46:1
  64:15 104:15
happens 43:2 71:17 86:17 101:20
happy 6:13 101:6
Hassun 7:14,22 9:17 19:21,25,25 20:5
  20:10 21:19,21,25 22:4,13,16 28:14
  39:20 40:1 41:8,10 42:7 43:5 56:1
  58:15 59:1 65:23 66:2,4,10,15 67:7
  96:18,22 97:6,25 98:20,24 99:2,3
  99:15,15,20
Hassun's 39:22,24 65:12 67:3 94:25
having 11:1 16:23 84:6 101:3
hazard 107:23 108:6,12
head 23:17
heads-up 101:9
hear 5:8 6:21 10:6,9 13:3 14:8,17,19
  23:11 78:3 92:4,25 101:8 107:10
heard 7:10 16:2 94:20,20 100:7
  107:12 108:16 110:5
hearsay 15:10 17:5 18:15 23:4 26:9
  27:8 30:8 31:19 37:11 38:4 50:25
  51:6,12 79:13
held 78:22 103:20
hello 5:16 90:3
help 14:12 56:18 59:17,20 71:21 77:22
helpful 56:17
helping 11:19
Henley 103:17
her 56:13 81:13,24 83:6,8,21 85:9
  89:14 90:13,21
he'll 7:1
higher 47:15
highlight 41:12 48:23
highlighted 40:18 42:1
him 7:7 11:13 17:9,10 18:2 20:3 24:2
  27:4,15 38:25 42:2 47:25 52:7
  58:16,20 61:19 62:12 64:13 65:7
  66:4,9,13,19 71:16 94:13,20 99:9
  100:8
himself 92:21 94:10,11
hired 35:9 62:8
history 87:7 88:12,13,15 89:11,14
HIevineesq@aol.com 1:20
hoisting 110:3
hold 106:5
home 30:20 33:9,10
Honor 5:23 6:7 8:25 11:12,15,22,25
  13:24 14:3 15:14 17:11 18:1 19:13
  21:2 22:22,24 24:9 26:9 27:21 38:3
  41:1,14,18 45:19 52:20 53:3,19,20
  54:7,22 57:20,25 60:10 63:20 64:8
  64:11 65:4,6 66:15,25 67:15 71:3
  72:13 74:22 76:7 77:6,8 79:24 80:2
  80:11 81:25 84:17 90:19 91:20,22
  92:6 93:1,4 94:7 95:8,21 96:12,16
  97:4 100:6 101:2,10 104:16 107:8
  109:10
HONORABLE 1:11
hope 5:4
hopefully 68:12
horse 63:4
horsepower 63:1,2
hour 63:15
house 29:11 36:6 94:25
Howard 1:18,18
hull 73:21,24
human 27:7 45:8
hurdle 108:15
hurricanes 88:25
hurt 80:25,25
husband 89:13
hypothetical 37:19
H-e-n-l-e-y 103:17

                    I

identification 3:13 73:23,25
identified 15:25 16:16 95:3
identify 11:20 14:13 31:23
II 1:23
illegal 45:18 46:8,25 47:9 48:24 49:5,6
  49:7,13 50:15,17 51:4,11
imagine 56:15 82:8
impeached 93:20 98:3
important 13:20 76:13 87:20 88:2,19
  88:21 89:1,7 107:14

**importantly** 95:2
**improper** 37:19 45:19 81:13 84:5
**lnc** 105:2,13,21
**inches** 78:2
**incident** 72:21 74:24 75:7,9,23 76:11
**included** 47:2 93:16
**income** 57:14 64:6,7,20,24
**incomplete** 37:5,7
**incorrect** 22:21 34:25 35:2,4 46:21
89:17 96:8
**increased** 107:23 108:5,12
**independent** 28:4 76:17 94:12
**independently** 87:12,14
**INDEX** 3:11
**indicate** 18:9,12,18 27:16 28:3 35:17
36:25 57:13
**indicated** 12:3,7 15:7 16:16 32:3
33:22 35:10 45:6 48:6,12 51:3
76:22
**indicates** 34:12
**indication** 13:25 37:9 99:6
**indicia** 94:9
**individuals** 73:15
**information** 18:13 21:18,19 35:25
36:7 41:24 50:23 73:3,7,18 75:11
75:24 76:14,15,16,20,25 84:20
86:16,20,24 87:22 95:15 99:8,9
**initial** 28:13 101:10
**initially** 32:13
**inquiry** 41:23
**Insofar** 100:23
**install** 63:8
**instance** 97:16
**instantly** 63:11
**instead** 14:19
**instruct** 5:8
**instruction** 5:6,21 13:2 15:15 53:10
**insurance** 1:7 8:1 49:16,20 51:22,22
52:5,8,10 56:5 62:17,20 78:14
79:21,22 80:16 84:22 85:10 88:19
90:5 91:12 93:15 95:3,6 100:13
101:11,12,16 102:5 103:8 104:2,19
105:2,13,21 106:3,12 107:17
108:25 109:3,17,17
**insure** 88:3
**insured** 49:9 101:20 102:4,10,11,12
102:14 103:12,19 104:18 107:4,24
108:6
**insuring** 87:18 88:4
**intended** 103:5
**intense** 56:17
**intentional** 49:5,6,8,13 50:16,18
102:18
**intentionally** 51:20 52:6,6,11 100:10
**interest** 94:15 104:7
**interested** 61:4
**interesting** 97:24 99:3
**International** 105:20
**Internet** 53:22 63:21
**interning** 17:15
**interpretation** 45:22,23 49:12,18,19
49:24,25 50:2 52:3
**interpreting** 102:11 103:7 108:7
**introduce** 17:13
**investigated** 73:5
**investigation** 25:10 27:17 28:4,5 35:8
46:12 73:2,6
**investigations** 94:12,12
**investigative** 73:1,14
**invoke** 8:25 41:14
**involved** 85:8 86:2,6,8 90:4 102:18
105:3 108:13 111:2
**involvement** 86:22
**involving** 74:25 108:8
**Iraq** 17:18
**irrelevant** 66:7
**issue** 11:18 16:20 43:19 84:4 96:6 97:2
97:7,12 104:16 106:25 108:17
110:18
**issued** 32:24,25 33:20 34:5 91:13,16
95:14 108:3,10,22 109:17 110:9
**issues** 93:21 94:23
**item** 68:16
**items** 79:17,19
**LD** 16:4
**i.e** 83:24

**J**

**January** 28:10 29:22 32:9,22 33:1,2
33:23 34:2,12 35:18 36:2,9,10
37:17,18,23,25 38:18 75:1
**Javier** 60:14,15,17,17,20,23
**job** 82:20
**Johnson** 3:7 77:16 78:6,8,11,13 79:7
79:19 80:15 82:3 84:15 85:7,17
89:22,23 90:3,4 91:3,23 95:16
**Johnson's** 95:18
**joint** 13:6,7,23 14:8 20:22 33:4,13
35:15 39:2,3 48:20,21 54:7,14,14
54:17 56:4 62:16,16 95:7
**Judge** 1:11 54:5 66:9 67:10 71:4 81:3
81:8 83:11 100:20 101:25 103:2
104:4,14 107:14
**juror** 53:23 55:4,16 57:15 58:9 59:19
59:21 60:21 64:4 67:15
**jurors** 53:17 56:21 61:14
**juror's** 61:1 66:1
**jury** 1:10 5:2,3 12:23,24 13:2 14:7
15:16 19:6 23:5 48:20,21 49:4 52:4
53:9,16 54:5,8,11,12,23 65:9,21,22
70:22 72:24 78:13 84:10 85:7 88:22
94:20 103:2 111:3,7
**just** 5:19 6:10 7:5,21 13:8 15:11 21:16
21:16 30:14 31:21 41:1 42:21 48:21
52:3 56:12,18 60:10 61:11 63:9
65:7 67:2 73:10,11 74:1,2 77:8 80:1
80:22 81:10 82:11 84:6 87:11 89:6
90:16 99:19 91:3 92:23 106:24
109:15
**J-o-h-n-s-o-n** 78:7

