UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-22842-CIV-SEITZ/SIMONTON

EURYS GAMEZ,

    Plaintiff,

v.

ACE AMERICAN INSURANCE COMPANY,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S POST-TRIAL MOTIONS

On November 24, 2007, Eurys Gamez's cousin, Alfredo Hassun, loaned Gamez's new 32-foot Glasstream fishing yacht (the "Vessel") to a recent acquaintance, Alexis Suarez, for a fishing trip. Suarez and the Vessel then mysteriously disappeared and were never heard from again. This case arises out of Defendant Ace American Insurance Company ("Ace Insurance")'s denial of insurance coverage for the loss of the Vessel.

The jury found that Gamez had proven his claim but could not recover because Ace Insurance had established as an affirmative defense that Gamez had intentionally misrepresented a material fact in his insurance application. Gamez now moves to set aside the jury verdict, arguing that there was no admissible evidence from which a reasonable jury could have found that Gamez's misrepresentations had "increased the hazard by any means within the control of the insured." [DE-135; DE-136.] Because Florida law does not require that misrepresentations increase the hazard, and because there was sufficient evidence at trial for a reasonable jury to conclude that Gamez's intentional misrepresentations affected Ace Insurance's ability to assess the risks it was insuring, both of Gamez's motions are denied.

## A. LEGAL STANDARD

Gamez moves for judgment as a matter of law under Rule 50(b) and alternatively for a new trial under Rule 59(a). A court must rule on both motions. *See* Fed. R. Civ. P. 50(c).

Under Rule 50(b), Gamez asks the Court to set aside the jury's verdict as to Ace Insurance's affirmative defense but to allow the jury's verdict to stand as to Gamez's claim. In resolving a Rule 50(b) motion, a court "should consider all the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[] should be denied." *Watts v. Great Atl. & Pac. Tea Co., Inc.*, 842 F.2d 307, 309–10 (11th Cir. 1988) (citation omitted).

In the alternative, Gamez asks the Court to set aside the jury verdict entirely and order a new trial under Rule 59(a), which imposes a more lenient standard than Rule 50(b). "In ruling on a motion for new trial, the trial judge is permitted to weigh the evidence, but to grant the motion he must find the verdict contrary to the great, not merely the greater, weight of the evidence." *Watts*, 842 F.2d at 310 (citation omitted).

## B. APPLICABLE LAW

The jury, which Gamez agrees was properly instructed [DE-135 at 8-10], found for Gamez on his breach-of-contract claim and for Ace Insurance on its affirmative defense that Gamez had fraudulently misrepresented material facts on his insurance application. Gamez's primary argument[1] is that there was no admissible evidence at trial from which a reasonable jury could determine which hazard resulted in the loss of the Vessel or that the misrepresentations could have increased that hazard. According to Gamez, any fraudulent misrepresentation only voids the insurance policy if it "increased the hazard by any means within the control of Gamez or Hassun." *See* Fla. Stat. § 627.409(2). Thus, without being able to determine which hazard had befallen the Vessel, a reasonable jury could not find that Gamez or Hassun had increased that hazard. Gamez further argues that, even if the hazard is simply characterized as that of a "missing vessel," none of Gamez's or Hassun's misrepresentations could have increased that hazard.

Gamez applies the incorrect legal standard. Florida law provides:

> (1) Any statement or description made by or on behalf of an insured . . . in an application for an insurance policy . . . is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:

---

[1] Gamez also argues that Ace Insurance's counsel "invited the jury to disregard the law and apply an incorrect legal standard." [DE-135 at 6–8.] Because Gamez neither specifies when Ace Insurance's counsel allegedly did so nor establishes that he objected at the time during trial, Gamez cannot pursue this argument in a post-trial motion. *See Sims' Crane Serv., Inc. v. Ideal Steel Products, Inc.*, 800 F.2d 1553, 1557 (11th Cir. 1986).

> (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.
>
> (2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine . . . insurance policy . . . or application therefor does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

Fla. Stat. § 627.409 (2013). There are thus two legal distinct theories an insurer can assert to deny coverage: essentially, fraudulent inducement and material breach. A "breach or violation by the insured of any warranty, condition, or provision" only excuses the insurer from paying—essentially, it only constitutes a material breach—if "such breach or violation increased the hazard by any means within the control of the insured." For example, if the insured violated the insurance policy by keeping too many crew members, that might increase the likelihood of mutiny. *Fireman's Fund Ins. Co. v. Cox*, 742 F. Supp. 609, 611 (M.D. Fla. 1989), *aff'd*, 892 F.2d 87 (11th Cir. 1989). But an insured's failure to update a plane's airworthiness certificate does not void coverage for a plane crash caused by pilot error. *Pickett v. Woods*, 404 So. 2d 1152 (Fla. 5th DCA 1981).