**K**

**keep** 9:9 53:7 71:10,18 78:1
**Kendall** 72:8
**kept** 57:9 88:24 89:2
**kind** 89:2 94:23 104:21
**kinds** 73:1
**knew** 39:10 45:24 58:25 65:23 66:4
67:8 99:20
**know** 6:8,9 12:4 13:14 19:4,5,11 20:13
20:16 21:11 22:16 23:6,7 24:6,12
27:14,21 31:17 32:23 35:20 37:3
38:12,15,19,23,25 39:19 46:11,16
46:16 50:19 58:4,15,17,21 59:8
64:15 69:24 70:14 71:2 75:14,14
81:15 82:1,6 83:3,3 87:21 88:4 89:1
89:1 90:7,9 91:8,11,15 99:23
108:15 109:3
**knowing** 100:3
**knowledge** 24:10 40:1,4 58:24 76:8
79:25 81:12,22 83:19 84:11 85:18
91:4,6 95:11
**known** 55:7 108:3
**knows** 45:25 46:3 48:21 56:3

**L**

**lack** 24:9 76:8 79:24
**lady** 36:16
**Lago** 105:2
**language** 52:3
**large** 81:17
**last** 50:23 58:11 63:25 82:9
**later** 40:22 47:21 109:1
**Lauderdale** 105:8
**laugh** 56:18
**Laurato** 1:14,15 3:9 6:7 8:25 9:24
11:12 15:10,14 17:5 18:1,15 19:13
22:22 23:4 24:9 25:20 26:1,9,16
27:8,18 28:15 30:8 31:19 34:14
37:1,11,19 38:3 41:1,14,18 45:19
50:25 51:6,12 52:19 53:17,19,24
54:5,20,22 55:23 56:2,6,21 57:2,15
57:22,25 58:4 60:24 61:6 62:5
64:11 65:4,19 66:8,9,17 67:10 68:3
68:8 70:6,8 71:14 74:12 75:8 76:7
77:6 79:13,24 80:6,11,20,24 81:3,8
81:22 83:11,19 84:5,17 89:24,25
90:2,19,22 91:2,19 100:5,6,20
101:6,25 102:10,19,21 103:2,16
104:4,10 105:1,9,11,18,24 106:2,22
107:3,8,14 109:15,21,23
**law** 1:18 17:15,17,19 100:18 101:17
101:25 102:10,15 103:17 107:5

**lawful** 87:23
**lay** 37:20 80:1
**leading** 74:12 75:5 80:20 84:17
**lean** 10:8
**leaning** 10:9
**least** 42:19 110:7
**leave** 77:18 58:11
**leaves** 53:9
**leaving** 77:9
**Lee** 3:7 78:6,8
**left** 6:4 18:19,23 19:10,17,19,21 20:6
22:20
**Legal** 45:19
**lending** 103:10
**Lenox** 1:19
**lent** 29:16 30:1 56:25 59:9 60:2,3,4
61:18,20 103:3,3
**let** 23:11 52:21 53:6,11 58:10 63:20
64:10 66:13 89:9
**letting** 15:19
**Let's** 8:19 9:3 53:5 54:8 66:5
**level** 86:8
**Levine** 1:18,18
**license** 109:1
**like** 9:1 10:24 13:12 31:6 34:11 39:24
41:14 43:18 47:5 49:16 54:1 55:2
55:10 57:6 60:8 61:16,24 63:5 73:8
81:17 101:4,7 107:15
**limit** 62:24
**limitation** 98:25
**limiting** 15:14
**Linda** 64:15 71:2,3
**line** 3:14,14,16 4:2 17:23,23 18:22
19:18 21:9,10 41:23 57:1 59:9,10
59:16,22,23 60:12,13,25 61:2,3,7
64:20 109:25
**lines** 21:16
**list** 88:5 100:1
**listed** 30:3 80:7 95:8,9 97:13
**listen** 11:10,14 12:20 14:9 15:18 23:11
**listened** 15:11
**listening** 8:4 17:3
**little** 5:17 10:8 18:7 26:20 42:3 54:17
56:12 85:6
**live** 71:10
**Lo** 1:22 13:6 60:10 61:2 64:14 70:25
71:2 77:8,11
**loan** 7:6,8,9,21,25 8:6,16 9:15 57:11
57:11,13,23 58:2,2 63:24 64:2,2,19
64:19,23 69:15,16,17,20 74:10
**loaned** 12:8 39:10 40:3,19 47:18,25
48:2,3,7 67:8
**locate** 11:18 24:16,19 46:2 63:11
**located** 78:18 96:13,15
**location** 57:6 63:5 87:9 88:18 94:24
96:11,20 97:3
**locations** 88:25
**long** 6:12 58:21,24 65:23 66:4 67:8
71:25 78:16,18,20 84:7,25 85:3
102:13
**look** 17:10 18:2,22 21:1 36:24 37:4,22
37:23 39:24 42:2,3 47:14,15 55:13
59:12 60:20 62:16 64:20 82:20,22
83:6,7 86:12 87:4,5,6,7,8,9,9,15,18
88:12,13,15,20 89:11 92:24 95:25
96:16,19 97:8 98:13 99:2,18,19
110:15
**looked** 37:7
**looking** 16:3 17:11 21:18 47:16 60:14
60:25 63:7 69:7 95:19
**looks** 10:24
**loose** 9:4
**loss** 35:14 39:4,11 40:6,7,8 42:16,21
43:1,4,10 44:7,22,25 45:6,9 46:6,24
47:7,16 49:7,14 51:3,9,23 52:8
88:15 89:10,14 99:17 100:22
101:15,19,24 102:2,3,5,6,8,12 103:7
103:11,19 104:7,9,15,17,20 106:6
106:13 108:14 110:19
**losses** 101:14
**lost** 28:7 40:24 45:25 47:23 102:25
**Lot** 75:13 89:12,12 110:1
**L-e-e** 78:6

**M**

**made** 7:13,20,21 9:19 14:1 15:12
16:24 18:10 21:7 22:13 23:2,6,19
24:8,21 28:14,25 29:20 33:3 34:8
34:13 36:4,6,12,14 38:13 41:10
42:8,14,22 43:5,7,9,11,13,22 44:10
44:13,15,18 45:15 46:20 62:19,20
93:22 94:18 98:15 100:10 103:1
104:21
**mail** 36:5 80:18
**mailed** 33:8,9,10
**maintained** 32:4,11
**majority** 42:8 43:13,14,23 44:10,18
**make** 5:8,20 7:5 20:24 23:22 24:20
47:3 53:22 54:3,6,6 78:1 87:18,23
88:7,10 89:8,15 91:17 92:18 100:14
101:6 111:4
**makes** 20:22 96:1 105:15
**making** 19:12 80:24 83:23 86:2,6 92:5
92:6
**manage** 82:17
**manager** 78:15 79:4 85:17 86:14,16
**manufacturer** 31:13 104:19,21
**many** 23:22 82:18
**March** 35:11 98:9
**MARIE** 2:1 111:16,17
**marina** 62:13,14
**marine** 101:11,12,16 103:8 104:10
105:2,20,21 106:12 107:17 108:2
**Marked** 3:12
**MARLIN** 1:21
**matches** 61:1
**material** 51:21 52:7 87:2 89:17 94:4
**materiality** 109:24
**matter** 100:17 105:6 110:22 111:12
**matters** 97:16 100:21
**maximum** 63:3
**may** 5:22 14:21 30:16 31:5 41:3,4,5
47:5 54:9,24 56:8 60:2 61:6 63:25
64:8,12 67:7,13 68:23 70:18 72:1
72:19 88:7 91:15,23 93:1 102:9
106:6
**maybe** 53:24 57:15 61:7 85:25 109:9
110:1
**ma'am** 7:2
**mean** 81:16 85:21 86:10 88:14,22
100:14 110:16
**means** 46:19 52:5 73:22 107:24
**meant** 24:22
**meet** 109:2
**members** 5:3 13:2 14:7 15:16 23:5
54:12 70:22 85:7
**mention** 99:4
**mentioned** 88:1,18 89:5,16
**Merrill** 14:12
**met** 29:11
**Mgreen@brownsims.com** 1:24
**Miami** 1:2,6,19,24 2:3,3 17:16 95:9
111:18,19
**Miami-Dade** 29:18 30:5,18 31:18
32:17 46:1 72:9,15,20
**Michael** 1:14 90:14
**MICHELE** 1:22
**microphone** 78:2
**mid** 63:2
**middle** 6:4 30:15 105:19,22
**might** 30:24 97:3
**mile** 63:16
**miles** 57:5,8 63:12,14,15
**mind** 53:7 66:16
**minimal** 104:24
**minute** 20:20 80:22
**minutes** 55:9
**Misappropriation** 102:20
**misrepresent** 51:20 99:12
**misrepresentation** 51:17,18 94:5 96:9
100:24 107:21,25 108:5,11
**misrepresentations** 85:25 92:13,14
93:12,17,23 100:11,15 109:16
**misrepresented** 52:11 84:1,2 89:17
**misrepresents** 52:7
**missing** 21:22 22:10 24:20,21 36:12
36:15 37:14,17 40:2 42:23 43:3
99:1 101:5 103:4 106:10
**mistaken** 30:22
**mistakes** 91:17
**mistranscribed** 60:3
**mixed** 37:8
**Mlaurato@austinlaurato.com** 1:17