In contrast, the problem with misrepresentations in an insurance application is not that they increase the risk of loss, but that they interfere with the insurer's ability to assess the risk of loss before deciding how much coverage

to provide and at which premium. Therefore misrepresentations are subject to a different standard: essentially, they must affect the insurer's liability to pay a certain amount of money. They need not increase the hazard.

A misrepresentation in the insurance policy cannot be characterized as a "breach or violation by the insured of any warranty, condition, or provision" under section 627.409(2). Section 627.409(1) specifically states that a "statement or description made by or on behalf of an insured . . . in an application for an insurance policy . . . is a representation and not a warranty" and then delineates exactly what standard applies for misrepresentations. Because section 627.409(1) already lays out a specific standard for misrepresentations, the Court will not shoehorn misrepresentations into section 627.409(2) such that the increase-the-hazard requirement might apply.

The parties' contract only alters this analysis by requiring that any misrepresentations be intentional; nowhere does the contract itself require that the misrepresentations increase the hazard. (*See* Order Denying Def.'s Mot. for Summ. J. [DE-54].) Thus, as the jury was correctly instructed:

> [T]o establish its affirmative defense based on fraud, ACE American must prove . . . (1) that Gamez or Hassun falsely misrepresented or concealed a specific, material fact; (2) that Gamez or Hassun knew or should have known that the representation was false; (3) that Gamez or Hassun willfully made the representation or concealment with the intention of defrauding ACE American; (4) that Gamez or Hassun intended to induce ACE American to act on the representation or concealment; and (5) that the representation made was one that would affect the liability of ACE American to pay a certain amount of money.

[DE-128 at 9–10.]

## C. Evidence at Trial

The evidence at trial was plainly sufficient for the jury to find that Gamez's and Hassun's misrepresentations were intentional and material. Viewed in the light most favorable to Ace Insurance, the evidence showed that Gamez and Hassun made the following intentional misrepresentations in the insurance application:

- *Vessel Location*: The insurance application listed "3301 nw 16 st, Miami, FL, 33125" as Gamez's address and "residence, Miami, FL, 33010" as the "vessel location." (Joint Ex. 2.) But Gamez intended and expected that his cousin Alfredo Hassun would keep the Vessel in the driveway of Hassun's residence, which is not listed anywhere on the application. Moreover, although Gamez owned 3301 NW 16th Street, he did not live there. (Trial Tr. September 10, 2013 [DE-146] 118:9–119:15.)

- *Ownership*: The insurance application listed Gamez as the Vessel's owner. (Joint Ex. 2.) Gamez held title and was the only person obligated to make mortgage payments. (Pl.'s Ex. 2; Trial Tr. September 10, 2013 [DE-146] 10:6–13.) But Hassun admitted in Coast Guard recordings that Gamez was just the owner "on paper." (Trial Tr. September 13, 2013 [DE-143] 69:14–24.) Hassun kept the Vessel at his home, made most of the monthly payments, and maintained, used, and loaned the Vessel out without limitation. (*See* Joint Ex. 9.)

- *Primary Operator*: The insurance application listed Gamez as the "primary operator" and did not list anyone as an "additional operator." (Joint Ex. 2.) Yet Gamez expected that Hassun would exert greater control over the Vessel than Gamez would, including by Hassun keeping the Vessel at his own house.

- *Prior owned vessels*: On the application, Gamez stated that he had had four years of prior boat ownership, including having owned a "seafox" for three years. (Joint Ex. 2.) But Gamez's father owned the Seafox, not Gamez. Gamez never owned any prior vessels.

A reasonable jury could easily infer that these intentional misrepresentations affected Ace Insurance's liability to pay a certain amount of money. Based on the insurance application, Ace Insurance thought that one person with four years of boat-ownership experience would keep the Vessel at his home and would be the only primary operator. According to its underwriter Sheryl Johnson, Ace Insurance would have charged a higher premium if it had known otherwise. (Trial Tr. September 11, 2013 [DE-147] 86:24–89:20.) This comports with common sense; a single experienced owner-operator can keep track of a yacht in his driveway. With two people, each has less "skin in the game" than a single person would, and the universe of things that could go wrong increases significantly: the boat is probably in use more often, it likely travels back and forth between different locations, there is a risk of miscommunication between the two persons, and so forth. One might even loan the Vessel to an acquaintance that the other might not trust.

## D. CONCLUSION

Because the jury's verdict as to Ace Insurance's affirmative defense was founded on a legally sufficient basis and was not contrary to the great weight of the evidence, there is no basis for either judgment as a matter of law or a new trial. Accordingly, it is

ORDERED that

1. Plaintiff's Renewed Motion for Judgment as a Matter of Law [DE-135] is DENIED.

- 8 -

    2.    Plaintiff's Motion for New Trial [DE-136] is DENIED.

    3.    This case is CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Miami, Florida, this _11__ day of August 2014.

*/s/ Patricia A. Seitz*

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record