Mlopresti@brownsims.com 1:25
modify 98:11
moment 65:18 77:2
money 42:15
month 34:4 43:20 70:15
monthly 42:9 43:5,9,11,14,23 44:10
44:12,15,18 69:2 70:3
months 42:19 59:2
moored 88:20,23
mooring 87:9 88:18
more 39:9 56:4 67:15 69:10 81:19
86:19 98:7
morning 5:3,16 6:2,3 20:7 53:5
Morrison 105:12
most 40:1,4 95:2 111:6
motion 92:2,5,6 93:4,4,25 101:2,6
110:14,20
motions 92:4 100:7 111:4
move 38:3 52:22 76:7 89:2 90:19 92:7
moving 71:11,18
much 54:25 77:12 89:11 91:24 107:6
multiply 69:2
must 19:1
Mutual 105:13
myself 17:12 82:15

N

N 2:3 111:18
name 31:5,9,12 34:18 61:17 71:24
78:4
named 31:15
names 28:23
nanosecond 73:10
narrative 40:15,17
nature 58:17
navigation 91:12
Naya 55:17 56:11 63:25
necessary 57:5 62:24 93:8
need 5:8,16,17 6:21 27:23 38:16 60:13
61:11,25 63:25 71:1,5,10 74:2,16
77:7 101:18
needed 6:10 83:14
needs 41:13 74:21 96:19 98:13 102:17
110:23
negligence 103:11,19
negligent 103:10
never 29:7 36:4 40:20 47:19 52:11
81:20 95:2,3,11 96:2 103:5 106:19
new 52:22 106:16
newspaper 25:16 27:11,15
next 5:14 17:14 27:24 41:3,23 67:14
68:20 70:22 86:17
Nicaragua 106:3
night 20:4 30:2
nine 78:17,21 85:2
Nobody 59:24
normal 57:12 58:3
Northern 103:18
Northwest 95:9,24 96:3
notarized 39:13 40:11,13,14
note 75:20
notebooks 54:18
noted 97:7
nothing 24:24 71:16,21 77:22 98:7
notice 37:23
notified 36:11 40:21 47:20
notify 36:10
November 7:24 15:8 18:20 20:8 32:19
40:19 43:21 47:20 90:12
number 8:24 13:5 15:25 16:6,15,16,25
24:9,25 32:2 36:16,17,25 37:10
38:14 56:5 57:1 59:14,15 60:25
62:16,17 68:4,6 69:12,13,15,16,20
69:21,23,24 70:10 73:21,23,24,25
93:10 94:1 105:8,23
numbering 20:22
numbers 37:8 67:21
numerous 92:12 93:17

O

oath 34:22 35:11 43:22 44:4,6 98:14
object 58:8 65:19 66:9 75:8 80:11
objecting 81:2
objection 9:24 15:10 17:5 18:15 19:13
22:22 23:4,6,17 24:9 25:20 26:1,9
26:16 27:8,18 28:15 30:8,14 31:19

37:1,11,19 38:3 45:19 50:25 51:6
51:12 52:19 53:19,20 55:22,23 56:2
56:6,7 57:2 67:10 68:3,8,9 74:12
76:7 79:13,24 80:6,20 83:11 84:17
objections 80:25 90:21
obligation 44:21 95:15 99:11 109:13
obtain 34:21
obvious 89:13
obviously 12:23 94:23
occasion 72:21 74:24 79:7
occasions 26:23
October 79:3 108:22,24
off 6:4 9:11 23:16 30:20 37:24 55:5
71:1 82:11
office 1:18 25:13 27:1 65:14 67:5
78:18,20 80:5,10 82:8 83:17
officer 13:1,8,11 15:18 21:17 28:24
29:9,11 30:5,22 31:1 32:1,20 37:24
38:17,23 54:16 55:3,12 67:18 70:23
72:5 73:9 74:1,24 75:18 77:9,12
86:5
officers 20:23
officer's 34:18
offices 85:5
Official 2:1 111:17
often 80:18
Oh 21:8
okay 5:21,22 8:21 20:19 21:3 25:25
39:1 42:4 53:12 54:8 61:12 64:10
64:16 67:17 70:4,7,17 72:1 74:4
75:16,22 77:12 79:17 105:10,17
old 88:8
once 26:25 34:8 38:12 72:24 95:14
101:19 110:25
one 5:6,14 9:10 21:5 27:24 39:10 40:3
40:16 43:20 44:12,13,14 45:24,25
46:3 50:20,21 53:17,21 56:4 58:11
60:10 61:25 63:16 64:11 65:3,8,25
67:15 80:25 87:17 93:11 97:8 101:5
105:18
ones 73:6 80:25 110:2,2
online 80:19 81:1,4,7,9
only 12:23 13:13 25:9 26:25 28:23
40:22 42:12,24 43:20 44:12 47:18
83:17 84:11 94:9,19 95:19 97:15
98:22 101:5,18 106:9
open 3:19,21,23,25 4:4,6,8 17:3 36:17
53:7 56:10 58:12 62:6 68:10 82:2
84:13 90:18 91:1
operate 109:13
operating 83:17 84:8 85:9,18 86:5
operator 84:2 87:6 88:1 93:18,19
97:22,23,24 98:8,15 99:7 21 100:1
operators 87:10 88:5,6,7,11,12 89:4,5
89:9 94:6 98:17,19 99:10,13 100:4
opinion 83:13 104:14
opinions 81:14
opportunity 56:7 75:24 90:24
opposition 83:25
order 5:25 6:21 7:16 8:9,13,19 13:15
13:19 19:4 20:15 76:21 85:19 95:16
98:12 101:18 107:18,18,19,22
108:19
ordinarily 63:6 106:20
origin 47:16
original 34:3 81:24 82:3,7
other 24:15,18,19 25:7 28:21 35:8
37:8 58:10,15,21,25 61:25 70:5,15
70:17 71:18 76:4,25 78:22 83:15
83:16 89:7 91:21 98:14 108:21
ought 57:15
out 5:13 16:11 21:17 29:19 30:1 32:17
35:3,10,13 39:10,11 42:14 52:13
53:2 54:16 55:7,11 56:11 59:7,20
63:8,10 70:23,24 71:9,15 73:2 76:2
78:4 81:9,9 85:24 87:11 98:23,24
99:4,5,12,19,24,25 100:21 103:4,10
104:5 106:6,20
outboard 53:1
outlined 55:1
outside 5:18 26:10 76:16
out-of-court 15:16 23:14
over 20:24 29:2,3,4 34:4 36:5 40:15
46:18 51:13 55:8 63:4 70:3,3 76:6
92:24
overcome 108:16
overdue 21:25
overlooked 91:9

overriding 108:18
Overruled 9:25 15:11 17:6 22:23
25:21 26:2,11,17 27:9 28:16 30:9
37:2,12,21 38:4 45:21 74:13 76:9
79:15 80:9,13,21 84:18
own 27:17 28:3 50:2 92:19 93:11,14
108:23,24 110:3
owned 8:7 9:16 43:2,20 94:13,14
owner 7:14,22 8:17 55:20 59:4 87:6,18
87:22,23 89:11 94:22 97:17,18
owners 74:6
ownership 32:1,3,4,10,14,16 42:11,22
42:25 77:3 84:1 87:7,17 88:16 89:9
89:14 93:17 94:5,8,9,21
owner's 96:25 97:2

P

page 3:2,14,14,16,4:2 17:3,9,22 18:22
20:19,20 21:9 37:24 48:21,25 59:14
59:15,17,20 60:12,18,20,25 61:6,11
64:4,4,5,11 66:19 67:20,24,24,25,25
68:15,20,20,23,25 105:23
pages 1:8 54:16
paid 56:5 62:17,23
paper 77:7
papers 32:10,14,16 94:10
paperwork 70:25 71:5
paralegal 41:13
paraphrasing 99:23
Pardon 74:22
part 15:19 38:19 41:3,18 73:14 85:14
95:14 108:20 111:6
particular 15:4 17:23,25 18:18 24:24
25:15 31:5 40:6 41:23 46:23 49:24
50:12 51:25 52:3,9 57:16 70:10
73:18 75:7 81:13 83:20 84:11,16
87:15 90:5,7 91:5,6,15 97:11
104:16 106:14
particularly 111:2
particulars 47:17
parties 5:8 54:14 93:16
partners 88:10
partnerships 89:12
party 105:3
passed 71:3
PATRICIA 1:11
patrol 72:8
Paul 105:1,21
pay 49:6 69:10
payment 42:14 43:13 44:12,15 62:19
62:20 69:5,6 70:10
payments 41:10 42:9 43:5,6,7,8,9,11
43:15,23 44:10,13,19,19 67:23 68:5
68:18 69:2,13
payroll 62:12
pending 13:18 54:23 56:9
people 89:12 91:17
people's 37:8 71:18
per 24:22 57:8 63:12,14,15,15,16,16
Perez 3:5 71:25 72:2,5 73:9 74:24
75:18 77:5,9,12
perfect 41:17
perhaps 38:7 83:7 106:22
peril 106:13
period 57:20
permission 47:24,25 48:2,4 55:21
59:4,6 61:19 98:21
permit 71:9
permitting 85:9
person 39:15 40:1 49:8,8,10 50:16
52:6 60:2,3 61:17 88:4 106:9
personal 24:9 58:24 76:8 79:24 81:5
81:12,22 83:19 84:10 91:4
personally 38:25 85:8
personnel 25:7
persons 24:20,21 30:20
pertinent 76:13
petard 110:3
Petty 13:11 21:17
PhD 56:15
phone 13:10 15:6,7,21,22,24,25 16:1,5
16:11,15,16,22,24,24,25 18:10,10
18:13 20:15 23:2,3,3,19,19,22,22,24
24:4,7,8,8 36:19,20,21,22,23,24
37:4,8 55:3 76:1
physical 101:15
pick 80:25

picture 57:10 63:18,22,23
piece 50:23
pilots 108:8
pitcher 71:23 77:25
place 90:25 91:18
plaintiff 1:5,14 13:10 57:21 71:8
92:18 93:7,9 97:6 100:22 101:18
104:6,8,23 110:23
plaintiff's 57:24 63:24 64:3,4,5,13
67:20 68:12,15 70:9 92:8 93:5,11
94:4 95:20,22 97:25 98:1 109:5
110:6,15,21
plan 54:1
planes 57:7 63:5
planning 110:3
play 8:12,19,20,20 9:3 11:4,11 13:22
14:3 60:8,13 61:14
played 9:1,5,12 14:22 60:16 61:13
playing 9:7 11:24 12:1
please 5:3 9:6 14:9 26:20 33:5 35:15
40:18 48:20 51:17 53:5,7 54:12
55:3,7,11 68:15 77:18,19,24 80:22
92:3
plural 44:19
plus 58:6
pocket 54:17
point 6:7,16 17:18,22 19:18,20 40:5,6
41:1 42:2 99:6 100:7 101:1,8
102:15 103:12 104:5 106:6 107:5
pointed 21:17 35:3,10,13 87:11
points 12:4 93:22 97:21 98:14 107:14
110:6
police 9:20,23 24:20,21,25 25:4,8,25
26:8,15 28:25 29:2,5,9,10,12,14,18
29:23 30:5,18,22 31:1,17,18,24
32:1,13,17,18,20 33:3 34:8,13,18,21
34:24 35:1,3 36:3,6,7,18 37:22
38:13,13,14,15,21,22,23 46:2 70:23
71:6 72:9,15,20 74:11,16 76:21
77:1
policies 101:12
policy 36:16 45:17 48:9,12,15 49:14
50:4 51:19,24,25 52:1,2,5 62:15
84:3,16 85:13,19,21,22 86:1,7,25
89:19 90:5,7 91:13,15 92:16 93:13
93:13 95:14,14 98:16 100:19
101:12,17,18,21 102:21 103:1,21
104:10 106:12 107:5,17,20,22,23
108:2,3,22,23 109:3,6,13,17 110:9
110:10
poorly 31:5
portion 14:18 17:25 18:3 40:15,16
60:8 61:14
portions 8:20 35:4
Pose 6:25
position 25:19 72:7 78:16 85:17 98:7
98:12 101:10
positions 78:22
possession 19:22 34:3 99:2
possible 91:10
possibly 34:23 46:15 65:1 73:5
potential 83:14
power 63:3,4
practicing 41:16
precedent 101:11 105:15
precipitating 11:23
preclude 92:16 93:13
prefer 8:25
preliminary 73:2,6
premium 88:21 108:10
prepared 14:12
present 65:14 66:6,15 82:13,14 86:13
86:14
presented 82:23,24 83:24 85:24
110:19
presenting 86:16
Presti 1:22 13:6 60:10 61:2 64:14
70:25 71:2 77:8,11
presumption 106:12,14
pretty 11:21 89:13 98:17 99:3
previously 42:13 76:20
price 63:1
Prichard 105:15
prima 100:9 103:1
primarily 89:2
primary 84:2 93:18 94:5 97:21,23,24
98:6,8,15
principally 90:4

printed 81:9
prior 43:2 106:9
probably 105:11 106:25 111:5
problem 7:19 11:25 62:5
procedure 55:1 72:24 80:9 84:8
procedures 80:15 83:17 84:12 85:10
  85:19 91:18
proceed 5:22 14:21 72:1
proceedings 1:10 3:19,21,23,25 4:4,6
  4:8 55:19 56:10,20 58:12 62:2,6
  67:19 68:10 80:23 82:2 83:10 84:13
  90:16 91:1 111:12
process 73:14 86:6 99:17
promptly 53:16
proof 28:7,7 35:14 39:4,11 40:5,7,8
  42:16,21 43:1,4,9 44:7,22,25 45:6,9
  46:6,24 47:7 51:3,9 74:6 77:2 99:17
  100:9 101:23 103:23 109:24
proofs 100:2
proper 14:9
properly 95:16
property 49:9
prove 34:7 100:22 101:19,20 102:3,4,5
  102:7,15 103:12 104:2 106:23
  107:4,21 108:5,13 110:13,17
provide 35:25 75:23 101:14
provided 12:25 31:25 34:24 35:21
  51:19 76:15
provides 100:14
provision 49:25 50:9,12,14 52:9
  100:13 107:17
provisions 110:11
pull 33:4 34:6 35:14 37:3
purchased 58:5
purpose 83:21
purposes 110:14
pursuant 83:18
put 9:8 10:11 51:14 58:6 76:14,14
  77:8 81:6 96:11 101:23 109:4
  110:23 111:1
putting 67:21 71:13
P-e-r-e-z 71:25
P.A 1:15

Q

qualified 89:15
question 6:23,25 7:20 8:2,4,5 11:12,13
  11:23 13:17 15:12,24 16:5,14 18:1
  27:19,24,25,25 30:15,16 31:5,21
  38:4,9 41:3,15,19,25 47:5 50:6
  52:21,23 55:6,13,15,17,18,24 56:3,4
  56:9,12 57:16,22,25 58:1,4,8,9
  59:19 61:1,18,25 64:4,11,17 65:7,22
  66:1,7,11,13 67:16 70:4 74:12,20
  75:8,15 80:20 84:17 97:25 100:10
  102:17
questions 23:12 41:2 53:3 54:23 55:2
  55:10,13 56:21,23 58:10 65:5,8,9
  65:17,20 70:5,17 75:4 77:4,6 87:1,3
  89:21 91:19
quick 59:12
quite 59:15

R

R 111:10
raise 97:2,12 107:19
raised 107:18
ramp 77:18
range 63:2,17
rather 74:2
Rdispenzieri@gmail.com 2:4 111:19
read 17:24 18:6 21:16 40:8,17 48:12
  48:15,18 49:4 51:16 52:1,3 75:13
  93:9 96:20 103:15
reading 18:9 52:2 96:23
ready 38:16 56:14
real 65:3
realize 9:11
really 8:3 11:17 22:6 60:5 81:25 89:8
  97:14,16 100:9 110:12
rear 30:6
reask 50:7
reason 19:16 24:6
reasons 89:7 93:10
rebutted 106:16
recall 6:6,19 7:11 11:1 16:7,9,18 17:1
  22:24 23:23 24:5 25:6 26:3,5,12,14

26:18,21 28:8,11,17,24 33:8 65:16
  67:5,5,7,12 75:7,10,14 76:12
recalls 67:11 75:9
receipt 80:16 81:13
receive 15:24 16:3,5,15 32:22 33:22
  35:18 72:25
received 3:12 15:7,21 34:8 36:2,5 76:1
  79:23 81:11,14,16,21,23 90:11
  91:16 109:1
recess 54:2
recieved 15:22
recognize 11:5 14:24 16:19 31:11
recognizing 86:10,17
recollection 6:22 9:14 12:18 16:20
  18:4,6 66:14 67:3 74:19,21 75:3
  76:17 83:6,8
recommend 86:4
recommendation 24:23
recorded 13:3,4 14:8
recording 6:17 9:5,12 10:2,4,13 12:1
  13:5,8 14:12,14,15,18,22 16:2,17
  17:4 24:25 60:16,19 61:13
recordings 7:10 13:13,21 14:1 25:2
records 15:7 18:13 24:7 36:13,19,20
  36:24 37:4,4,7,9 81:18 108:23
recount 79:15
recover 101:18
recross 51:15 41:20 54:10,20,22 55:8
  91:21,22
refer 57:1 68:4 69:12
reference 9:19 18:23,25
referenced 41:8
references 31:20 66:4
referencing 27:11
referred 69:14
referring 10:16 25:16 35:17 41:25
  42:1 45:14 58:5 96:24
refers 69:24
reflect 66:6 97:11
reflects 97:11 98:1,2
refresh 6:21 9:14 12:18 16:20 18:6
  67:2 74:19 83:6,8
refreshed 74:21
refreshes 18:3 66:14
refugees 40:24 47:22
regard 11:19 25:24 28:2 29:14,23 31:4
  32:3,10 44:25 50:3 52:9 73:17 80:4
  83:22 85:23 89:4 92:7 93:20,25
  94:1,8,21,24 96:6,12 97:4 98:17
  99:10,13
regarding 12:19 21:19 25:17 28:22,25
  67:8 79:10
regardless 49:9 109:14
regards 92:10 93:5 109:15
registration 31:25 32:6,8,21,23 33:7
  33:19,24,25 34:1,6,12 35:19,20
  74:7,16 76:24
regulations 26:10
Reinsurance 103:16
reject 85:11
related 11:16 15:3 28:13 42:24 52:7
  65:8 72:21,25 85:18 93:6,17
relates 52:9
relating 51:21 102:22
relative 109:3
relevance 9:24 22:22 25:20 26:1 27:8
  27:18 28:15 37:1 65:19 67:10 80:12
relevant 66:11 106:25
relied 109:20,22
religious 5:20
rely 14:18 83:15 100:23 107:20
relying 87:22
remain 77:19
remember 6:15 9:21 10:23 11:7 12:14
  14:15 15:1,9 16:23 26:25 28:23
  29:13 32:7 34:18 36:1,22,24 41:21
  55:1 59:2 72:11 74:1 99:22
Repair 105:20
repeat 7:16 27:25 30:16 52:23
repeatedly 11:2
rephrase 31:21
report 9:20,23 21:22 22:7,9,13 24:20
  24:21 25:1,5,8,25 26:8,15 28:25
  29:2,5,6,7,8 10,18,21,22 30:3,4,6
  31:1,17,19 32:14,18,21 33:3 34:9
  34:13,19,21,24 35:1,4 36:3,4,6,8,12
  36:14,18 37:10,18,22,23 46:10,14

46:16,18 51:14 73:3,16,19 74:11,17
  74:25 75:7,9,12,18,21,23 76:11,14
  76:15,16,21 77:1
reported 2:1 21:24 37:14
Reporter 2:2 73:10 92:24 111:17
Reporter's 3:10
reporting 22:8
reports 28:14 30:25 72:21 75:13
represent 7:10 24:7 43:4,22 46:7 47:7
  90:3
representation 7:5,13 22:20 36:13
  96:1
representations 46:20 47:2 94:18
represented 8:5 16:10 23:1 83:24
  94:11 97:18
representing 19:6 34:4 45:3 109:6,8
repudiating 92:20
request 11:12 15:14 18:1
requesting 108:24
require 73:18 74:5 80:8
required 40:13 76:21 99:8,9 100:22
  107:4,4
requirement 108:18
requires 94:2 102:11 107:16 108:13
rescind 83:23 85:13,19,21,22 86:1,7
  86:25 87:13 98:16 107:23
rescinding 89:18
rescission 93:6 100:16
resided 96:18
residence 96:21,21,22 97:15,15,17
residing 97:19
respect 106:16
respectfully 16:14 47:4
respond 76:5
response 7:19 23:12 100:5
responsibilities 82:13,14 110:12
responsibility 44:6
restate 43:18 58:9
restful 5:4
restriction 98:25
restrooms 5:11
result 75:11
resume 3:19,21,23,25 4:4,6,8 93:1
return 20:4 30:2
returns 5:2 54:11
review 37:9 48:9 49:15,21 50:10 51:24
  52:15,18,25 79:7,21 82:15 86:11,25
  75:23 82:10,11 90:22 98:5
reviewed 51:24 52:17 53:1 65:8 75:18
right 18:14 21:22 33:2 36:10 39:8
  40:6 41:5 42:17,21 44:12 48:16
  61:10 70:24 71:4 75:18 77:18 81:8
  90:8,9 91:9,13,14,16
risk 82:15,16,24 85:11,12,24 86:11,13
  87:2 89:3 95:16
road 90:17
ROBIN 2:1 111:16,17
rocked 102:13
role 73:14
Roller 17:14,15
room 65:15,16
roughly 63:16
RPR 2:1 111:16
RPR-CP 111:17
Rule 8:25 41:15
run 5:12,17

S

S 1:23 111:16
salary 64:6,20,25 65:2
sales 58:6
same 10:25 11:2 12:19 13:2 14:2 17:5
  28:5 29:25 30:2 33:2,2 34:12 36:3
  50:1 70:3 73:24 79:5 94:18 96:1
sand 99:25
sat 35:6 98:5
Saturday 16:11 18:25 19:2,8 20:4,7
saw 34:22,23 40:20 47:19 75:12 82:9
saying 31:14 34:1 61:22 78:4 94:19
  102:16 106:24
says 8:18 10:24 14:17 19:1,11,18 21:5
  33:21 40:25 41:10 42:10 43:9,13,14
  44:1,3,18,20 47:10,11,16 48:23
  60:2,4 64:2,5,5,21 95:23 96:14,21
  96:22 98:4 100:13 101:14 103:19
  106:11
scenes 73:8

schedule 70:24
schedules 71:18
school 17:17,19
screen 9:8 42:3 49:2
SCX 31:8
sea 40:24 45:25 47:23 104:12 106:13
search 24:17,19
seat 5:4 54:9,13 92:3
seated 77:24
seaworthiness 106:7,11,15,25
seaworthy 106:10
second 14:4 29:19 36:3 37:24 45:13
  60:11 99:24
section 40:5,17 42:1 48:23 49:4 51:16
  51:25 88:5 96:19
Security 13:1,8 54:16 55:3,12 67:17
see 5:17 9:8 16:21 17:19 18:3 20:15
  23:9 27:23 33:19 34:11 37:5,9
  38:16 40:25 41:7,10 53:7,21 57:16
  59:18 60:9 63:20 66:5,20 68:20
  69:21 70:2,2 79:19 80:17 86:11,12
  87:4,18 95:10 97:19 110:16
seem 25:2
seemed 50:8
seems 43:24 64:22 65:20 102:8
seen 79:14
SEITZ 1:11
sent 44:25 45:2 52:17 53:1
September 1:9 39:16 42:16
sequence 14:2
Sergeant 24:25 25:4
serve 89:18
served 17:18
Services 105:21
set 100:21
seven 46:3 67:25 68:1
several 107:14
shades 10:11
share 110:25
sheet 66:5
shifting 103:12,23
shifts 101:20
Ship 105:20
ships 57:6 63:5
short 54:2
show 33:24,25 34:14 53:22 62:1 64:19
  66:8,17,19 74:19 90:13 102:11,16
  102:24 104:8 107:25 108:11
showed 56:12,18 57:11,23 58:2 64:2
  67:2 71:6 81:10
showing 106:17
shown 36:3 42:13 92:9
shows 74:6 94:4 104:23
sic 88:25
side 40:6 42:10
sidebar 3:15,18,20,22,24 4:1,3,5,7
  55:19 56:20 62:2 67:19 80:23 83:10
  90:16
sides 110:25
side-bar 55:18 56:16
sight 99:14
sign 7:7,9,25,25 8:1 37:24 57:4 71:1
  77:7
signature 39:7 81:5
signed 7:6,8,21,24 8:6,11,14,16 9:15
  39:13 44:22 52:15,18,25 53:1 75:20
  81:4,9 108:24
signee 81:4
significant 106:7,16
significantly 93:20
similar 108:8
simply 100:17 102:11 107:20 108:9
Sims 1:22
since 12:23 13:19 15:17 19:4 39:9,14
  54:9,18 62:8 71:8,10 83:6 85:13
single 42:14 44:14
sir 39:4 71:19 77:20
sister 56:13
sit 81:20
sitting 17:14
six 28:18 46:3 72:17
slow 7:17 73:10,11 92:23,24
slowly 71:24 78:4
small 38:14
Smith 13:11 21:17 28:24
smuggling 27:7 45:8
solemnly 71:20 77:21
some 46:15 58:16 63:25 83:15 108:21

**somebody** 88:3
**someone** 15:25 24:2 27:4 30:6,19 76:2
**something** 4:14 17:75:14 81:7 83:5
102:12 110:23
**sometimes** 56:17 67:23 68:18 89:10
**somewhere** 82:8
**soon** 36:1,5
**sorry** 9:10 10:20 12:1 22:6 29:17
40:25 43:16 55:4 59:18 63:23 67:15
73:12,12 74:4 103:17
**sort** 5:7 81:17 97:2
**sorts** 101:5
**sounds** 54:1 61:16,24 101:4
**source** 64:6,20
**Southern** 1:1 103:9 105:4
**speak** 20:10 24:1 25:22 26:20 28:21
29:8,12 46:22 73:15
**speakers** 14:13
**speaking** 27:6 94:17 109:15
**speaks** 45:23
**special** 25:11,12,14,18,24,24 26:7,14
26:23 27:1,3,5,10,16 28:2,8,12,21
31:9 45:14 46:20 94:17
**specific** 101:21,21 102:22 103:13
**specifically** 75:13 103:8
**specifics** 75:13
**speculate** 69:9,9 90:9
**speculation** 24:10 38:10,19
**speculative** 38:5,7
**spell** 71:24
**spelling** 78:5
**spoke** 21:5 24:2 25:11,12,14 26:23
28:8,12
**spoken** 19:20 31:1 45:21
**spot** 42:3
**squeeze** 56:12
**St** 105:1,21
**staff** 82:17,18 85:5
**stamped** 90:11
**stand** 71:19 77:20 95:17
**standard** 72:24 73:17 80:9 83:17 84:7
85:9,18 91:6 110:17
**standards** 83:22
**standing** 77:19
**start** 53:16 60:12 61:3,12 72:18
**started** 28:6 85:4
**starting** 4:22 9:1 51:16 60:17 61:2
**state** 22:6,7 32:25 42:6,8 51:9 59:8
71:24 74:6,7 103:8
**stated** 15:20,22 16:2,21 23:13 36:1
56:25 57:3,16 62:22 94:13
**statement** 7:20 15:12,13 23:7,9,10,14
40:14 42:21 44:22 68:5,18 69:12,25
**statements** 15:17 43:7 67:21,23 69:22
**states** 1:1,11 59:24 111:18
**stating** 35:4
**Statute** 107:16
**statutory** 108:18
**step** 5:13 54:24 67:13,18 70:18 80:22
91:23 108:4
**steps** 11:18,19 24:15,19
**stick** 54:18
**still** 20:18 34:3 57:14 66:9 71:18 96:13
100:1
**stipulate** 53:24
**stole** 30:7
**stolen** 24:22 28:7 30:4 37:18 40:22
45:11,25 46:13,14 47:1,12,13,21
74:25 106:22 107:2
**Stop** 9:6
**storage** 87:9 94:5
**store** 98:22
**stored** 88:24 93:18 94:25 95:2,3,11,23
96:2 97:13
**straddled** 102:4,14
**straight-faced** 92:18
**strange** 5:18,19
**Street** 1:16 95:9,24 96:3
**strike** 38:3,4 76:7
**stringent** 5:15
**strongest** 110:2
**student** 17:15,16
**students** 56:13
**stuff** 87:4 108:14
**style** 31:5,9,12,14
**Suarez** 12:5,9,12,15,18 15:8 16:9
18:19,23 19:7,17 24:1,16,16,18,19

40:20 45:12 47:18,24 48:3 55:21,25
56:25 58:14 59:5,7,8,9 60:1,7 61:20
62:3,8,9 65:23 66:1 67:8 106:22
107:1,2
**Suarez's** 16:1,16,25 18:10,13 19:21
23:2,19,22,24 24:8
**subject** 23:8 46:23 73:3,7
**subject-matter** 98:3
**submission** 92:15
**submitted** 38:12 40:9 46:6
**subsequent** 10:13,15,18 11:15 12:11
14:5 36:9 44:13 86:16 92:15
**subtle** 23:15
**subtract** 69:3
**subtracting** 68:1
**suffice** 74:10 76:22
**sufficient** 110:16
**suggest** 90:13 102:8
**suggestions** 20:24,25
**Suite** 1:23
**sun** 10:10
**super** 57:3 62:22
**support** 36:13,19
**supposed** 18:24 20:4 30:2 59:7 70:1
97:15 100:2
**sure** 5:8,20 8:10,22 19:18,23 20:14
22:18 37:13 45:15 47:3,6 58:17,19
58:22 59:15 60:4 62:11 66:18,21
69:11,18,20 81:25 87:18,23 88:8,10
89:8,15
**surprise** 107:10
**surrounding** 40:2
**suspected** 40:23 47:22
**sustain** 23:5 108:19
**sustained** 18:16 19:14 23:17 24:11
51:1,7
**swear** 71:20 77:21
**switch** 85:4,6
**sworn** 35:14 39:4,11 40:5,7,8,14 42:16
42:21 43:1,4,9 44:7,22,22,25 45:6,9
46:6,23 47:7 51:3,9 71:19 72:2
77:19,20 78:8 99:17
**system** 20:22

**T**

**T** 111:10,10
**tab** 54:18
**TABLE** 3:1,15 4:1
**tag** 32:21,23 33:24 34:6 35:19,20
**Tahoe** 31:7
**take** 11:19 24:15,19 53:5 54:5,9 55:9
55:12 59:12 72:21 73:18 74:24
76:11 93:2,3 98:22 106:20 108:4
**taken** 11:18 35:11 66:22
**taking** 70:23 71:15
**talk** 5:15 15:3 17:24 53:6,6,11,11 76:2
100:8
**talked** 11:3
**talking** 29:17,18,20 41:13 61:4 63:16
63:17
**Tampa** 1:16 78:19
**tank** 57:9 63:13
**tanks** 57:9
**tape** 9:6 10:25 11:14 13:21 14:4,24
15:11
**tax** 58:6
**technology** 33:15
**tell** 5:12 7:1 19:9,16 20:3 25:4,25 26:7
27:5 29:14,23 30:15,18 44:7,21
50:4 56:9 59:1,24 71:20 72:24
75:10 76:3 77:21 78:13 79:12,16,22
84:10 95:5
**telling** 44:9 92:25 109:25
**ten** 42:19
**tension** 56:18
**terms** 63:14 95:13
**Test** 78:4
**testified** 22:8 39:6 48:15 93:23 94:10
95:17
**testify** 24:13 83:16,23 84:4,8 85:9,15
90:21 106:9
**testifying** 84:7,11
**testimony** 1:10 25:18 38:4 43:18
49:21 53:11,12 67:7 68:17 80:8
83:12 92:21 93:14,21 95:10,19,23
95:25 96:17 98:1,1,5,6,19,23 99:3
99:22 100:2 106:15

**thank** 5:23 26:22 34:16 53:14 54:24
67:21 70:19 72:5 77:5,12,24 91:23
107:6
**theft** 72:25 73:1,17,20
**their** 36:7 45:7 46:10 51:10 56:14
83:18 87:24 88:9,12,13,15,15 99:18
107:11,12,15 108:23,24 109:15,24
**theories** 45:9 90:24
**theory** 45:11,13 107:1,3
**thing** 8:20 9:1,3 29:25 40:11 73:24
97:8,16
**things** 15:3 73:8 80:17 84:3,3 85:6
86:12 87:11,12,16 89:16
**think** 8:3 13:19 16:12 19:19 22:8
23:16 27:16 29:5 30:14,22,24 34:22
40:16 41:5 46:17 48:12 55:8 56:8
57:15,21 58:8 60:21,24 61:8 64:23
67:16 83:3 88:3 89:4 97:5,13 98:13
101:9 105:18 107:12 108:21,22
109:11,12 110:2,17
**thinking** 24:12 69:7
**third** 39:15 64:15 105:3
**third-year** 17:16
**though** 52:13
**thought** 24:2 76:22
**three** 21:4 42:12 64:14 78:2
**through** 6:16 14:13 17:23 21:9 35:6
37:4 76:5 94:3 98:5 104:22
**throughout** 93:21 99:16
**Thursday** 18:19,24 19:7 70,11,17,19
22:20
**time** 11:9 19:20 29:19,19 32:13,16
42:12,19,22,24 43:2 44:9 47:16
54:20 60:20 69:22 71:17 72:20 76:5
77:9 78:22,25 82:9 83:2,4 84:20
85:1 98:9,14,15 99:6,19 100:13
**timeline** 39:10
**times** 11:3 67:25 68:1 69:2 89:12
**title** 31:25 73:21 74:5,10 76:22,24
79:3,5
**today** 50:4,12 72:5 79:5 82:4,10,19
98:12
**together** 10:25 94:23
**told** 7:7 8:6,15,19 9:15,16 19:16,24,25
24:25 26:14 29:16,25 30:2,3 32:18
32:20 36:16 40:23 45:16 46:7,13
47:8,11,22 50:23 58:17 59:2 76:12
76:17 89:6 92:24
**tomorrow** 107:13
**top** 23:16 47:16 64:5 93:2,3 95:8
97:10
**totality** 96:20,23 97:9,9 99:18
**touched** 5:7
**tour** 17:18
**trafficking** 46:15
**trailer** 33:24 34:6,11 35:19,20 40:19
40:20 47:18,19 106:19,19,20
**transcribed** 21:6 22:2
**transcript** 1:10 6:17 8:9,18,19 11:24
13:9 14:11,16,17,18,19 18:3 59:10
60:5
**transcription** 16:10,19 17:2,23 18:18
24:24 111:12
**transcripts** 35:13
**transfer** 40:24 70:1,2
**translated** 62:10
**transport** 47:22
**trial** 1:10 5:10 93:22
**tried** 37:4
**trip** 99:4,5
**Tritan** 30:23 31:12,13,15
**true** 21:17 23:10,14 81:16 90:11
**truly** 87:24
**truth** 15:13,20 44:7,9,21 71:20,20,21
77:21,21,22 108:3
**try** 73:2 74:4 75:16
**trying** 5:20 8:3 9:9 21:18 41:12 61:17
71:17
**TUESDAY** 1:7
**turn** 29:24 46:18 55:5 64:3 68:15,20
70:23 71:10,15
**turned** 29:3,4 55:4
**two** 22:16 45:9 47:1 54:16 67:23 68:1
68:18 69:3 85:5 94:2 105:11 110:11
**type** 31:7 46:15 58:16 64:23 86:24
101:17 104:24 107:5 108:19
**typo** 64:22

**U**

**unclear** 109:2
**under** 34:22 35:11 43:22 44:4,6 45:17
62:14 89:10 92:4 93:13 98:14
101:10,17,18 102:21 103:13 107:4
110:1,2 110:7
**understand** 7:18 8:12 45:17 50:6,14
66:11 75:15
**understanding** 12:8 50:4,9
**understood** 44:21 57:17 93:1 95:21,21
**underwrite** 82:15 88:9,11
**underwriter** 49:17 81:11 82:15,21,22
83:1,2,4,9,15 84:15,19 86:13
**underwriters** 85:5
**underwriting** 78:14 79:1,4,8,10,19
80:4 82:8,17 85:8,11,17,23 86:12
90:5 91:7
**underwrote** 90:7
**undisclosed** 83:12
**unequivocally** 101:13
**unexpected** 104:12
**unforeseen** 104:12
**unfortunately** 63:6,10
**Uniform** 72:8
**unintended** 102:3,12,13 104:13 106:6
**United** 1:1,4,11 111:18
**University** 17:16
**unknown** 30:20,20
**until** 22:13 32:22 33:1,23 35:18 36:10
37:25 38:17 53:12 77:19 107:13
109:1
**unusual** 71:16
**upstairs** 73:3
**use** 5:11 41:8 42:7 43:21 55:21 59:5,6
61:19,19 63:14,14 83:5 88:9 89:9
89:10 90:24 94:20 95:22 98:21,22
**used** 27:7 40:24 45:8,18 46:8,9,15,25
47:8,22 50:15,17 51:4,11 58:16
77:1 86:24 87:8 91:5
**using** 27:12,14 74:3
**usually** 80:18 110:25
**Utica** 35:19
**U.S** 40:21,23 47:19,21

**V**

**valid** 100:12,18
**various** 10:19,21 12:4 50:24 93:16,22
**vehicle** 31:6 32:5,23 33:7 73:23 74:8
74:16 76:24,25 106:19
**verdict** 92:2,7 93:5 100:7 101:2,7
107:9 110:6,14,20 111:4
**verify** 81:19
**versus** 103:16 105:2,13,15,21 106:3
**very** 5:20,20 14:10 50:8 54:25 56:17
73:10 77:12 88:20 89:1 91:24 95:8
102:3 104:24,24 107:6 108:8,17
**vessel** 11:17,17,18,20 21:19,22,25
25:15 30:23 31:4,23 37:18 45:18
47:8 50:15 73:24,25 74:8 76:25
87:6,6,7,19,23,24 88:1,3,4,18 93:18
93:18,19,19 94:8,13,19,21,22,24,24
95:11,23 96:2,10,13,15,20 97:12,17
97:18 98:9,21,24 99:1 101:16
106:20
**vessels** 100:3
**via** 80:19
**viewed** 45:22
**VIN** 73:20,22
**voice** 11:5 14:24 16:19 61:24
**void** 52:5 93:12 109:6 110:10
**voided** 51:19
**voiding** 110:12
**voir** 5:7
**vs** 1:6
**V.A** 65:2

**W**

**wait** 5:14 33:7 37:17 68:22,22,22,22
107:10,13
**waited** 22:16,18 37:25
**waiting** 63:8,9
**waived** 102:23
**Walk** 94:3
**Walker** 9:19,23 15:18 24:25 25:4,9
28:23 59:24 61:4,5
**Walker's** 24:22
**want**

7:18 11:13 15:3 17:10,24 21:1 40:5
40:6 42:2 55:14 56:8 58:5 61:3,14
63:15 66:19 74:19 82:23 87:17,21
87:23 88:4,7,10 89:8,15 90:9,17,21
90:25 99:24,25 107:9 110:2
**wanted** 6:8,10 61:20 98:23,24 104:5
**wants** 42:3 73:16 81:20
**warning** 27:23
**warranty** 91:12,13 107:17
**wasn't** 13:17 16:14 19:18 22:13 25:15
38:17 63:9 65:14 69:21 109:1
**water** 71:23 77:25 106:18
**waxing** 58:18
**way** 21:24 32:21 34:12 92:9 93:11
95:10
**Webb** 6:12 17:14
**Wednesday** 18:19,24 19:7,10,11,17,19
22:20
**week** 36:11,14 37:13,16
**weekend** 38:2
**weeks** 40:22 42:12 47:20
**welcome** 20:25 54:12
**well** 7:24 9:2 23:16 26:10 30:24 36:3
49:2 58:18 59:24 60:13 62:21 102:1
**Wellcraft** 25:17
**well-established** 103:23
**well-settled** 101:17
**went** 17:17 30:20 36:5 39:13 40:15
42:23 99:1 106:18
**were** 5:5 6:4,15,16,17,22 10:19,21
11:4,18 14:1,1 16:24 19:12,12 25:7
28:14 32:8,10,16,23 35:4,20 37:5,7
37:8 40:19 44:6,9 45:3 46:20 47:18
63:7,8,9 65:15,16 67:3,23 68:18
76:1 84:15,21 85:3,25 90:4,21
93:23 94:14 100:4,8 102:18
**weren't** 44:11
**West** 1:16 17:18 103:17
**wet** 107:17 108:2
**we'll** 53:7,21 54:6 89:13
**we're** 12:23 21:13 27:23 41:3 54:3
61:4 63:16 71:17 73:6
**we've** 49:19 51:13 108:22
**whatsoever** 5:10 7:19
**whereabouts** 11:17,20
**while** 17:13 33:7 44:12 55:17 56:11
97:7
**whole** 9:1,3 52:1 60:19 71:20 77:21
106:24
**wife** 89:13
**Wilkie** 2:2
**wish** 63:19
**witness** 1:10 9:8 10:1,21 13:12 16:7
21:1,4,8,11 22:24 23:8 25:22 26:3
26:12,18 27:10 28:17 30:10 34:16
37:3,13,20,22 42:4 43:16 45:24
52:23 53:13 55:11 59:23 61:10,16
61:24 64:8,17 67:12,14 70:19,20,22
71:8,9,10,12,15,22,25 72:2 73:12,23
74:4,14 75:12 76:4 77:13,15,23
78:6,8 79:17 80:6 81:12 82:5,7,10
82:14,19,22 83:2 84:19,22,24 85:2
85:4,23 86:4,8,11 87:17,21 88:15
91:25 95:17 101:5
**wondered** 56:19
**Woods** 25:11,12,14,22,24,24 26:7,14
26:23 27:1,3,5,10,16 28:2,8,12,21
28:23 46:14,20,22 94:18
**Woods's** 25:18
**worded** 31:5
**words** 94:15
**work** 49:17 58:16,17,19 62:12 71:17
78:14
**working** 65:2
**wouldn't** 108:3
**write** 39:20 55:7,15
**writing** 39:14 56:11
**written** 39:14,16 45:9 79:15 87:22
**wrong** 27:11,12 33:14,15 60:21 61:8
96:8
**wrote** 32:1 39:21 75:21

**Y**

**yard** 62:13,14
**yeah** 11:3 37:8 48:2 61:24 98:4
**year** 32:22 53:18 65:1
**years** 28:18 46:3 54:15 56:15 72:17

78:17,21 85:2 88:8
**yesterday** 5:5 6:4,15,22 7:11 13:3 39:6
48:6,15 49:10 50:3,8 55:1 98:12
**youthful** 88:7

**Z**

**zero** 99:9
**zip** 96:11 97:1,2,4,10,11

**$**

**$1,1626** 67:25
**$1,300** 70:15
**$1,586** 68:1 69:3,3
**$1,626** 67:25 68:2 69:4
**$1,626.39** 67:24 68:17,19,24 69:1
**$1,665** 67:24
**$1,665.42** 68:21
**$100,000** 57:11,14 58:2 64:2,19
**$11,000** 58:7
**$118,000** 58:6
**$150** 70:16
**$160,000** 70:16
**$18,000** 57:11,14 58:3 64:3,7,21
**$180,000** 64:22 65:2
**$38,000** 62:23
**$40** 68:2,2 69:4
**$40,000** 62:25
**$793** 69:2

**0**

**06** 68:24
**06-60889-JIC** 105:4
**066** 105:7
**07** 36:4
**08S67** 2:3 111:18
**0889** 105:8

**1**

**1** 1:18 48:20,22 57:24 63:24 64:3,4,5
**1st** 7:25 75:1
**1,000** 63:4
**1,586** 68:1
**1-800** 36:16,25 37:10
**/11** 33:25
**10** 3:19 17:23 67:20,24 68:15
**10th** 33:21
**10/22** 69:1
**11** 1:6 3:25 4:5 67:25 68:20
**11th** 32:9,22 33:1,2,23 34:2,12 35:18
36:2,9 37:17,23 38:1
**11-22842-CIV-SEITZ** 1:3
**11/26/2007** 40:21
**11:05** 53:9
**11:20** 53:8
**11:24** 54:11
**111** 1:8 3:10
**12** 3:21 57:5 67:25 68:23
**12-mile** 62:24
**12/05** 68:16
**13** 21:10
**1331** 106:4
**14** 4:6 88:8
**15** 13:6,7,23 14:8 56:15 59:10 88:8
**1560** 1:19
**16** 60:13 61:2
**16th** 37:25 38:17 95:9,24 96:3
**1600** 1:23
**17** 4:7 61:7 67:25 68:25
**19** 3:18 53:15
**1902** 1:16
**1980** 105:14
**1982** 106:4
**1996** 105:20,22

**2**

**2** 4:8 56:5 57:21 62:16,16 95:7
**2nd** 66:23,24 67:4
**2,000** 63:4
**2/25** 68:21
**2:11** 77:10
**20** 3:20,24 48:21 53:16 62:25
**2003** 98:10
**2004** 85:4
**2006** 105:8
**2007** 6:18 7:25 10:24 13:10,14 18:11
18:20 20:9 28:6 32:19 33:21 53:18

54:15 72:19 79:3 85:3 90:12
**2008** 25:12 28:9,9,10 29:22 32:9 33:23
33:24 35:12,18 36:9,10 37:17,18
39:16 42:16 54:15 63:7 75:1 84:21
85:3 98:10
**2009** 103:17
**2012** 66:23,24 67:4
**2013** 1:6
**21** 33:4,13
**21st** 18:20
**22nd** 18:20
**229** 105:5
**23** 21:9 59:23 61:11
**23rd** 108:23
**24** 4:3 54:15,17 59:21,22 60:12,18,20
60:25 61:6
**24th** 20:8 22:10
**25** 57:1 59:9,10,16,22 60:25 61:11
**250-gallon** 57:9 63:13
**250-mile** 63:17
**26th** 20:16 22:7,14 47:20 90:12
108:24
**27th** 47:20
**275** 63:1
**28th** 15:8
**29th** 36:10 37:18

**3**

**3** 1:12 3:22 4:4 18:22 19:18 64:5,11
**3rd** 35:11
**3/26/2012** 21:5
**305.274.5507** 1:24
**305.534.0403** 1:19
**305/523-5659** 2:3 111:19
**307** 1:19
**31** 18:22 69:8
**32-foot** 31:4
**33** 17:22
**3301** 95:9,24 96:2,16
**33010** 96:11,12 97:8,10
**33125** 95:9
**33128** 2:3 111:19
**33139** 1:19
**33156** 1:24
**33606** 1:16
**3416248** 103:17
**38,000** 57:4

**4**

**4** 64:4,4,5 67:20 68:15 70:9
**4th** 15:8 16:13 18:11
**400** 2:3 111:18
**403** 27:8
**424** 105:14
**450** 63:2

**5**

**5** 3:3,4
**55** 3:18
**56** 3:19,20
**58** 3:21
**59112014492** 68:6 69:14 70:10

**6**

**60889** 105:9
**62** 3:22,23
**627.409** 107:16 108:2
**632** 105:14
**67** 3:24
**68** 3:25
**681** 106:4

**7**

**7** 3:23 8:24 9:4,7 17:23 20:18 21:2
22:3 57:1 59:10,13,16 60:22,25
**7th** 13:10
**72** 3:5,6
**78** 3:7,8

**8**

**8** 12:22 13:9 14:20 17:8 35:15 39:2
60:24 61:3
**8th** 16:13
**8:45** 1:7
**80** 4:3

**813.258.0624** 1:16
**82** 4:4
**83** 4:5
**84** 4:6
**886** 105:22,24,25 106:1

**9**

**9** 21:9
**9th** 42:16
**9/10/13** 5:25
**9:40** 5:2
**90** 3:9 4:7
**91** 4:8
**911** 73:16 76:5
**9130** 1:23
**93** 67:25
**944** 105:22